# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| DUNELLEN, LLC,<br>Plaintiff,<br>v.<br>GETTY PROPERTIES CORP.,<br>Defendant. | C.A. No. 06-014 T |

## ANSWER AND COUNTERCLAIM

Getty Properties Corp. ("Getty"), through counsel, submits the following answer and affirmative defenses to the Complaint of Dunellen, LLC ("Dunellen").

1. Admitted.

2. Admitted.

3. Admitted that the United States District Court for the District of Rhode Island has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, in that the parties are citizens of different states and the amount in controversy exceeds $75,000. The allegations of paragraph 3 are otherwise denied.

4. Admitted that the United States District Court for the District of Rhode Island has specific personal jurisdiction over Getty for purposes of this dispute. The allegations of paragraph 4 are otherwise denied.

5. Admitted that the United States District Court for the District of Rhode Island is a proper venue pursuant to 28 U.S.C. § 1391(a) and (c). The allegations of paragraph 5 are otherwise denied.

**Facts Common To All Counts**

6. Getty admits the first three sentences of paragraph 6. As to the fourth sentence, Getty admits that there are two petroleum pipelines on the Pier. Getty otherwise lacks sufficient information to admit or deny the allegations of the fourth sentence, which are therefore denied. As to the fifth sentence, Getty admits that the two petroleum pipelines run along one side of the Pier and continue underground within a pipeline easement to a point approximately 2 ½ miles away in the Phillipsdale section of East Providence, where they connect to pipelines serving two oil storage facilities. The allegations of the fifth sentence are otherwise denied. Getty lacks sufficient information to admit or deny the allegations of the sixth sentence, which are therefore denied. As to the seventh sentence, Getty admits that it owns one of the oil storage facilities. The allegations of the seventh sentence are otherwise denied.

7. Getty admits that between November 8, 1977 and December 31, 1997, Getty or its predecessors in interest, Providence & Worcester Railroad Company ("P&W"), and other users of the Pier were parties to a series of written pier operating agreements the terms of which speak for themselves. Getty admits that effective December 31, 1997, it withdrew from the written pier operating agreement then in effect. The allegations of paragraph 7 are otherwise denied.

8. Admitted.

9. Getty admits the first sentence of paragraph 9. Getty lacks sufficient information to admit or deny the allegations of the second sentence of paragraph 9, which are therefore denied.

10. Getty admits that on September 5, 2003, the United States District Court issued a Memorandum and Decision in CA No. 00-381 ML, the terms of which speak for themselves. Getty otherwise denies the allegations of paragraph 10.

11. Getty admits that the September 5, 2003 Memorandum and Decision states in part that "[h]aving concluded that Getty Properties' rights under the 1941 Deed remain intact, the Court declines Capital Terminal's request to 'declare the obligations that burden those rights' with respect to the parties joint usage of the Pier." Getty admits that an actual controversy exists with Dunellen as to Getty's obligation to contribute toward the maintenance of the Pier. Getty otherwise denies the allegations of paragraph 11.

12. Denied.

13. Denied.

14. Denied.

**COUNT I – Claim For Pier Expenses Since January 1, 2003**

15. Getty admits that CTC owned the Pier from January 1, 1998 to May 30, 2003, and that CTC transferred ownership of the Pier to Dunellen on or about May 30, 2003. Getty otherwise lacks sufficient information to admit or deny the allegations of paragraph 15, which are therefore denied.

16. Getty admits the first sentence of paragraph 16. Getty otherwise denies the allegations of paragraph 16.

17. Denied.

**COUNT II – Declaratory Judgment Claim For Future Pier Expenses**

18. Getty restates and realleges the answers to paragraphs 1 through 17 as if set forth in full herein.

19. Getty admits that Dunellen is the owner of the Pier. Getty admits that it has the right to use the north side of the of the Pier, appurtenant facilities and petroleum pipelines on the Pier, but denies that those rights are set forth only in the September 5, 2003 Memorandum and Decision. Getty otherwise denies the allegations of paragraph 19.

20. Admitted.

21. Denied.

Wherefore, Plaintiff's request for relief should be denied.

**AFFIRMATIVE DEFENSES**

1. The complaint fails to state a claim on which relief can be granted.

2. Plaintiff's claims are barred in whole or in part by the applicable statute of limitations and/or the doctrine of laches.

3. Plaintiff's claims are barred in whole or in part by the doctrine of accord and satisfaction.

4. Plaintiff's claims are barred in whole or in part by the Rhode Island Supreme Court's holding in *Providence & Worcester Railroad v. Exxon, et al.*, 116 R.I. 470, 359 A.2d 329 (1976), that the Pier is personalty not real property.

