# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| DUNELLEN, LLC,<br><br>Plaintiff,<br><br>v.<br><br>GETTY PROPERTIES CORP.,<br><br>Defendant. | C.A. No. 06-014 ML |

**MOTION OF GETTY PROPERTIES CORP. FOR LEAVE TO FILE THIRD PARTY COMPLAINT AGAINST GETTY PETROLEUM MARKETING, INC.**

Getty Properties Corp. ("Getty"), through counsel, hereby moves for leave to implead Getty Petroleum Marketing Inc. as a third party defendant pursuant to Fed. R. Civ. P. 14(a). In support of its Motion, Getty relies upon the accompanying Memorandum of Law.

GETTY PROPERTIES CORP.

By Its Attorneys,

PARTRIDGE SNOW & HAHN LLP

/s/ Robert K. Taylor
James W. Ryan (#4042)
Robert K. Taylor (#6514)
180 South Main Street
Providence, RI 02903-7120
(401) 861-8200
(401) 861-8210 FAX
jwr@psh.com
rkt@psh.com

DATED: February 21, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing MOTION OF GETTY PROPERTIES CORP. FOR LEAVE TO FILE THIRD PARTY COMPLAINT AGAINST GETTY PETROLEUM MARKETING, INC. was filed with the Clerk of the United States District Court for the District of Rhode Island this 21st day of February, 2007 and is available for viewing and downloading to the following ECF registered counsel of record:

Gerald J. Petros, Esq. / Hinckley, Allen & Snyder LLP
Mitchell R. Edwards, Esq. / Hinckley, Allen & Snyder LLP

/s/ Robert K. Taylor

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| DUNELLEN, LLC,<br>Plaintiff,<br>v.<br>GETTY PROPERTIES CORP.,<br>Defendant. | C.A. No. 06-014 ML |

**MEMORANDUM IN SUPPORT OF MOTION OF GETTY PROPERTIES CORP. FOR LEAVE TO FILE THIRD PARTY COMPLAINT AGAINST GETTY PETROLEUM MARKETING, INC.**

Getty Properties Corp. ("Getty"), through counsel, submits the following memorandum of law in support of its motion for leave to implead Getty Petroleum Marketing Inc. ("Getty Marketing") as a third party defendant pursuant to Fed. R. Civ. P. 14(a). The proposed Third Party Complaint is attached hereto as Exhibit A.

## I. BACKGROUND FACTS

Getty owns a petroleum storage terminal and related pipelines and facilities in East Providence, Rhode Island (the "Terminal"). Getty also has the right to use the Wilkesbarre Pier in East Providence, Rhode Island (the Pier"), and the vessel berth associated with the Pier, pursuant to instruments and agreements dating back to 1941. Getty has leased the Terminal and the right to use the Pier to Getty Marketing pursuant to an Amended, Consolidated and Restated Master Lease dated as of November 2, 2000 (the "Master Lease"). The initial term of the Master Lease extends to 2015.

Plaintiff Dunellen, LLC ("Dunellen"), filed this action against Getty in December 2005, seeking hundreds of thousands of dollars for Pier maintenance costs

Dunellen allegedly incurred beginning in January 2003 (the "Lawsuit"). The Lawsuit alleges that Getty is also liable for at least half of all future Pier maintenance costs. Getty has denied that it is liable for Pier-related costs as alleged in the Lawsuit.

The Master Lease is a triple net lease which provides that Getty Marketing shall pay all costs related to or arising from the leased premises, with certain specific exceptions. The costs that are the subject of the Lawsuit are not covered by any of these exceptions. The Master Lease further provides that Getty Marketing shall defend and indemnify Getty Properties against costs relating to the leased premises, including litigation costs.

In December 2006, Getty tendered the Lawsuit to Getty Marketing. Getty Marketing rejected the tender, and denies that it is obligated under the Master Lease to defend and indemnify Getty against the Lawsuit or to pay the costs that are the subject of the Lawsuit. Getty is seeking to implead Getty Marketing to secure declaratory and injunctive relief regarding the parties' rights and obligations under the Master Lease.

