UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| DUNELLEN, LLC, | : | |
| Plaintiff, | : | |
| v. | : | No. 06-014-ML |
| GETTY PROPERTIES CORPORATION, | : | |
| Defendant. | : | |

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiff hereby moves for partial summary judgment. In support of its motion, Plaintiff relies upon the accompanying memorandum of law, statement of undisputed facts and Affidavit of Avery Noe.

HINCKLEY ALLEN & SNYDER LLP

/s/Mitchell R. Edwards
Gerald J. Petros (#2931)
Charles D. Blackman (#5522)
Mitchell R. Edwards (#6942)
50 Kennedy Plaza, Suite 1500
Providence, RI 02903-2393
(401) 274-2000
(401) 277-9600 (fax)

Attorneys for Dunellen, LLC

Dated: February 27, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2007, a copy of foregoing Motion for Partial Summary Judgment was filed and sent electronically to the following counsel of record:

James W. Ryan, Esq.
Robert K. Taylor, Esq.
Partridge, Snow & Hahn LLP
180 South Main Street
Providence, RI 02903

/s/Mitchell R. Edwards

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| DUNELLEN, LLC, | : | |
| Plaintiff, | : | |
| v. | : | No. 06-014-ML |
| GETTY PROPERTIES CORPORATION, | : | |
| Defendant. | : | |

**DUNELLEN, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Dunellen, LLC ("Dunellen") moves for partial summary judgment because the undisputed facts demonstrate that Getty Properties Corporation ("Getty Properties") is, as a matter of law, responsible for a portion of expenses related to the Wilkesbarre Pier (the "Pier"). Dunellen filed this lawsuit to obtain declaratory relief and to recoup costs it has incurred for Pier expenses including expenses associated with pier security improvements, pier improvements, electricity, engineering, insurance, real property taxes, and repairs and maintenance ("Pier expenses).[1]

Dunellen owns the Pier. Defendant Getty Properties has an easement on the northerly side of the Pier for the delivery of petroleum products and other merchandise used in connection with its petroleum products business. With the benefits of that easement comes the burden of contributing to the costs of the Pier. Getty Properties refuses to pay any portion of these costs because it is not presently using the Pier. But many of the costs associated with maintaining the Pier are not associated with or caused by use. For example, maintaining the Pier against the

[1] For purposes of this motion for partial summary judgment, Dunellen is asking for a declaratory judgment that as a matter of law, Getty Properties is obligated to share in the cost of Pier expenses. Dunellen is not asking the Court to determine, as a matter of law, how much Getty Properties owes to Dunellen for Pier expenses from 2003 to the present. If the Court finds that Getty Properties is obligated to pay a portion of Pier expenses, Dunellen will be happy to provide the Court with evidence of what it has paid for Pier expenses.

ravages of the bay and other natural forces is an expensive and year-round task, regardless of use. Getty Properties must pay its share of those costs.

## I. FACTS

The Court made several findings of fact in its September 2003 Memorandum and Decision, which are binding on the parties here. Dunellen addresses the facts relevant to its motion for partial summary judgment.

For decades, Getty Properties' predecessors-in-interest used the Pier, which was constructed in the 1870s. Dunellen's Statement of Undisputed Facts ("DSUF") at 1. Prior to 1998, the users of the Pier operated on the Pier under the terms of pier operating agreements. DSUFacts at 2. To the best of Dunellen's knowledge, there were a total of eight (8) pier operating agreements. DSUF at 3.

In 1997, "a dispute arose between P&W and Getty Realty [k/n/a Getty Properties] involving the parties' respective Pier repair obligations *under the 1991 Pier Operating Agreement*. Getty hired an engineering firm to investigate and survey the Pier. The firm reported back that the Pier was in poor condition and had exceeded its useful life. The repair dispute was submitted to arbitration." DSUF at 4 (emphasis added).

