# EXHIBIT
# 6

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

DUNELLEN, LLC,

Plaintiff,

v. : No. 06-014-ML

GETTY PROPERTIES CORPORATION,

Defendant.

**DUNELLEN'S SUPPLEMENTAL ANSWERS TO GETTY PROPERTIES CORPORATION'S INTERROGATORIES**

Dunellen, LLC hereby supplements its answers to Getty Properties Corporation's ("Getty Properties") Interrogatories dated August 31, 2006 as follows:

**GENERAL OBJECTIONS**

1. Dunellen objects to the Interrogatories to the extent they seek to require it to respond on behalf of any entity other than Dunellen.

2. Dunellen objects to the Interrogatories to the extent they seek to require it to disclose work product, privileged attorney-client communications or information otherwise protected from discovery on the grounds of privilege.

3. Dunellen objects generally and individually to the Interrogatories on the grounds and to the extent they are vague, overbroad, oppressive, unduly burdensome, excessive in number, not relevant to the subject matter of the litigation, and not reasonably calculated to lead to the discovery of admissible evidence.

4. Dunellen objects to the Interrogatories to the extent they seek to require it to provide information that is equally available to Getty Properties.

5. Dunellen objects to the Interrogatories including, but not limited to, the Definitions and Instructions, to the extent they may purport to impose on Dunellen obligations beyond those imposed by the Federal Rules of Civil Procedure and/or the local rules of this Court.

6. Dunellen objects to the Interrogatories to the extent they seek legal opinions or conclusions, or an expert opinion.

7. Dunellen objects to the Interrogatories to the extent they seek confidential, proprietary or trade secret information.

Subject to these "General Objections" and the limitations that are outlined with regard to each specifically numbered discovery request, Dunellen responds to Getty Properties' Interrogatories without waiver of, and with the preservation of the following:

1. The right to object to the use of any responses, or the subject matter thereof, on any ground in any proceedings in any action (including any trials).

2. The right to object on any ground, at any time, to a demand or request for a further response to the Interrogatories or to any other Interrogatories relating to the matters contained herein.

3. The right at any time to revise, correct, add to, supplement, or clarify any of the responses to the Interrogatories contained herein.

**INTERROGATORY NO. 1**

Identify all witnesses having knowledge of facts relating to Your claims and defenses in the Litigation.

**ANSWER NO. 1**

Dunellen objects to Interrogatory No. 1 on the grounds that it is vague, overbroad and unduly burdensome. Subject to and without waiver of these objections and the General Objections, I am aware of the following individuals with knowledge about this case: (a) Robert Eder, Chairman of Dunellen; (b) Avery Noe, Vice President of Dunellen; and (c) Todd Turcotte, principal at the RT Group, an engineering firm.

**INTERROGATORY NO. 2**

Identify the annual amount, in gallons, of petroleum products unloaded at the Pier and transported through the Pipelines to Dunellen's storage facility since January 1, 1998.

**ANSWER NO. 2**

Dunellen objects to Interrogatory No. 2 on the grounds that it is overbroad, unduly burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver of these objections and the General Objections, Dunellen refers to the chart below:

**GALLONS THRU-PUT AT WILKESBARRE PIER**

| YEAR | BARRELS | GALLONS |
|---|---|---|
| 1998 | 707,906.35 | 29,732,067 |
| 1999 | 2,529,976.66 | 106,259,020 |
| 2000 | 4,018,410.18 | 168,773,228 |
| 2001 | 3,930,298.94 | 165,072,555 |
| 2002 | 4,191,482.11 | 176,042,249 |
| 2003 | 5,815,572.39 | 244,254,040 |
| 2004 | 5,370,559.19 | 225,563,486 |
| 2005 | 6,192,970.55 | 260,104,763 |
| Thru July 2006 | 3,598,435.82 | 151,134,304 |

**INTERROGATORY NO. 3**

Identify by type and amount on an annual basis all Pier maintenance expenses incurred by Dunellen since January 1, 1998.

**ANSWER NO. 3**

Dunellen objects to Interrogatory No. 3 on the grounds that it is overbroad, unduly burdensome, and not appropriately limited in time. Dunellen objects to producing any information related to Pier maintenance expenses before 2003 because Dunellen's claims are for expenses incurred beginning in 2003. Expenses before 2003 are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver of these objections and the General Objections, Dunellen states the following:

