# EXHIBIT
# 7

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

DUNELLEN, LLC
VS. C.A. NO.:06-014 ML
GETTY PROPERTIES CORP.,

DEPOSITION OF AVERY NOE, witness in the above-entitled cause, taken on behalf of the Defendant, pursuant to notice, before Sally Brassard, CSR, a Notary Public in and for the State of Rhode Island and Providence Plantations, at the office of Partridge Snow & Hahn LLP, 180 South Main Street, Providence, Rhode Island, on February 7, 2007, at 9:00 a.m.

APPEARANCES:

FOR THE PLAINTIFF: HINCKLEY ALLEN & SNYDER, LLP
BY: MITCHELL R. EDWARDS, ESQUIRE
FOR THE DEFENDANT: PARTRIDGE SNOW & HAHN LLP
BY: ROBERT K. TAYLOR, ESQUIRE

ALLIED COURT REPORTERS
115 PHENIX AVENUE
CRANSTON, RI 02920
(401) 946-5500

down those taxes for you.
Q. I see in 2003 that the taxes were approximately $40,000; correct?
A. That's correct.
Q. And in 2004 and in 2005, the taxes declined to approximately $5,000; correct?
A. That's correct.
Q. What accounts for that drop in the taxes?
A. Well, the City had a re-evaluation program going on. We had a chance to go and challenge and present our case with them and we did, and it was reduced.
Q. Next category is repairs and maintenance. What does that include?
A. If I may just talk in general and not try to say what was done each and every year. They're saying, such as, pothole. We put a coating on the blacktop, we put in new electrical boxes, catwalks. Catwalks, do you know what a catwalk is?
Q. Yes.
A. Okay. Catwalk repairs, the tide and storms -- many times it brings in all kinds of junk up on the pier which we have to clean and sometimes that can be expensive. We have to bring down equipment

to clean it. So, it's cleaning of the pier. There is wench repairs.

It's that nature, I can't just remember each and every repair that we do every year, but I do in the course of the year. As we're doing them, I'm fully aware of it, and involved in it, but I can't just sit here today and tell you every repair that we've made at the pier.

Q. Were you responsible for deciding which items fell into the repair and maintenance category?

A. Yes, I was.

Q. And how did you decide that something was a repair and maintenance expense?

A. It's decided, based upon mostly reoccurring items such as potholes, such as repair the catwalks.

Q. Wear and tear-type items, normal wear and tear?

MR. EDWARDS: Objection.

A. I would say reoccurring items, if that fits into that category.

Q. Items that you mean reoccurred because of the use of the pier?

MR. EDWARDS: Objection.

A. I would say these are reoccurring items and I want to just stick with that.

Q. Well, but do some of them reoccur because of the use of the pier?
A. Maybe some others would happen whether you use the pier or not.
Q. Does repair and maintenance include things like, snowplowing?
A. Yes.
Q. And that's something that needs to happen because the pier is in use; correct?
MR. EDWARDS: Objection.
A. It would have to happen whether the pier was in use or not, and I will explain why, it's because I have to expect a pier every day under Homeland Security Regulations.
Q. Does snowplowing on the pier ever damage the pier?
A. There's no evidence that it has.
Q. Next category down under 2003 is Pier Security Improvements. What is that category related to?
A. It relates to the new Homeland Security Regulations that state that you have to be a secured facility. We have installed electronic gates, card readers where we can maintain control on who comes and goes. That's also why we have to have security guards when vessels are in.
Q. There's specific regulations that apply?

A. Yes, it's enforced by the U.S. Coast Guard.
Q. And is that based on the fact that there are pipelines on the pier?
MR. EDWARDS: Objection.
A. It's based on the fact that it is a petroleum receiving facility.
Q. So, if the pier is not being used as a petroleum receiving facility, those regulations wouldn't apply?
MR. EDWARDS: Objection. You're asking him about a legal conclusion whether regulations apply. You can answer.
A. The regulations are vague. For example, if you just use that pier to transport passengers, it would apply, too. Or, if you brought in lumber, it could apply. So, you have to read the regulations and see what it applies. I know it applies to me. So, that's the only part I'm interested in.
Q. And then the last category is pier improvements. What does that relate to?
A. Pier improvements relate to -- well, a number of improvements that we're making at the pier.
Q. How did you -- were you responsible for deciding what items be placed in the pier improvements

C-E-R-T-I-F-I-C-A-T-E

I, SALLY BRASSARD, a Notary Public in and for the State of Rhode Island, duly commissioned and qualified to administer oaths, do hereby certify that the foregoing deposition of AVERY NOE, the witness in the above-entitled cause, was taken before me on behalf of the Defendant at the offices of Partridge Snow & Hahn, LLP, 180 South Main Street, Providence, Rhode Island, on February 7, 2007, at 9:00 A.M., that previous to examination of said witness, who was of lawful age, he was first sworn by me and duly cautioned and sworn to testify the truth, the whole truth, and nothing but the truth, and that he thereupon testified as in the foregoing manner as set out in the aforesaid transcript.

I further certify that the foregoing deposition was taken down by me in machine shorthand and was later transcribed by computer and that the foregoing deposition is a true and accurate record of the testimony of said witness.

Pursuant to Rule 5 (d) and 30 (f) of the

Federal Rules of Civil Procedure, original transcripts shall not be filed in court; therefore, the original is delivered and retained by Defendant's attorney.

I have enclosed with a copy of the deposition a correction and signature page, which must be signed before a Notary Public.

IN WITNESS WHEREOF, I have hereunto set my hand this 10th day of February, 2007.

SALLY BRASSARD, NOTARY PUBLIC/CSR-RPR
(MY COMMISSION EXPIRES JANUARY 16, 2009)