# EXHIBIT E

2111

Grant and Agreement

This Grant from Getty Oil Company (Eastern Operations), Inc., a Delaware corporation ("Getty") to Robert H. Eder ("Eder") and this Agreement between Getty and Eder are made this 6th day of AUGUST ,1975.

W I T N E S S E T H

WHEREAS, Getty, by virtue of a Grant from Seekonk Realty Corp. dated August 6 ,1975, and recorded in Book 302 , Page 351 of the East Providence Land Records is the owner of certain rights, privileges and easements (referred to hereinafter as the "easement"), hereinafter described, in, through, across and under a strip of land (referred to hereinafter as the "easement area") running approximately from the Wilkesbarre Pier, so-called to the Ten Mile River in Phillipsdale, all in the City of East Providence, State of Rhode Island (said easement area being hereinafter more particularly described), which easement permits the installation of pipelines and related facilities, apparatus and equipment for the transmission of petroleum products; and

WHEREAS, Getty has the right to use the north side of said Wilkesbarre Pier, including the unloading platform and other appurtenances thereto for the construction and operation of pipelines, unloading hoses and related facilities, apparatus and equipment required for the convenient unloading of petroleum products from ships and barges, together with the right to have such ships and barges use the berth serving said north side of the pier; and

NO REVENUE STAMP REQUIRED

BOOK 302 PAGE 373

WHEREAS, Getty intends to install within said easement area and on the north side of Wilkesbarre Pier two 16" pipelines, unloading hoses and other related facilities, apparatus and equipment required to unload petroleum products from ships and barges berthing at Wilkesbarre Pier and to deliver the same by pipelines to storage terminals in the Phillipsdale area of said City of East Providence; and

WHEREAS, Eder is interested in obtaining the permanent and perpetual rights to enjoy the easement and to use the easement area and the north side of the pier and the berth serving said north side, together with the pipelines, unloading hoses, and related facilities, apparatus and equipment, in common with Getty and any others entitled thereto, and Getty is willing to grant such rights under certain terms and conditions;

NOW, Therefore, in consideration of the premises and the mutual covenants and obligations of the parties hereunder, it is agreed, and Getty does herein grant, as follows:

1. Getty agrees to promptly commence and to diligently pursue to completion the construction of two 16" petroleum pipelines running from existing unloading facilities or from unloading facilities to be constructed upon the pier by Getty and along the north side of the pier to the easement area, and thence along and within the easement area to the point in Phillipsdale where the boat lines of Independent Oil Company leading from the Getty barge dock to the Independent Oil Company storage terminal cross the easement area, at which point within said easement area

Getty will install a new manifold for each of the two pipelines. Getty shall as part of said construction install all facilities and equipment needed to safely and conveniently operate said pipelines and unload petroleum products from ships and barges and deliver same by pipelines to storage terminals in Phillipsdale, including the necessary protection system and utilities. All of said work shall be performed at Getty's sole expense. All of said construction, including pipelines, unloading hoses, manifolds, protection system, utilities and other related facilities, apparatus and equipment is hereinafter referred to as the "pipelines". Except for construction upon the pier itself, all of said pipelines shall be located within the easement area.

Getty convenants that Eder shall have the permanent right under the provisions of this Grant and Agreement to use all unloading facilities, apparatus and utilities located on or used in conjunction with the north side of the pier or the vessel berth, which Getty uses in the process of unloading petroleum products from ships and barges berthing at Wilkesbarre Pier.

2. Getty hereby grants and conveys to Eder, his heirs, successors and assigns, in common with Getty and any others entitled thereto, the permanent right, privilege and easement in perpetuity to install, construct, use, maintain, operate, repair, remove, and replace lines of pipe for the transmission of petroleum products, and activities incidental thereto, in, through, across and under the land and tracks of Providence and Worcester Company from Wilkesbarre Pier to Phillipsdale in the City of East Providence, State of Rhode Island, within the limits of a strip of land hereinafter called the "Easement Area" which varies in width

and is approximately 11,760 feet in length, shown on a plan recorded in Plat Book 21, Pages 1 through 7 in the East Providence Land Records and made a part hereof by reference entitled "Plan Showing Easement Area for Petroleum Pipeline Purposes in East Providence, Rhode Island, by Stanley Engineering, Inc., Scale: 1" = 40', August 1970" and generally described as follows:

Commencing at the southeasterly portion of land known as Wilkesbarre Pier on a 40' wide right-of-way retained by Providence and Worcester Railroad Company in a deed to Colonial Beacon Oil Company dated August 28, 1941, and recorded in Book 130, Page 1, of the East Providence Land Records;

Thence proceeding in a general northerly direction along said 40' wide right-of-way retained by Providence and Worcester Railroad Company in said deed to Colonial Beacon Oil Company to a 40' wide right-of-way reserved by Providence and Worcester Company in a Quitclaim Deed to Union Oil Company of California dated November 15, 1971, and recorded in Book 284, Page 29, of the East Providence Land Records;

Thence continuing in a general northerly direction along said latter 40' wide right-of-way to a 20' wide right-of-way also reserved to Providence and Worcester Company in said Quitclaim Deed dated November 15, 1971;

Thence continuing in a general northerly direction along said 20' wide right-of-way and other land of Providence and Worcester Company to station 0 + 00 of the monumented branch of the Providence and Worcester Railroad Company laid out and known as the "Southerly Terminus East Providence Branch P. and W.R.R., July 1883, John W. Ellis, C.E., examined and approved by S. L. Minot, March 1884" which station is also 48 + 57.79 of the monumented baseline of the East Providence Branch of the Providence and Worcester Railroad Company;

Thence continuing in a general northerly direction to monumented station 105 + 78.69 on the East Providence Branch of the Providence and Worcester Railroad Company, which station is approximately 310' south of the southerly side of the Ten Mile River as it now exists and crosses under the monumented baseline of the East Providence Branch of the Providence and Worcester Railroad Company.

Meaning and intending to Grant to said Eder all the rights, privileges, and easements granted to Getty by Seekonk Realty, Corp. in that certain Grant dated August 6 ,1975, and recorded in Book 302 , Page 351 , of the East Providence Land Records subject to all the reservations, limitations, restrictions and obligations contained in said instrument explicitly or by reference; provided, however, that there is specifically excluded from this Grant the right, title, and interest assigned to Getty by Seekonk Realty Corp. to construct, maintain, and use a pier in the area of Wilkesbarre Pier in the City of East Providence, Rhode Island, and other related rights which have heretofore been assigned by Getty to Providence and Worcester Company and provided further, that the easement itself of 10 feet in width shall be located in the Easement Area by Getty upon its construction of the pipelines.

The above Grant is made without covenants of title of any kind.

The easement herein granted is subject also to the provisions of the following instruments, insofar as applicable to the easement area hereinabove described and as delineated on the plan which is a part hereof by reference:

(a) Quitclaim Deed from Providence and Worcester Company to Union Oil Company of California dated November 15, 1971, and recorded in Book 284, Page 29, of the East Providence Land Records.

(b) Agreement and Deed of Conveyance among Providence and Worcester Company, Hudson Realty Corporation, and Union Oil Company of California dated November 15, 1971, and recorded in Book 284, Page 22, of the East Providence Land Records.

(c) Agreement and Deed of Release among Providence and Worcester Company, Hudson Realty Corporation, and Union Oil Company of California dated November 15, 1971, and recorded in Book 284, Page 52 of the East Providence Land Records.

Together with the permanent and perpetual right, privilege and easement to use the pipelines to be constructed by Getty within said easement area in common with Getty and any others entitled thereto.

Provided, however, that except as herein otherwise provided, Eder shall not have the right to remove or replace the pipelines to be constructed by Getty under paragraph 1 hereof and in no event shall any enlargements, improvements or extensions of said pipelines or the construction of additional pipelines extend beyond the northerly terminus of said easement area as defined above.

In the event that Eder constructs and installs additional pipelines such construction and installation shall cause only minimum interference with the use and maintenance of existing pipelines, and the use of said additional pipeline or pipelines shall cause no interference with the use and maintenance of existing pipelines; provided, further, that Eder shall never exercise his rights hereunder to such an extent or in such a manner as to prevent Getty at any time in the future, from constructing and installing one additional pipeline over and above the two pipelines originally constructed and installed, the right of Getty to construct and install one additional pipeline being recognized to be absolute.