5. Plaintiff's claims are barred in whole or in part by the law of wharfage.

6. Plaintiff's claims are barred in whole or in part by the parties' express and implied contracts and course of dealing.

7. Plaintiff's claims are barred in whole or in part by the doctrines of res judicata and/or collateral estoppel.

8. Plaintiff's claims are barred in whole or in part by the doctrines of waiver and/or estoppel.

9. Plaintiff's claims are barred in whole or in part because they have been released.

10. Plaintiff's claims are barred in whole or in part because they would work an unjust enrichment.

11. Plaintiff's claims are barred in whole or in part by Plaintiff's and its predecessors' inequitable conduct in making excessive and unreasonable demands for payment which have caused potential Pier users who might have contributed to Pier-related expenses to deliver their petroleum products elsewhere.

12. Plaintiff's claims are barred in whole or in part by its inequitable conduct in repeatedly pursuing harassing and coercive sham litigation in order to obtain business concessions for less than their fair value.

13. Plaintiff's claims are barred in whole or in part by the substantial revenue it derives from its use of the Pier and of the pipelines and appurtenant equipment owned and maintained by Getty.

**COUNTERCLAIM**

Defendant and Counterclaim-Plaintiff Getty Properties Corp., for its Counterclaim against Plaintiff alleges as follows:

1. Getty is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business located at 125 Jericho Turnpike, Jericho, New York.

2. Dunellen L.L.C. ("Dunellen") is a limited liability corporation duly organized and existing pursuant to the laws of Delaware with its principal place of business located at 100 Dexter Road, East Providence, Rhode Island. None of the members of Dunellen are residents of Delaware or New York.

3. Jurisdiction over this counterclaim is proper pursuant to 28 U.S.C. § 1332(a) in that there is diversity of citizenship between the parties and the amount in controversy exceeds the jurisdictional minimum. Supplemental jurisdiction also exists pursuant to 28 U.S.C. § 1367. Venue is proper pursuant to 28 U.S.C. § 1391(a).

4. Dunellen is the owner of the Wilkesbarre Pier located on the Seekonk River in the City of East Providence, Rhode Island ("the Pier").

5. For at least 50 years, the Pier has been used by Getty, Dunellen, their predecessors-in-interest, and others, to receive and discharge petroleum products. Getty has the right to use the northerly side of the Pier to receive and discharge petroleum products from the Pier pursuant to agreements dating back to 1941. Under a series of Pier Operating Agreements in effect until January 1998, Pier-related expenses were allocated based on usage of the Pier.

6. Both Dunellen and Getty own petroleum storage facilities approximately 2½ miles up the Seekonk River from the Pier. Petroleum products arriving at the Pier by ship or barge can be unloaded and transported to these storage terminals through pipelines and related facilities both on and off the Pier (the "Petroleum Pipelines"). Getty owns and maintains the Petroleum Pipelines, and allows Dunellen to use them without charge. Dunellen derives substantial revenue by using the Petroleum Pipelines to supply its storage facilities. However, the Petroleum Pipelines have not been used to supply the storage facilities owned by Getty since early 2003.

7. In 1984, Dunellen's predecessor-in-interest challenged the right of Getty's predecessor-in-interest to use certain property on Dexter Road in East Providence, Rhode Island on which the Petroleum Pipelines running from the Pier are constructed (the "1984 Litigation"). The 1984 Litigation, if successful, would have interfered with Getty's and its predecessors' ability to transport petroleum products from the Pier to their storage facility and forced them to negotiate with Dunellen's predecessors for the right to continue these operations.

8. On or about January 29, 1985 all parties to the 1984 Litigation entered into a Settlement Agreement (the "1985 Settlement Agreement") resolving that dispute.

9. The 1985 Settlement Agreement provided that Texaco Refining & Marketing, Inc. (successor of Getty Refining and Marketing Company) would pay Dunellen's predecessor approximately $820,000. In return, Dunellen's predecessors, among other things, acknowledged and agreed that they and their affiliates, successors and assigns would not "now or hereafter" assert any claims "affecting Getty's unqualified right to permanent, unimpeded use of the Pier . . . and the pipelines for all materials handled by Getty." 1985 Settlement Agreement, ¶ 1.