## II. ARGUMENT

Rule 14 of the Federal Rules of Civil Procedure provides, in relevant part:

> At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff. The third-party plaintiff need not obtain leave to make the service if the third-party plaintiff files the third-party complaint not later than 10 days after serving the original answer. Otherwise the third-party plaintiff must obtain leave on motion upon notice to all parties to the action.

Courts in the First Circuit apply a "liberal standard" in determining whether leave to implead a third party defendant should be granted. *Lehman v. Revolution Portfolio LLC*,

166 F.3d 389, 393 (1st Cir. 1999). Impleader should be allowed "on any colorable claim of derivative liability that will not unduly delay or otherwise prejudice the ongoing proceedings." *Id.* (*citing Highlands Ins. Co. v. Lewis Rail Serv. Co.*, 10 F.3d 1247, 1251 (7th Cir. 1993); *United States v. One 1977 Mercedes Benz*, 708 F.2d 444, 452 (9th Cir. 1983)); *see also* Federal Practice and Procedure, Wright and Miller § 1443 at 303 ("if the claim is a proper third party action and will not prejudice the other parties to the litigation, there is no reason to deny an application under Rule 14(a)."). In making the determination, a court must keep in mind the "core purpose of Rule 14(a): . . . avoiding unnecessary duplication and circuity of action." *Lehman*, 166 F.3d at 394. "Thus, as long as a third-party action falls within the general contours limned by Rule 14(a), does not contravene customary jurisdictional and venue requirements, and will not work unfair prejudice, a district court should not preclude its prosecution." *Id.* at 395. In weighing these two competing factors, "generally, the interests of efficiency will outweigh the dangers of prejudice." 3 Moore's Federal Practice § 14.21[3] at 14-57.

In the case at hand, Getty is seeking leave to assert a third party claim against its tenant, Getty Marketing, to establish their respective liabilities under the Master Lease for any Pier maintenance costs awarded to Dunellen and Getty Marketing's duty to defend and indemnify. This claim is squarely within the ambit of Rule 14(a), because Getty is asserting that Getty Marketing "is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." Adding Getty Marketing will not contravene customary jurisdictional and venue requirements,[1]

---

[1] Although Getty and Getty Marketing both have their principal place of business in New York, the Court has supplemental jurisdiction over the third party claim pursuant to 28 U.S.C. § 1367(a). Only claims by original plaintiffs against non-diverse third party defendants are outside federal supplemental jurisdiction pursuant to 28 U.S.C. § 1367(b). *State Nat'l Ins. Co. v. Yates*, 391 F.3d 577, 579 (5th Cir. 2004).

and it will not work unfair prejudice. Dunellen will not be prejudiced, as the first party claim is legally distinct from the derivative third party claim and may proceed without undue delay. Getty Marketing will not be prejudiced by litigating the third party claim in this action, rather than in a separate action.

The proposed third party claim easily meets the test of a "colorable claim of derivative liability." *Lehman,* 166 F.3d at 393. Section 4.1 of the Master Lease between Getty and Getty Marketing provides that the tenant shall pay "each and every item of expense, of every kind and nature whatsoever, related to or arising from the Premises, or by reason of or in any manner connected with or arising from the development, leasing, operation, management, maintenance, repair, use or occupancy of the Premises or any Property or any portion thereof." Exhibit B. None of the exceptions identified in section 4.1 would apply. Accordingly, should Dunellen prevail in its current lawsuit against Getty, Getty Marketing would be obligated to pay Pier maintenance expenses awarded to Dunellen, pursuant to the Master Lease.

Furthermore, under section 10.1 of the Master Lease, Getty Marketing is required to defend and indemnify Getty against matters relating to the "operation or occupancy of any Property." Exhibit B. Dunellen's claim for Pier maintenance and repair costs relates to Getty's operation or occupancy of the East Providence Terminal and the ancillary pipelines. Thus, the indemnity provisions of the Master Lease apply.