On December 15, 1997, Getty Realty (k/n/a Getty Properties) and P&W entered into a Settlement Agreement. DSUF at 5. Among other things, under the 1997 Settlement Agreement, Getty Realty (k/n/a Getty Properties) (a) withdrew form the 1991 Pier Operating Agreement effective December 1, 1997 and (b) made a lump sum payment to P&W, representing its accrued and final obligations *under the 1991 Pier Operating Agreement*. DSUF at 6.

On December 19, 1997, Dunellen's predecessor-in-interest, P&W, entered into a Throughput Agreement with Getty Petroleum Marketing Inc. ("Getty Marketing"). DSUF at 7.

The Throughput Agreement replaced the 1991 Amended and Restated Wilkesbarre Pier Operating Agreement. DSUF at 8. The Throughput Agreement contained a five (5) year term. DSUF at 9.

On August 22, 2002, Getty Properties filed a second amended complaint against Capital Terminal Company ("CTC"), Dunellen's predecessor-in-interest, in the United States District Court for the District of Rhode Island seeking a declaratory judgment confirming its right to use the north side of the Pier and appurtenant facilities. DSUF at 10. CTC argued that Getty Properties had abandoned its right to use the north side of the Pier and appurtenant facilities. DSUF at 11.

In September 2003, this Court entered final judgment against Dunellen. This Court declared that Getty Properties has the right to use the north side of the Pier and appurtenant facilities. DSUF at 12. The Court stated that "[i]t is undisputed that Getty Properties (formerly Getty Realty), pursuant to a reservation of rights under the 1941 Deed and through a series of subsequent agreements, had an *easement* giving it the right to use the north side of the Wilkesbarre Pier up until, at least, 1997." DSUF at 13 (emphasis added). At Getty Properties' request, this Court expressly declined to declare Getty Properties' obligations that burden its right to use the north side of the Pier. DSUF at 14.

The Throughput Agreement between Getty Marketing and Dunellen expired in March 2003. DSUF at 15. Getty Properties has not used the Pier since December 1997. DSUF at 16. None of the pier operating agreements are in effect today. DSUF at 17. (Smith Tr. at 39). Indeed, there has not been a pier operating agreement in effect since 1998. DSUF at 18. Therefore, as conceded by Getty Properties' Rule 30(b)(6) witness, Andrew Smith[2], there is no agreement in effect governing the parties' obligations with respect to Pier expenses. DSUF at

[2] Mr. Smith is Getty Properties' President, Secretary, and Chief Legal Officer.

19. The Court recognized in a footnote in its September 2003 Memorandum and Decision that ". . . if Getty Marketing left the Pier there would not be a pier operating agreement in place governing the *obligations that accompany Getty Realty's (now Getty Properties') rights to the Pier*." DSUF at 21 (emphasis added). Dunellen filed this lawsuit to determine those obligations.

According to Getty Properties, it has the right to use the Pier at any time it wishes to do so. DSUF at 22. Smith testified that Getty Properties has no intention of abandoning its right to use the Pier. DSUF at 23. Furthermore, Smith testified that Getty Properties will never "use" the Pier because it is a "landlord" and will lease space for others to use. DSUF at 24. Smith testified that Getty Marketing, Getty Properties' tenant until at least 2015 and potentially until 2049, does not have a "present intention" to use the Pier. DSUF at 25. Of course, Getty Marketing's "present intention" can change at any time.

On November 10, 2005, Dunellen sent a letter to Getty Properties requesting payment for half of the Pier expenses beginning in January 2003. DSUF at 26. Dunellen requested payment in the amount of $494,100.50 for the period January 1, 2003 through September 30, 2005, which is 50 percent of the Pier expenses for that period. DSUF at 27. On November 24, 2005, Getty Properties sent a letter to Dunellen refusing to reimburse Dunellen for any portion of these expenses. DSUF at 28.