**PIER EXPENSES**

| **TYPE OF EXPENSES – 2003** | **AMOUNT** |
|---|---|
| ELECTRICITY | $2,933 |
| ENGINEERING | $19,149.17 |
| INSURANCE | $18,600 |
| REAL PROPERTY TAXES | $40,348.85 |
| REPAIRS AND MAINTENANCE | $15,046.22 |
| PIER SECURITY IMPROVEMENTS | 0 |
| PIER IMPROVEMENTS | $131,864.02 |
| | |
| **TYPE OF EXPENSES – 2004** | |
| ELECTRICITY | $2,817 |
| ENGINEERING | $4,621.33 |
| INSURANCE | $15,000 |
| REAL PROPERTY TAXES | $5,396 |
| REPAIRS AND MAINTENANCE | $3,291.01 |
| PIER SECURITY IMPROVEMENTS | $49,879.08 |
| PIER IMPROVEMENTS | $433,475.00 |
| | |
| **TYPE OF EXPENSES – 2005** | |
| ELECTRICITY | $4,469 |
| ENGINEERING | $19,258.07 |
| INSURANCE | $11,625 |
| REAL PROPERTY TAXES | $5,747.62 |
| REPAIRS AND MAINTENANCE | $31,177.19 |
| PIER SECURITY IMPROVEMENTS | 0 |
| PIER IMPROVEMENTS | $199,583.34 |
| | |

| **TYPE OF EXPENSES – 2006 (Jan. – June)** | |
|---|---|
| ELECTRICITY | $2,900 |
| ENGINEERING | $6,832 |
| INSURANCE | $8,250 |
| REAL PROPERTY TAXES | $3,066.20 |
| REPAIRS AND MAINTENANCE | $3,968 |
| PIER SECURITY IMPROVEMENTS | 0 |
| PIER IMPROVEMENTS | $211,373.10 |

**INTERROGATORY NO. 4**

Identify by type and amount on an annual basis all expenses incurred by Dunellen since January 1, 1998 for capital improvements to the Pier.

**ANSWER NO. 4**

Dunellen objects to Interrogatory No. 3 on the grounds that it is overbroad, unduly burdensome, and not appropriately limited in time. Dunellen objects to producing any information related to Pier capital improvements before 2003 because Dunellen's claims are for expenses incurred beginning in 2003. Expenses before 2003 are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver of these objections and the General Objections, Dunellen states the following: see answer to Interrogatory No. 3.

**INTERROGATORY NO. 5**

Identify by type and amount on an annual basis all other expenses incurred by Dunellen since January 1, 1998 in connection with the Pier, including but not limited to taxes, insurance premiums, utility costs, and security costs.

**ANSWER NO. 5**

Dunellen objects to Interrogatory No. 5 on the grounds that it is overbroad, unduly burdensome, and not appropriately limited in time. Dunellen objects to producing

any information related to all other expenses incurred by Dunellen before 2003 because Dunellen's claims are for expenses incurred beginning in 2003. Expenses before 2003 are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver of these objections and the General Objections, Dunellen states the following: see answer to Interrogatory No. 3.

**INTERROGATORY NO. 6**

Identify all Pier-related expenses incurred by Dunellen since January 1, 1998 for which it has been reimbursed, and the source of the reimbursement.

**ANSWER NO. 6**

Dunellen objects to Interrogatory No. 6 on the grounds that it is not appropriately limited in time, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Dunellen objects to producing any information related to Pier expenses incurred by Dunellen before 2003 because Dunellen's claims are for expenses incurred beginning in 2003. Expenses before 2003 are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver of these objections and the General Objections, Dunellen states that beginning in 2003, Global Companies, LLC has reimbursed Dunellen for a portion of the Pier Improvements.

**INTERROGATORY NO. 7**

Identify by type and amount on an annual basis all revenue received by Dunellen that is related in any way to petroleum products unloaded at the Pier from January 1, 1998 to the present.

**ANSWER NO. 7**

Dunellen objects to Interrogatory No. 7 on the grounds that it is overbroad, unduly burdensome, vague, not appropriately limited in time, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver of these objections and the General Objections, Dunellen states the following: Currently, none. The revenue generated by Dunellen from Global is not a function of petroleum products that are unloaded at the Pier. Dunellen's revenue from Global is a function of storage capacity at its terminal. Dunellen's revenue from the Thru-Put Agreement signed by Getty Petroleum Marketing, Inc. is self explanatory and set-forth in that document.

**INTERROGATORY NO. 8**

Identify all persons with whom Dunellen had an agreement to unload, throughput, handle store, transport or sell petroleum products at any time from January 1998 to the present, and describe the effective dates and terms of each such agreement.

**ANSWER NO. 8**

Dunellen objects to Interrogatory No. 8 on the grounds that it is overbroad, unduly burdensome, vague, not appropriately limited in time, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver of these objections and the General Objections, Dunellen states the following: Dunellen has entered into an agreement with Global Companies, LLC.

**INTERROGATORY NO. 9**

Identify all damage to the Pier and unloading facilities caused by any person since January 1, 1998, and any repairs made as a result of that damage.