3. Getty also grants and conveyes to Eder, his heirs, successors and assigns the permanent and perpetual right, privilege and easement to use in common with Getty and any others entitled thereto the rights held by Getty, deriving originally from a deed to Colonial Beacon Oil Company dated August 28, 1941 and recorded in East Providence in Book 130, Page 1, and reserved by Getty in a Deed of Conveyance to Providence and Worcester Company dated August 6, 1975 and recorded in Book 302, Page 367 of

the East Providence Land Records, to use the north side of the Wilkesbarre Pier and the berth serving said north side of the pier.

Together with the permanent and perpetual right, privilege and easement to use the pipelines to be constructed by Getty upon the north side of said pier in common with Getty and any others entitled thereto.

4. Upon completion by Getty of the construction of the pipelines required by paragraph 1 hereof, if Eder shall thereafter elect to exercise his rights to use said pipelines, Eder shall be required to pay Getty the sum of Two Hundred Fifty Thousand ($250,000.) Dollars either in a lump sum, on a per barrel basis, or by combination of both methods. If Eder shall elect to pay all or part of said sum on a per barrel basis, the rate shall be four cents ($0.04) per barrel for each barrel of petroleum products unloaded by Eder over the pier and through the pipelines. Invoices shall be issued by Getty to Eder monthly and shall be payable upon receipt. In the event that Eder should at any time permanently discontinue using the pipelines and shall so notify Getty in writing, Eder shall have no further obligation to Getty with respect to the payment of the remaining balance of said $250,000. In such event, Eder shall be required to re-convey all the right title and interest acquired herein to Getty.

5. So long as Eder shall continue to use said pipelines, Eder shall pay each year a proportionate share of the total cost of maintenance and repairs to and property taxes upon said pipelines, the share to be paid by Eder to be based upon the gallonage transmitted through said pipelines by Eder as compared with the total gallonage transmitted through said pipelines. In

addition, Eder shall be responsible for one-half of the above costs as may be attributable to third party use of the pipelines (as set forth in paragraph 10) based upon the gallonage transmitted through said pipelines by all such third parties as compared with the total gallonage transmitted through said pipelines. Such obligations, among others, are embodied in an operating agreement for said pipelines, a form of which is appended hereto as Exhibit "A" and made a part hereof.

6. Getty, for itself and for its successors and assigns, covenants to and with Eder, his heirs, successors and assigns that Getty will use said easement and pipelines only for the purpose of delivering petroleum products to its own presently-existing terminal site in Phillipsdale or to other presently-existing storage tanks located on the easterly side of Dexter Road which Getty may have the right to use for the storage of its own products. Such storage tanks shall be considered part of Getty's own "presently-existing terminal site".

7. Eder shall have the right to use said easement and pipelines for the purpose of delivering petroleum products to the storage terminal site in Phillipsdale owned by Independent Oil Company and such right shall continue in the event of the sale or lease of all of part of said terminal property. For this purpose, Eder shall have the right to assign all or part of his rights hereunder to Independent Oil Company or a lessee or purchaser of the Independent Oil Company storage terminal site.

8. Provided, however, that if Getty should acquire either directly or indirectly additional storage terminal property on the easterly side of Dexter Road in Phillipsdale, or if Eder

should acquire either directly or indirectly additional storage terminal property on the westerly side of Dexter Road in Phillipsdale, then Getty and its successors and assigns may use said easement and pipelines to deliver petroleum products to its additional storage terminal properties on the easterly side of Dexter Road, and Eder, and his heirs, successors and assigns may use said easement and pipelines to deliver petroleum products to his additional storage terminal properties on the westerly side of Dexter Road, all without the consent of the other party and without payment of any additional charge for such use. For the purposes of this paragraph, the words "acquire indirectly" and for purposes of the following paragraph only, the words "after acquired terminal property" shall refer to property owned by a corporation effectively controlled by Getty or Eder or to a partnership or joint venture in which Getty or Eder is a principal partner or joint venturer. Nothing contained in this Grant and Agreement shall be construed to permit Getty, its successors and assigns, to use said easement and pipelines to deliver petroleum products to the westerly side of Dexter Road or to permit Eder, his heirs, successors and assigns, to use said easement and pipelines to deliver petroleum products to the easterly side of Dexter Road without the consent of the other party, which consent is not required to be given. Provided, however, if such consent is given no charge shall be imposed by the consenting party upon such use; but if such consent is refused the party so refused hereby waives all rights, claims or remedies which may be otherwise available to the party so refused against the refusing party.