10. As part of the 1985 Settlement Agreement Dunellen's predecessors agreed to release Getty's predecessor-in-interest "from and against any and all claims, demands, obligations, liabilities, suits and damages which they have or may have against Getty as of the date hereof." Dunellen's predecessors also agreed to hold Getty harmless "from and against any and all claims, suits, obligations, liabilities, and damages, including attorneys' fees," arising out of claims asserted by any of them or their successors affecting Getty's unqualified right to permanent, unimpeded use of the Pier and the pipelines described in the Agreement.

11. In March of 1997, Getty's predecessor-in-interest Getty Petroleum Corp. was separated into two entities: Getty Realty Corp. (Del.) and Getty Petroleum Marketing Inc. ("Getty Petroleum Marketing"). At that time Getty Realty Corp. (Del.) entered into a lease with Getty Petroleum Marketing wherein Getty Petroleum Marketing would lease from Getty Realty Corp. (Del.) the right to use certain real property of Getty Realty Corp. (Del.) including the terminal facility in East Providence, Rhode Island and the Petroleum Pipelines and the right to use northerly side of the Pier to receive and discharge petroleum products.

12. On or about December 19, 1997, Getty Petroleum Marketing, as part of an overall settlement agreement resolving disputes with Dunellen's predecessor-in-interest concerning the Wilkesbarre Pier, entered into a Throughput Agreement with Dunellen's

predecessor-in-interest providing that Getty Petroleum Marketing would pay specified fees while using the Pier through December 2002. Upon the expiration of a short term extension of that agreement in early 2003, Getty Petroleum Marketing ceased using the Pier. Neither Getty Properties nor Getty Petroleum Marketing has used the Pier to unload petroleum products since that time.

13. On information and belief, Dunellen has been unsuccessful in attempting to reach a new usage agreement with Getty Petroleum Marketing pursuant to which Getty Petroleum Marketing, as a Pier user, would contribute to Pier maintenance expenses.

14. On or about December 15, 2005, Dunellen filed this lawsuit asserting that Getty is required to pay one half of all Pier-related expenses regardless of whether it or its lessee is using the Pier.

**COUNT I – Breach Of Settlement Agreement**

15. Getty reasserts the allegations of paragraphs 1 through 14 above as though set forth in full herein.

16. Dunellen's claim that Getty as a condition of future Pier use pay hundreds of thousands of dollars of Pier-related expenses incurred while Dunellen was the only Pier user is a claim "affecting Getty's unqualified right to permanent, unimpeded use of the Pier . . . and the pipelines for all materials handled by Getty."

17. Dunellen has breached valid and binding contractual provisions of the 1985 Settlement Agreement. Getty has been and will continue to be damaged by this breach. Getty is entitled to be indemnified by Dunellen for all of its damages, including attorneys' fees, arising from Dunellen's breach.

**COUNT II – Unjust Enrichment**

18. Getty reasserts the allegations contained in paragraphs 1 through 17 above as though set forth in full herein.

19. Getty owns and maintains the Petroleum Pipelines used by Dunellen to supply its oil storage facility in East Providence. Under the terms of a series of agreements entered into at a time when Pier-related expenses were allocated based on Pier usage, Dunellen is allowed to use the Petroleum Pipelines without charge.

20. Requiring Getty to pay one-half of Pier-related expenses, regardless of use, while at the same time allowing Dunellen to continue to use the Petroleum Pipelines without charge would work an unjust enrichment of Dunellen.

21. In the event that Getty is found responsible for Pier-related expenses regardless of its use of the Pier, Dunellen is liable to Getty for the fair value of its use of the Petroleum Pipelines.

WHEREFORE, Getty demands judgment on its Counterclaim as follows:

(a) In favor of Getty for damages in an amount to be proven at trial;

(b) Awarding Getty its costs and attorneys' fees incurred in this action and interest as allowed by law;

(c) Awarding Getty fair compensation for Dunellen's use of the Petroleum Pipelines; and

(d) Granting to Getty such other relief and this Court may deem necessary and proper.

GETTY PROPERTIES CORP.

By Its Attorneys,

PARTRIDGE SNOW & HAHN LLP

James W. Ryan (#4042)
Robert K. Taylor (#6514)
180 South Main Street
Providence, RI 02903
(401) 861-8200
(401) 861-8210 FAX

DATED: January 27, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing ANSWER AND COUNTERCLAIM was mailed, postage prepaid, on this 27 day of January, 2006 to:

Gerald J. Petros, Esq.
Mitchell R. Edwards, Esq.
Hinckley Allen & Snyder LLP
1500 Fleet Center
Providence, RI 02903

837732_1/2900-7