## III. CONCLUSION

For all of the foregoing reasons, the Motion of Defendant Getty Properties Corp. for Leave to File a Third Party Complaint against Getty Petroleum Marketing, Inc. should be granted.

GETTY PROPERTIES CORP.

By Its Attorneys,

PARTRIDGE SNOW & HAHN LLP

/s/ Robert K. Taylor

James W. Ryan (#4042)
Robert K. Taylor (#6514)
180 South Main Street
Providence, RI 02903-7120
(401) 861-8200
(401) 861-8210 FAX
jwr@psh.com
rkt@psh.com

DATED: February 21, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing MEMORANDUM IN SUPPORT OF MOTION OF GETTY PROPERTIES CORP. FOR LEAVE TO FILE THIRD PARTY COMPLAINT AGAINST GETTY PETROLEUM MARKETING, INC. was filed with the Clerk of the United States District Court for the District of Rhode Island this 21 day of February, 2007 and is available for viewing and downloading to the following ECF registered counsel of record:

Gerald J. Petros, Esq. / Hinckley, Allen & Snyder LLP
Mitchell R. Edwards, Esq. / Hinckley, Allen & Snyder LLP

/s/ Robert K. Taylor

902557_1/2900-7

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| DUNELLEN, LLC,<br><br>Plaintiff,<br><br>v.<br><br>GETTY PROPERTIES CORP.,<br><br>Defendant/Third Party Plaintiff,<br><br>v.<br><br>GETTY PETROLEUM MARKETING INC.,<br><br>Third Party Defendant. | C.A. No. 06-014-T |

**THIRD PARTY COMPLAINT**

Defendant and Third Party Plaintiff Getty Properties Corp. ("Getty Properties"), through counsel, complains of Getty Petroleum Marketing Inc. ("Getty Marketing") as follows:

1. Getty Properties is a Delaware corporation with its principal place of business in New York. Getty Properties leases real estate to Getty Marketing pursuant to a Consolidated, Amended and Restated Master Lease dated as of November 2, 2000 (the "Master Lease").

2. Getty Marketing is a Maryland corporation with its principal place of business in New York. Getty Marketing and Getty Properties are separate entities with no corporate affiliation. Getty Marketing leases real estate from Getty Properties.

3. Getty Properties owns a petroleum storage terminal and related pipelines and facilities in East Providence, Rhode Island (the "Terminal"). Getty Properties also has the right to use the Wilkesbarre Pier in East Providence, Rhode Island (the "Pier"), and the vessel berth associated with the Pier, pursuant to instruments and agreements dating back to 1941. Getty

Properties has leased the Terminal and the right to use the Pier to Getty Marketing in the Master Lease.

4. Plaintiff Dunellen, LLC filed this action against Getty Properties alleging that Getty Properties is liable to pay Dunellen hundreds of thousands of dollars for costs associated with maintaining the Pier since 2003. Dunellen is also seeking a declaration that Getty Properties is liable for at least half of all future Pier maintenance costs. Getty Properties has denied that it is liable for Pier-related costs as alleged in the Lawsuit.

5. The Master Lease is a triple net lease which provides that Getty Marketing shall pay as rent all costs related to or arising from the leased premises, with certain specific exceptions. The costs that are the subject of the Lawsuit are not covered by any of these exceptions. The Master Lease further provides that Getty Marketing shall indemnify Getty Properties against costs relating to the leased premises, including the costs of defending the Lawsuit.

6. Getty Properties has tendered the Lawsuit to Getty Marketing. Getty Marketing has refused the tender, and has denied that it is responsible to pay the costs that are the subject of the Lawsuit.

**COUNT I – Declaratory and Injunctive Relief**

7. Getty Properties reasserts the allegations of paragraphs 1 through 6 above as if fully set forth herein.

8. An actual controversy exists between Getty Properties and Getty Marketing regarding the parties' rights and obligations under the Master Lease. Getty Properties has tendered the Lawsuit, and has asserted that Getty Marketing is responsible to pay the costs claimed therein. Getty Marketing has refused, without good or sufficient cause, to acknowledge its obligation under the Master Lease for the costs that are the subject of the Lawsuit, and has

further refused to defend and indemnify Getty Properties in connection with the Lawsuit. Getty Marketing's conduct is continuing and likely will continue.