## II. ARGUMENT

### A. STANDARD FOR MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, the movant is entitled to summary judgment where the pleadings and discovery materials in the case show that "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The United States Supreme Court has established that the entry of summary

judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and upon which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The movant need only aver "an absence of evidence to support the non-moving party's case" in order to be awarded summary judgment. Id. at 325. If the party with the burden of proof cannot present "definite, competent evidence" to "establish at least a genuine issue of material fact on every element essential to his case in chief," then summary judgment must be awarded to the movant. Vega v. Kodak Caribbean, Ltd., 3 F.3d 476, 379 (1st Cir. 1993) (quoting Mesnick v. General Electric Co. 950 F.2d 816, 822 (1st Cir. 1991), cert. denied, 504 U.S. 985(1992)). See Matsushita Electric Industrial Co., Ltd. V. Zenith Radio Corp., 475 U.S. 574 (1986) (no genuine issue for trial exists "where the record as a whole could not lead a rational tier of fact to find for the non-moving party.").

## B. THE OWNER OF AN EASEMENT HAS A DUTY TO MAINTAIN THE EASEMENT.

In its September 2003 Memorandum and Decision, the Court stated that "[i]t is undisputed that Getty Properties (formerly Getty Realty), pursuant to a reservation of rights under the 1941 Deed and through a series of subsequent agreements, had an *easement* giving it the right to use the north side of the Wilkesbarre Pier up until, at least, 1997." DSUF at 19 (emphasis added). The Court applied the law of easements to determine Getty Properties' right to use the Pier. Therefore, the Court should apply the law of easements to determine Getty Properties' obligations for Pier expenses.

"The duty of maintaining an easement so that it can perform its intended function rests on the owner of the easement *absent any contrary agreement*." Friends of the Sakonnet v. Dutra, 749 F. Supp. 381, 389-90 (D.R.I. 1990) (emphasis added) (internal citations omitted); see also Moran v. Edman, 460 S.E.2d 477 (W. Va. 1995) ("The duty to maintain an easement in such condition that it may be enjoyed is upon those *entitled* to its use, in the absence of some contractual or prescriptive obligation upon the owner of the servient estate to so maintain it.") (emphasis added) (internal citations omitted). Here, there is no contractual agreement governing the parties obligations with respect to maintenance of the Pier. Getty Properties is the dominant estate and has not performed or contributed to the maintenance or repairs of the Pier.

In Lake Lookover v. Olsen, 348 N.J. Super. 53, 65, 791 A.2d 270 (2002), defendants argued that if they surrender their easement rights they need not contribute to the costs of repairing a dam. The court reasoned that if it accepted this argument, it would essentially subvert the rule that "with the benefit [of an easement] ought to come the burden, absent agreement to the contrary." Id. at 66. The Court went on to state:

> The fact is that the present easement holders or their predecessors in title have enjoyed the benefit of the Lake Lookover easement since its creation in the 1920s. It was in that time frame that the easement was granted and the dam created. The dam has undoubtedly suffered wear and tear over the ensuing years and, not surprisingly, after some eighty years it requires substantial rehabilitation. A decision which would permit those who have enjoyed use of the easement to now avoid such payment, simply by an act of purported abandonment of the easement, would make little sense.

Id. Similarly, Getty Properties and its predecessors have also enjoyed the benefit of the Pier since at least 1941. Getty Properties sought and obtained a declaratory judgment from this Court that Getty Properties had not abandoned its right to use the Pier. Getty Properties has no intention of abandoning that right to use the Pier and contends that it can use the Pier at any time it wishes to do so. DSUF at 22-23. Nevertheless, Getty Properties would like to have the benefit

of abandoning the Pier (e.g., no obligations for Pier expenses) without actually abandoning the Pier.

Equity does justice completely and not by halves. See Fields v. Othon, 46 N.E.2d 546, 547 (Mass. 1943). The Court should declare the burdens that come with Getty Properties' right to use the Pier because there is no contract governing the obligations of the parties with respect to Pier expenses. Smith testified that there is no contract, express or implied, between Getty Properties and Dunellen that Getty Properties will not have to pay for Pier expenses unless and until it uses the Pier. DSUF at 20. Therefore, as there is an absence of an agreement to the contrary, Getty Properties has a duty to maintain the Pier.