**ANSWER NO. 9**

Dunellen objects to Interrogatory No. 9 on the grounds that it is overbroad, unduly burdensome, vague, and not appropriately limited in time. Dunellen objects to producing any information related to damages to the Pier before 2003 because Dunellen's claims are for expenses incurred beginning in 2003. Subject to and without waiver of these objections and the General Objections, Dunellen states that repairs were done to the West Dolphin and East Dolphin on March 20, 2003 in the amount of $6,565.51 and $52,181.01 respectively. Global Companies, LLC was the responsible party. A repair to a hose leak was also done on March 26, 2003 in the amount of $2,012.01. Fleet Environmental was the responsible party.

**INTERROGATORY NO. 10**

Identify by type and amount on an annual basis all expenses Dunellen has incurred to operate and maintain the Pipelines since January 1, 1998.

**ANSWER NO. 10**

Subject to and without waiver of the General Objections, Dunellen states the following: None.

**INTERROGATORY NO. 11**

Identify all persons who have studied, surveyed, investigated, analyzed or reported on Pier operations, maintenance or repairs since January 1, 2003.

**ANSWER NO. 11**

Subject to and without waiver of the General Objections, Dunellen states the following: Todd Turcotte of RTG Group has studied, surveyed, and/or investigated the

Pier with respect to capital improvements, damages to the Pier, dredging, Pier dolphins, Pier security, among other things.

**INTERROGATORY NO. 12**

For each person identified in response to Interrogatory Number 11, describe briefly and give the dates of the study, survey, investigation, analysis or report performed.

**ANSWER NO. 12**

Dunellen objects to Interrogatory No. 12 on the grounds that it is overbroad, unduly burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Dunellen also objects to Interrogatory No. 12 to the extent that it seeks privileged, confidential, and/or trade secret information and/or work product. Subject to and without waiver of these objections and the General Objections, Dunellen states the following:

- 1/26/2003 – Wilkesbarre Pier Capital Improvements Report
  This report was prepared to identify capital improvement projects for the Pier and determine preliminary costs and an implementation schedule over a 10-year period.

- 3/4/2003 – Damage Summaries
  This summary report was prepared to identify the damages and repairs along with costs that have occurred at the Pier over the past 5 to 6 years, and also to identify what types of vessels were causing the most frequent damage. This summary report was used to identify the priorities for capital improvements that would minimize future damage.

- 10/28/2003 – Waterline Service Life Evaluation
  This evaluation was to determine the expected service life of the new underground waterline that provides fire protection capabilities at the Pier.

- 8/8/2005 – Wilkesbarre Pier Pavement Alternatives Evaluation Letter Report
  This letter report was prepared to evaluate alternatives for replacement, patching, or crack sealing the existing pavement and provide recommendations and estimated construction costs.

- 6/6/2003 – Pipe Load Comparison
  This analysis was completed to determine the historic load on the pipe supports and the new load of the fire protection waterline supported by the pipe supports.

- 1/2/2004 – Improvements Dredging Evaluation Letter Report
  This Letter Report was prepared to evaluate the maximum depth that the ship berth could be dredged to and the impacts on the soldier pile retaining wall. Also, this letter report represented alternatives fro replacing and/or modifying the Existing soldier pile retaining wall.

- 1/29/2004 – Preliminary Dredging Cost Estimate Memorandum
  This Memorandum was a supplemental Memo to the Improvements Dredging Evaluation Letter Report to outline the estimated construction costs for maintenance dredging and the improvements dredging including retaining wall improvements.

- 9/22/2003 – Pot Hole Repair Memo
  This Memorandum Documents the results of repairing pot holes at the Pier.

- 9/22/2003 – Damage Incident Report
  This Letter Report was to document the damage sustained to the Pier and the necessary repairs required to bring the Pier back into proper safe working service.

- 10/26/2003 – Damage Incident Report and USCG Response
  This Letter Report was to document the damage sustained to the barge manifold at the Pier and the pressure test results required for USCG authorization to continue discharge of the berthed vessel.

- Fall/Winter 2003 – Design/Installation of New Barge Breasting Dolphins
  Two New Barge Breasting Dolphins were designed and one installed west of the East Dolphin. As part of this design soil borings were completed for pile design. Plans and specifications were completed by RTG and the installation of the dolphins was oversaw and managed by RTG. The design originally included two breasting dolphins, but the second dolphin was relocated to be attached to the Middle Dolphin.

- Winter 2004/2005 – Design/Installation of New Mooring Dolphin
  RTG performed the analysis and design, and prepared plans and specifications for the installation of a new mooring dolphin. The mooring dolphin is utilized by larger tankers as the bow mooring point. RTG oversaw and managed the installation of the new mooring dolphin.