9. Getty, for itself and for its successors and assigns, further covenants to and with Eder, his heirs, successors and assigns that Getty will not permit any petroleum products of its own or of others to pass through its presently-existing terminal site (as defined in paragraph 6 above), or after acquired terminal property or to first be stored in its presently-existing terminal site or after acquired terminal property and then to pass through into any other storage terminal without the written consent of Eder which consent Eder is not required to give. Nothing in this Paragraph shall be deemed to limit the right of Getty to remove petroleum products from its presently-existing terminal site or after acquired terminal property by truck, boat or railroad car.

Eder, for himself and for his heirs, successors and assigns, further covenants to and with Getty its successors and assigns, that Eder will not permit any petroleum products of his own or of others to pass through the presently-existing terminal site of Independent Oil Company or after acquired terminal property or to first be stored in the presently-existing terminal site of Independent Oil Company or after acquired terminal property and then to pass through into any other storage terminal without the written consent of Getty which consent Getty is not required to give. Nothing in this paragraph shall be deemed to limit the right of Eder to remove petroleum products from the presently-existing terminal site of Independent Oil Company or after acquired terminal property by truck, boat or railroad car.

10. Except as herein otherwise provided, neither Getty nor Eder shall, without the express written consent of the other, use said easement or pipelines to deliver petroleum products to any other storage terminal whether owned by them or not or permit the use of said easement or pipelines for the petroleum products of a third party. In the event that a third party is permitted to use said easement or pipelines by mutual written consent of Getty and Eder, such party shall be required to pay six cents ($0.06) per barrel for each barrel of petroleum products delivered through the pipelines. This charge shall be adjusted annually during the anniversary month of the execution of this Grant and Agreement (the month and year of execution being the base month) to reflect changes in the Consumer Price Index for Urban Wage Earners and Clerical Workers U.S. City Average - All Items - Series A (1967 = 100) as determined by the Bureau of Labor Statistics of the United States Department of Labor. The calculation so made may represent either an increase or a decrease determined by the movement in said Consumer Price Index between the base month and each successive anniversary date of the execution of this Grant and Agreement. It is intended that the calculated charge for third party use of the pipelines shall represent the amount of six cents ($0.06) per barrel in the month and year of execution of this Grant and Agreement, adjusted upward or downward in accordance with the movement of said Consumer Price Index as shown in the next most recent publication thereof prior to each such anniversary date of execution. All revenue derived

from such third party use of said pipelines shall be shared equally by Getty and Eder. Eder shall be entitled to his share of revenue even though all or part of the $250,000. payment provided in paragraph 4 hereof shall be unpaid, but until said $250,000. is paid in full, Eder's share of such revenue shall be applied to the payment of said $250,000. Provided, however, that if Eder shall permanently discontinue the use of the pipelines and shall so notify Getty, then Eder shall no longer be entitled to a share of such third party revenue.

11. If at any time, Getty or Eder, their heirs, successors or assigns, shall construct or install within the easement area or on the pier any extensions, alterations, replacements or improvements of the pipelines, referred to in paragraph 1 hereof, or any additional pipelines then, Eder and Getty shall have the permanent and perpetual right to use any such extensions, alterations, replacements, improvements or additional pipelines under the terms and conditions of this Grant and Agreement and the pipeline operating agreement appended hereto.

12. Any claims, demands, causes of action, damages, suits or costs whatsoever asserted by any person, firm or corporation, arising out of or in any way connected with the use and enjoyment of the easement and pipelines and caused solely by the negligence of one of the parties hereto or anyone deriving their rights from such party shall be the responsibility of the negligent party, and said party shall indemnify, protect and save harmless the other party from such claims, demands, causes of action, damages, suits or costs. In the event the loss is caused by the joint or concurrent negligence of the parties hereto or

those deriving their rights from a party, such loss shall be borne equally by the parties hereto and either of them shall notify the other promptly of any suit, claim or demand against it and shall give the other party reasonable opportunity to make a defense against such suit, claim or demand. Each party hereto which is a user of the pipelines shall be required to carry at its own expense general public liability insurance for personal injury or property damage with limits of at least $1,000,000/$3,000,000/ $1,000,000.