WHEREFORE, Getty Properties prays for a judgment in its favor

A. Declaring that Getty Marketing is obligated to pay all costs that are the subject of the Lawsuit, to the extent that Getty Properties is found liable for such costs;

B. Declaring that Getty Marketing is obligated to pay Getty Properties' costs incurred in defending the Lawsuit, from the date that the Lawsuit was tendered forward;

C. Affirmatively enjoining Getty Marketing to defend and indemnify Getty Properties in connection with the Lawsuit;

D. Awarding interest, costs and attorneys' fees to the extent allowed by law; and

E. Awarding such other and further relief as the Court deems just and proper.

GETTY PROPERTIES CORP.

By Its Attorneys,

PARTRIDGE SNOW & HAHN LLP

/s/ Robert K. Taylor

James W. Ryan (#4042)
Robert K. Taylor (#6514)
180 South Main Street
Providence, RI 02903
(401) 861-8200
(401) 861-8210 FAX
jwr@psh.com
rkt@psh.com

DATED: February ___, 2007

901562_1/2900-7

# EXHIBIT B

This CONSOLIDATED, AMENDED AND RESTATED MASTER LEASE (together with all Exhibits and Schedules attached hereto, this "Restated Lease") is made and entered into as of November 2, 2000 between Getty Properties Corp., a Delaware corporation, whose address is 125 Jericho Turnpike, Jericho, New York 11753 (formerly known as Getty Realty Corp.,) (as further defined hereinafter, "Landlord"), and Getty Petroleum Marketing Inc., a Maryland corporation whose address is 125 Jericho Turnpike, Jericho, New York 11753 (as further defined hereinafter, "Tenant").

## RECITALS

A. Pursuant to that certain Master Lease, dated February 1, 1997, between Landlord and Tenant (the "1997 Master Lease") and the Post-Reorganization Leases (as hereinafter defined), Landlord leased to Tenant, in addition to other properties, the lands described in Exhibit A and subleased or sub-subleased to Tenant, in addition to other properties, the lands described on Exhibit B (all such lands described on Exhibit A and Exhibit B being referred to hereinafter collectively as the "Land"), together with all right, title and interest of Landlord, if any, in and to: (a) all buildings, structures and other improvements and appurtenances then located on the Land; (b) the land lying in the bed of any street or highway in front of or adjoining the Land to the center line of such street or highway; (c) the appurtenances and all the estate and rights to the Land; (d) any strips or gores adjoining the Land; and (e) any furnishings, fixtures, equipment or other personal property attached or appurtenant to any improvements then located on the Land (all of the foregoing, as they exist as of the Restatement Effective Date, including all Improvements (as hereinafter defined) together with Landlord's right, title and interest in and to all easements, covenants, rights of way and similar rights benefiting the Land, collectively, the "Premises", as further defined hereinafter, and individually, a "Property," as further defined hereinafter).

B. Landlord and Tenant desire, as of the Restatement Effective Time (as hereinafter defined), to incorporate and consolidate the 1997 Master Lease and the Post-Reorganization Leases (individually and collectively, the "Original Lease") into a single document and to further amend and restate the Original Lease, all as set forth in this Restated Lease and desire that, from and after the Restatement Effective Time, all rights and obligations of Landlord and Tenant shall be governed by this Restated Lease such that this Restated Lease shall consolidate, supersede and restate in their entirety the Original Lease from and after the Restatement Effective Time.

C. This Restated Lease is intended to constitute a single lease of the Premises and may not be severed, bifurcated, divided, or otherwise split in any manner whatsoever.