### C. EQUITY FAVORS GETTY PROPERTIES CONTRIBUTING TO THE PAYMENT OF PIER EXPENSES.

It would not be equitable to insist that one party shoulder the burden of rehabilitating and maintaining a 130-year old Pier so that the other can saunter back, perhaps years later, and avail itself of benefits for which it did not pay. That is precisely what Getty Properties would like this Court to permit it to do here.

Several Pier expenses must be paid regardless of whether Getty Properties or Dunellen actually use the Pier. For example,

- After the terrorist attacks on September 11, 2001, the Department of Homeland Security propounded rules and regulations for facilities that receive petroleum to secure their facilities. See 33 C.F.R. 105 et seq. To date, Dunellen has spent approximately $50,000 to secure the Pier in accordance with the requirements of the United States Coast Guard, which is part of the Department of Homeland Security. DSUF at 29.

- Dunellen intends to install a new fendering system for the East Dolphin and the West Dolphin because the certification from the Rhode Island Coastal Resources Management Council mandates that the Pier be able to accommodate a certain range of vessels, whether or not those vessels actually use the Pier. The new fendering system will also allow for better and safer operations. DSUF at 29.

- Certain repairs and maintenance needs to be done regardless of use. For example, the tide and storms bring debris onto the Pier, which sometimes requires expensive equipment to clean. DSUF at 29.

- Real property taxes on the Pier must be paid regardless of use. Smith testified that if taxes were not paid on the Pier, the City [of East Providence] would file a lien. DSUF at 29. Of course, the City of East Providence could also force the sale of the Pier if the taxes were not paid for a long enough period of time. See R.I. Gen. Laws §§ 44-9-7, 44-9-8, and 44-9-14.

- Insurance must be paid for the Pier regardless of its use. DSUF at 29. For example, if there is damage to the Pier, insurance is necessary to make the Pier functional for those entitled to use it.

- Electricity is necessary for safety reasons so users of the bay can see the Pier and avoid accidents. DSUF at 29. Electricity is also necessary for security reasons. DSUF at 29.

- Engineering is necessary on the Pier, even if the Pier is not in use, so that the Pier's functionality can be evaluated in light of natural erosion or other phenomena that may occur. DSUF at 29.

The allocation of costs to maintain natural gas pipelines presents similar considerations. Most natural gas rates are based on a "demand charge," which corresponds to those fixed costs associated with the right to have access to the pipeline, and a "usage charge" (sometimes "commodity charge"), which corresponds to those variable costs associated with actual usage. See generally ANR Pipeline Co. v. FERC, 71 F.3d 897, 899 n. 5 (D.C. Cir. 1995); Columbia Gas Transmission Corp. v. FERC, 628 F.2d 578, 582 n. 12 (D.C. Cir. 1979). Investment in the pipeline facilities is included in the "demand charge." Columbia Gas, 628 F.2d at 582 n. 12.

Getty Properties should pay fifty percent of the Pier expenses because of its prior use of the Pier and because its ability to use the Pier in the future depends on the payment of these costs. Without payment of the Pier expenses, no one entitled to use the Pier will be able to do so.

## III. CONCLUSION

For the foregoing reasons, Dunellen respectfully requests that the Court grant its motion for partial summary judgment.

HINCKLEY ALLEN & SNYDER LLP

/s/Mitchell R. Edwards
Gerald J. Petros (#2931)
Charles D. Blackman (#5522)
Mitchell R. Edwards (#6942)
50 Kennedy Plaza, Suite 1500
Providence, RI 02903-2393
(401) 274-2000
(401) 277-9600 (fax)
Attorneys for Dunellen, LLC

Dated: February 27, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on February 27, 2007, a copy of foregoing Memorandum of Law in Support of the Motion for Partial Summary Judgment was filed and sent electronically to the following counsel of record:

James W. Ryan, Esq.
Robert K. Taylor, Esq.
Partridge, Snow & Hahn LLP
180 South Main Street
Providence, RI 02903

/s/Mitchell R. Edwards