- Fall/Winter 2003 – Design/Installation of New Barge Breasting Dolphins
  In conjunction with the Barge Breasting Dolphin project above RTG designed the installation of one barge breasting dolphin fender on the Middle Dolphin and reinforcement of the Middle Dolphin. Plans and specifications were completed by RTG and the installation of the dolphins was oversaw and managed by RTG.

- Fall/Winter 2003 – Design Replacement of Existing Distillate Pipeline
  RTG performed the analysis and design of the replacement of the existing 12-inch distillate pipeline with a new 16-inch Distillate Pipeline. The design, plans and specifications, and construction management was performed by RTG retained by Getty through an agreement reached by Capital Terminal Company/Dunellen and Getty.

- Summer 2004 – Security Vulnerability Assessment Report
  In conjunction with main Terminal, a Security Vulnerability Assessment was performed and a report prepared as part of the Facility Security Plan.

- Winter/Spring 2006 – Design Replacement of Existing Fendering System
  RTG completed the analysis and design of the repairs/replacement of the existing loading platform fendering system. RTG prepared the plans and specifications for the fabrication and installation of these repairs and oversaw the construction.

- Summer 2006 – Design Reinforcement of East Dolphin
  RTG performed the analysis and design of the reinforcement of the East Dolphin for future improvements planned to the fendering system of the ship berth. RTG prepared plans and scope of work for the reinforcement of the East Dolphin and oversaw the construction.

**INTERROGATORY NO. 13**

Identify all communications between You and any federal, state or local official from January 1, 2003 to the present relating to the condition or operation of the Pier.

**ANSWER NO. 13**

Subject to and without waiver of the General Objections, I am not aware of anyone from Dunellen having any conversations with any federal, state or local official regarding the condition of the Pier. Representatives from Dunellen have had conversations with the U.S. Coast Guard regarding operations of the Pier, largely with respect to identifying the person in charge at the facility and security issues.

**INTERROGATORY NO. 14**

Identify all communications between you and Getty Petroleum Marketing, Inc. from January 1, 2003 to the present relating to the condition or operation of the Pier.

**ANSWER NO. 14**

Subject to and without waiver of the General Objections, I am not aware of anyone from Dunellen having any conversations with anyone from Getty Petroleum Marketing, Inc. regarding the condition of the Pier. I have had a few conversations with Paul Stendardi about the operation of the Pipelines on the Pier.

**INTERROGATORY NO. 15**

Identify by type and amount on an annual basis all expenses that You anticipate will be incurred to repair, maintain and improve the Pier during the next ten years.

**ANSWER NO. 15**

Subject to and without waiver of the General Objections, I refer Getty Properties to the 10-Year Improvement Project Cost Allocation Schedule.

**INTERROGATORY NO. 16**

Identify the factual basis for each affirmative defense asserted in Your answer.

**ANSWER NO. 16**

Dunellen objects to Interrogatory No. 16 on the grounds that it seeks legal conclusions and is unduly burdensome. Dunellen also objects to Interrogatory No. 16 to the extent it seeks privileged information or work-product. Several of Dunellen's affirmative defenses are legal defenses that will be argued before the Court. For example, Getty Properties' claims are barred in whole or in part by res judicata and/or collateral estoppel. These are legal defenses in which Dunellen will rely upon the decision of Judge Lisi dated September 5, 2003, the order of Judge Smith dated October 4, 2005, and the Report and Recommendation of Judge Almond dated January 14, 2005. Subject to and without waiver of these objections and the General Objections, Dunellen states the following: Dunellen has the contractual right to use the pipelines under the terms of the Grant and Agreement, as amended and the Operating Agreement (For Use of Pipelines), as amended. Those agreements govern the parties' rights and obligations with respect to the pipelines.

Dunellen is not affecting Getty Properties right to use the Pier. Getty Properties has the right to use the Pier as set forth in Judge Lisi's decision. Getty Properties also has the obligation to pay for pier expenses.

The Counterclaim fails to state a claim on which relief can be granted. This is a legal defense, and does not depend on facts outside of those set forth in the Counterclaim.

Dated: February 6, 2007

AVERY NOE

STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

Sworn and subscribed to before me on this _______ day of February 6, 2007.

Notary Public
Print Name: Kandy M. Marchand
My Commission Expires: 03/22/2010

DUNELLEN, LLC

As to Objections

Gerald J. Petros (#2931)
Mitchell R. Edwards (#6942)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (fax)

**CERTIFICATION**

I hereby certify that I hand delivered and mailed a copy of Dunellen's Supplemental Answers to Getty's Interrogatories on February 6, 2007 to counsel of record listed below:

James W. Ryan, Esq.
Robert Taylor, Esq.
Partridge, Snow & Hahn, LLP
180 South Main Street
Providence, RI 02903

#747114