13. Getty shall keep the pipelines in good condition and repair and shall comply with all provisions of federal, state, and local laws, ordinances and regulations pertaining to the maintenance and use of said pipelines. In the event said pipelines are damaged or destroyed, Getty shall restore same to a condition as nearly equal to prior condition as is practical. Getty shall also be required to pay all taxes and assessments upon the pipelines. Provided, however, that Eder shall be required to pay a proportionate share of the cost of such repairs, maintenance, and taxes as provided in Paragraph 5 hereof. In the event that Getty fails to make any repairs which may be necessary, after notice in writing from Eder; or if Getty fails to pay any taxes when due, Eder, after thirty (30) days' written notice to Getty of its intention to do so, may perform said repairs or pay said taxes, and Getty's portion of the cost thereof shall be a charge against Getty which may be offset against subsequent payments due Getty hereunder, in addition to other remedies available to Eder at law.

14. At any time after Getty shall have constructed and installed the pipelines as hereinabove provided, Getty shall

have the right, in its own and sole discretion, to convey the said pipelines including any additional pipelines and its interest in the easement, easement area, pier and vessel berth to Eder, by appropriate written recordable instruments, for a consideration of One ($1.00) Dollar, provided said pipelines shall be at the time of such conveyance in good working order. In the event Getty elects to exercise said right, it shall give Eder written notice of its intention at least sixty (60) days prior to the delivery of an instrument of conveyance to Eder. Eder shall be obligated to accept delivery of said instrument of conveyance and to forthwith file same for record. Said instrument of conveyance shall be made expressly subject to the rights of third parties having interests and/or other rights in and to the said pipelines, easement, easement area, pier and vessel berth. In the event Getty exercises its right under this paragraph, Getty shall have no further rights or interest in the said pipelines, easement, easement area, pier and vessel berth and shall have no further obligations under this Grant and Agreement or with respect to the said pipelines, easement, easement area, pier and vessel berth. Provided, however, that in the event of any such conveyance, Eder shall have the right to continue to use such facilities, apparatus and utilities as may be necessary to adequately and conveniently unload petroleum products over the pier and deliver the same by said pipelines. The provisions of this paragraph shall be in addition to, and not in lieu of, any other rights of Getty to assign its rights under this Grant and Agreement and/or convey the pipelines and its interest in the easement and easement area. This right of Getty to convey to Eder shall

govern and control over any inconsistent or contrary provisions contained in this Grant and Agreement.

15. All notices required or permitted hereunder shall be considered as properly given if delivered in writing, personally, or sent by certified United States Mail, postange prepaid with return receipt requested addressed to Getty at 660 Madison Avenue, New York, New York or to Eder at 100 Dexter Road, East Providence, Rhode Island. Notice served by mail shall be deemed given on the date on which such notice is deposited in the United States Mail.

16. The covenants and provisions of this Grant and Agreement shall extend to and be binding upon the parties hereto, their heirs, successors and assigns.

Signed, sealed and delivered as of the day and [illegible] first above written.

WITNESS:

[illegible]

WITNESS:

Robert H. Eder

STATE OF NEW YORK
COUNTY OF NEW YORK

In NEW YORK, N.Y. on the 6th day of AUGUST 1975, before me personally appeared T.A. DIFFER VICE PRESIDENT, of Getty Oil Company (Eastern Operations), Inc., to me known and known by me to be the party executing the foregoing instrument, and he acknowledged said instrument by him executed to be his free act and deed, and the free act and deed of Getty Oil Company (Eastern Operations), Inc.

Eugene F. Gervino
Notary Public

EUGENE F. GERVINO
NOTARY PUBLIC, State of New York
No. 60-6499375
Qualified in Westchester County
Commission Expires March 30, 1976

STATE OF NEW YORK
COUNTY OF NEW YORK

In NEW YORK, N.Y. on the 6th day of AUGUST, 1975, before me personally appeared Robert H. Eder, to me known and known by me to be the party executing the foregoing instrument, and he acknowledged said instrument by him executed to be his free act and deed.

Eugene F. Gervino
Notary Public

EUGENE F. GERVINO
NOTARY PUBLIC, State of New York
No. 60-6499375
Qualified in Westchester County
Commission Expires March 30, 1976