D. Landlord and Tenant acknowledge that (i) the entering into of this Restated Lease is of primary importance to Tenant, and Tenant would not have entered into (or caused any of its Affiliates or Subsidiaries to enter into) the Merger Agreement (as hereinafter defined) without there having been such an agreement, and (ii) the agreement between Landlord and Tenant to treat this as a single lease in all respects is of primary importance to Landlord, and neither Landlord nor any of its Affiliates or Subsidiaries would have entered into this Restated Lease without there being such an agreement and such treatment of this Restated Lease.

diligently prosecute to completion the remedy of such failure and (z) complete such remedy within a reasonable time under the circumstances.

3.5.1 Landlord's UST Upgrade obligation pursuant to Section 7.6 at the Properties set forth in Schedule 2, to the extent Tenant is required to expend monies therefor;

3.5.2 Landlord's obligation pursuant to Section 9.1 with respect to (a) the ongoing Remediation at the Properties set forth on Schedule 3 and (b) any Remediation required as a result of any Contamination resulting from UST Upgrades at the Properties set forth on Schedule 2 and Exhibit C, to the extent Tenant is required to expend monies therefor; and

3.5.3 Landlord's obligation pursuant to the Environmental Agreement, to the extent Tenant is required to expend monies therefor.

Notwithstanding anything to the contrary contained herein or in the Environmental Agreement, if, at any time after the date hereof, UST Upgrade or Closure has been completed, as applicable, with respect to any Property set forth on Schedule 2, Exhibit C or Schedule 3 by Landlord as required under this Restated Lease, Tenant shall have no right to any offset against Rent with respect to any such Property from and after the date on which such UST Upgrade or Closure has been completed, as applicable, with respect to such Property. In the event that Tenant elects to offset any amount against Rent in accordance with this Section 3.5 or Section 31.1, Tenant shall give Landlord Notice of such election to offset at least twenty (20) days prior to effecting the same, which Notice shall include the amount that Tenant plans to offset and the timing of such offset.

## 4. ADDITIONAL PAYMENTS BY TENANT; IMPOSITIONS.

4.1 Landlord's Net Return. The parties intend that this Restated Lease shall constitute a "net lease," so that the Rent shall provide Landlord with "net" return for the Term, free of any expenses or charges with respect to the Premises, except as specifically provided in this Restated Lease. Accordingly, except as specifically set forth to the contrary in this Restated Lease, the Environmental Agreement or the Transfer Tax Agreement, Tenant shall pay as Additional Rent and discharge, before failure to pay the same shall create a material risk of forfeiture or give rise to a penalty, each and every item of expense, of every kind and nature whatsoever, related to or arising from the Premises, or by reason of or in any manner connected with or arising from the development, leasing, operation, management, maintenance, repair, use or occupancy of the Premises or any Property or any portion thereof. Notwithstanding anything to the contrary in this Restated Lease, Tenant shall not be required to pay any of the following incurred by Landlord: (a) principal, interest, or other charges payable under any Fee Mortgage; (b) depreciation, amortization, brokerage commissions, financing or refinancing costs, management fees or leasing expenses incurred by Landlord with respect to any Property; (c) consulting, overhead, travel, legal, staff, and other similar costs incidental to Landlord's ownership of its fee or leasehold interest in any Property, other than Legal Costs that Tenant has expressly agreed to pay; (d) any costs arising from or pursuant to any instrument or agreement

affecting any Property that is not a Permitted Exception and to which Landlord is a party and Tenant is not a party; and (e) the obligations of Landlord set forth in Section 7.6 and Section 9.1 of this Restated Lease, in the Environmental Agreement, or in the Transfer Tax Agreement.

4.2 Impositions. Subject to Tenant's right to contest set forth in Section 11.1, for any period within the Term (with daily prorations for periods partially within the Term and partially outside the Term), Tenant shall pay and discharge all Real Estate Taxes pursuant to the procedures set forth in Section 4.4 or Section 4.5 and shall pay and discharge, before failure to pay the same shall create a material risk of forfeiture or give rise to a penalty, all other Impositions. Tenant shall pay all interest and penalties assessed by any Government on account of late payment of any Real Estate Taxes, unless such late payment was caused by (a) Landlord's failure to promptly forward to Tenant or Depository, as applicable, a copy of any tax or other bill related to any such Real Estate Tax received by Landlord or (b) Landlord's failure to timely pay any such Real Estate Tax after it has timely received Tenant's or Depository's payment with respect thereto as provided in Section 4.4 or 4.5, in which case Landlord shall pay such interest and penalties. Except as otherwise provided herein, Tenant shall also pay interest and penalties assessed by any Government on account of late payment of any other Imposition (paid to Landlord by Tenant), except late payment caused by Landlord's failure to remit any such Imposition in accordance with Tenant's reasonable instructions or Landlord's failure to promptly forward Tenant a copy of any tax or other bill related to any such Imposition received by Landlord, in which case Landlord shall pay such interest and penalties. Tenant shall within a reasonable time after Notice from Landlord provide Landlord with reasonable proof that Tenant has paid or escrowed, as applicable, any Imposition(s) that this Restated Lease requires Tenant to have paid or escrowed, as applicable. Landlord shall be entitled to any refund of any Impositions (and penalties and interest paid by Landlord) and interest earned thereon to the extent such Imposition was due and payable prior to the applicable Commencement Date based on Landlord's prior overpayment of such Imposition, and Tenant shall remit to Landlord any amounts received by Tenant on account of such overpayment promptly upon receipt of the same. Tenant shall be entitled to any refund of any Impositions (and penalties and interest paid by Tenant) and interest earned thereon to the extent such Imposition was due and payable on or after the applicable Commencement Date based upon Tenant's prior overpayment of such Imposition, whether such refund is made during or after the Term, and Landlord shall remit to Tenant any amounts received by Landlord on account of such overpayment promptly upon receipt of the same.

4.3 Assessments in Installments. To the extent that it may be permitted by applicable Law and by the applicable Third Party Lease, Tenant shall have the right to apply for conversion of any Imposition to cause it to be payable in installments. After any such conversion, Tenant shall pay and discharge only such installments of any such Impositions as shall become due and payable during the Term, provided that any payment relating to periods prior to the expiration of this Restated Lease shall be paid prior to the Termination Date.

4.4 Deposits for Real Estate Taxes.

4.4.1 Advanced Real Estate Tax Payments. Due to the number of properties demised by this Restated Lease, Real Estate Taxes will be due and

9.2 Tenant Obligations. Except for those particular obligations of Landlord set forth in Sections 7.6, 9.1 and 25.3 herein and set forth in the Environmental Agreement, Tenant shall, except as provided in Section 25.3, be solely responsible, at its own cost and expense, for compliance with all Environmental Laws applicable to the Premises after the Commencement Date of the 1997 Master Lease. Tenant shall be solely responsible, at its own cost and expense, for any Remediation required by the applicable Government resulting from Remediation limits changed after Closure has been completed at any of the Properties on Schedule 2, Schedule 3 and Exhibit C. The obligations of Tenant set forth in this Section 9.2 shall survive the expiration or earlier termination of this Restated Lease.

## 10. INDEMNIFICATION; LIABILITY OF LANDLORD.

10.1 Mutual Indemnity Obligations. Landlord and Tenant shall each Indemnify the other against: (a) any wrongful act, wrongful omission or negligence of the Indemnitor (and, in the case of (i) Tenant, that of any of Tenant's Subtenants, and Tenant's and any of their respective partners, directors, officers, members, contractors, employees, agents, licensees and invitees; and (ii) Landlord, that of the Leemilt's Lessor, the Power Test Lessor, the Gettymart Lessor and their respective partners, directors, officers, members, contractors, employees, agents, licensees and invitees); and (b) any breach or Default by the Indemnitor under this Restated Lease or the Environmental Agreement. In addition to and without limiting the generality of the foregoing indemnity, Tenant shall Indemnify Landlord and Realty Parent (and with respect to clause (y) below, Third Party Lessors, the Leemilt's Lessor, the Power Test Lessor, and the Gettymart Lessor) against all the following matters (except to the extent any claim arises from any wrongful act, wrongful omission or negligence of Landlord, Realty Parent, any Third Party Lessor, the Leemilt's Lessor, the Power Test Lessor, or the Gettymart Lessor) relating to: (t) any Remediation of New Contamination for which Tenant is obligated pursuant to Section 9.1 and for breach of Tenant's obligations to comply with Environmental Laws pursuant to Section 9.2; (u) the operation or occupancy of any Property; (w) any Construction Work performed during the Term; (x) the condition of any Property or any street, curb or sidewalk adjoining such Property, whether or not such condition existed before the Restatement Effective Date; or of any vaults, tunnels, passageways or space under, adjoining or appurtenant to the Premises whether or not such condition existed before the Restatement Effective Date; (y) any accident, injury or damage whatsoever caused to any person or their property occurring during the Term, in or on the Premises or upon or under the sidewalks adjoining such Property; and (z) any wrongful termination of a Sublease. Notwithstanding the foregoing, Tenant shall have no obligation to Indemnify Realty Parent if (a) a conflict of interest exists such that the use of a single counsel to represent both Realty Parent and Landlord is not advisable, (b) the claims and defenses available to Realty Parent and Landlord with respect to any such claim are not substantially identical, and (c) the inclusion of Realty Parent as an Indemnitee would cause Tenant to incur more than a de minimis amount of additional cost or expense in discharging its indemnification obligations pursuant to this Article. In addition, Landlord shall Indemnify Tenant and Marketing Parent for (i) any UST Upgrade Landlord is obligated to perform pursuant to Section 7.6, (ii) any Remediation of Contamination for which Landlord is obligated under Section 9.1, and (iii) any matter whatsoever relating to the Abandoned Properties, including, without limitation, compliance with Environmental Laws. Notwithstanding the foregoing, Landlord shall have no obligation to Indemnify Marketing Parent if (a) a conflict of interest exists such that the use of a

single counsel to represent both Marketing Parent and Tenant is not advisable, (b) the claims and defenses available to Marketing Parent and Tenant with respect to any such claim are not substantially identical, or (c) the inclusion of Marketing Parent as an Indemnitee would cause Landlord to incur more than a de minimis amount of additional cost or expense in discharging its indemnification obligations pursuant to this Article. Notwithstanding anything to the contrary in this Restated Lease, neither party shall be required to Indemnify the other party from or against such other party's intentional acts or negligence.

10.2 Liability of Landlord. Except with respect to the obligations of Landlord pursuant to the Environmental Agreement and Sections 7.6 and 9.1 hereof, Tenant shall be deemed to be in exclusive control and possession of the Premises during the Term as provided in this Restated Lease. Landlord shall not be liable for any injury or damage to any Property or to any Person occurring on or about any Property nor for any injury or damage to any property of Tenant, or of any other person, during the Term, unless caused by Landlord's, the Leemilt's Lessor's, the Power Test Lessor's, or the Gettymart Lessor's wrongful acts and/or omissions or acts of negligence or a breach of Landlord's obligations under this Restated Lease either by Landlord, the Leemilt's Lessor, the Power Test Lessor, the Gettymart Lessor or any of their respective agents, employees, contractors, licensees or invitees. The provisions of this Restated Lease permitting Landlord to enter and inspect any Property are intended to allow Landlord to be informed as to whether Tenant is complying with the agreements, terms, covenants and conditions of this Restated Lease, and to the extent permitted by this Restated Lease, to perform such acts required by Landlord under this Restated Lease and of Tenant if Tenant shall fail to perform. Such provisions shall not be construed to impose upon Landlord any obligation, liability or duty to third parties, but nothing in this Restated Lease shall be construed to exculpate, relieve or Indemnify Landlord from or against any obligation, liability or duty of Landlord to third parties existing at or before the applicable Commencement Date or its obligations arising under Sections 7.6 or 9.1 hereof or the Environmental Agreement.

10.3 Indemnification Procedures. Wherever this Restated Lease requires an Indemnitor to Indemnify an Indemnitee, the following procedures and requirements shall apply:

10.3.1 Prompt Notice. The Indemnitee shall give the Indemnitor prompt Notice of any claim. To the extent, and only to the extent, that both (a) the Indemnitee fails to give prompt Notice and (b) the Indemnitor is thereby prejudiced, the Indemnitor shall, except as otherwise required under a Third Party Lease, be relieved of its indemnity obligations under this Restated Lease.

10.3.2 Selection of Counsel. The Indemnitor shall be required to select counsel reasonably acceptable to the Indemnitee. Counsel to the Indemnitor's insurance carrier shall be deemed satisfactory. Indemnitee may have its own counsel, at Indemnitee's expense, consult with Indemnitor's counsel.

10.3.3 Settlement. The Indemnitor may, with the consent of the Indemnitee, not to be unreasonably withheld, settle the claim, except that no consent by the Indemnitee shall be required as to any settlement by which (x) the Indemnitor procures (by payment, settlement, or otherwise) a release of the

Indemnitee pursuant to which the Indemnitee is not required to make any payment whatsoever to the claimant, (y) neither the Indemnitee nor the Indemnitor acting on behalf of the Indemnitee makes any admission of liability, and (z) the continued effectiveness of this Restated Lease is not adversely affected in any material respect.

10.4 Insurance Proceeds. The Indemnitor's obligations shall be reduced by net insurance proceeds actually collected by the Indemnitee on account of the loss.

10.5 Survival. All indemnities set forth in this Restated Lease shall survive the expiration or earlier termination of this Restated Lease but each such indemnity shall in no event survive the earlier to occur of the following: (a) the seventh (7th) anniversary of the Termination Date, and (b) the date when the time period set forth in the statute of limitations applicable to the subject matter of such indemnity has run.

## 11. RIGHT OF CONTEST.

11.1 Tenant's Right. Notwithstanding anything to the contrary in this Restated Lease, and subject to the terms of Third Party Leases, Tenant shall have the right to contest, at it: sole expense, by appropriate legal proceedings diligently conducted in good faith, the amount or validity of any Imposition or Prohibited Lien; the valuation, assessment or reassessment (whethe proposed or final) of any Property for purposes of Real Estate Taxes; the validity of any Law or Environmental Law or the application of any Law or Environmental Law to any Property; or the validity or merit of any claim against which Tenant is required to Indemnify Landlord under this Restated Lease (any of the foregoing, a "Contest"). Tenant may defer payment of the contested Imposition or compliance with the contested Law or performance of any other contested obligation pending the outcome of the Contest, provided that such deferral does not subject (a) the applicable Property or any portion thereof to any risk of imminent forfeiture or foreclosure of any Fee Mortgage, or (b) Landlord to any risk of criminal liability.

11.2 Landlord's Obligations and Protections. Landlord shall not be required to join in any Contest unless a Law or Environmental Law shall require that such Contest be brought in the name of Landlord or any owner of the Fee Estate. In such case, Landlord shall cooperate with Tenant, as Tenant shall reasonably request, so as to (a) permit such Contest to be brought in Landlord's or the Power Party Lessor's name, as applicable, or (b) in the case of a Property owned by a Third Party Lessor, request that such Contest be brought in such Third Party Lessor's name. Tenant shall pay all reasonable costs and expenses (including Legal Costs) incident to a Contest. Tenant shall Indemnify Landlord, the Power Test Lessor, the Leemilt's Lessor, the Gettymart Lessor and the Third Party Lessors against any Contest brought by Tenant, whether or not such Contest is brought in Tenant's name.

11.3 Miscellaneous. Tenant shall be entitled to any refund of any Imposition (and penalties and interest paid by Tenant) based upon Tenant's prior overpayment of such Imposition, whether such refund is made during or after the Term. Upon termination of Tenant's Contest of an Imposition, Tenant shall pay the amount of such Imposition (if any) as has been finally determined in such Contest to be due, together with any costs, interest, penalties or other