increase in annual maintenance costs caused thereby including any additional tax assessments. A party hereto who subsequently thereto becomes a new user of additions, enlargements or improvements made by another party or parties hereto, and who derives additional economic or other benefit from the use of the new facility as compared with a pre-existing facility replaced or altered thereby will be obligated, by reason of such use, to pay to such other party or parties who have already paid for the additions, enlargements or improvements its share of the cost thereof calculated as follows: The cost thereof less depreciation at the rate of 5% per annum from date of installation divided by the number of then parties using said addition, enlargement or improvement provided, however, that such payment shall be finally adjusted between the parties using such new facilities at the end of a two-year term from such party's first use of such new facility based upon each party's proportionate use thereof during said two-year period. Thereafter each such user party shall bear and pay a share of the increased annual pier maintenance costs attributed to such addition, enlargement or improvement in proportion to the party's use of same. In any event title to said facilities shall vest in each of the owners referred to herein in proportion to their investment in the said additions, enlargements or improvements.

A party hereto which otherwise has a right to and in fact installs additional loading and unloading facilities and additional pipelines shall receive and discharge products over said pier in accordance with the terms of this Agreement.

V. Indemnification

Each of the parties hereto agrees with respect to its own acts or omissions to indemnify and save harmless each of the other parties hereto from any and all claims, liability, cost, and expense sustained by or asserted against such other parties for or in connection with injuries, death, loss, and damage of any kind or character to persons or property by whomsoever suffered or asserted resulting from or arising out of said acts or omissions on the part of said indemnifying party, its employees, agents, or contractors.

VI. Water/Air Pollution Control

Any provision of this contract to the contrary notwithstanding, the parties will comply with all laws, rules, and regulations applicable by their terms to a terminal operator relating to water or air pollution and will, in the case of an escape or discharge of middle distillates, motor gasolines, solvents, chemicals, or other products from the pier or land contiguous to the pier (regardless of the cause), promptly take whatever measures are necessary to prevent pollution damage from thereby arising and to mitigate any such damage.

When escape or discharge of the products mentioned above occurs from the pier or land contiguous to the pier GRMC may, at its option, and upon notice to the other parties undertake such measures as are reasonably necessary to prevent or mitigate resulting pollution damages, unless the user of the pier at the time of such occurrence promptly undertakes same. GRMC shall keep the other parties advised of the nature of the measures intended to be taken by it. Any of the aforementioned measures

actually taken by GRMC shall be at the expense of the party using the pier at the time of such occurrence (except to the extent that such escape or discharge was caused or contributed to by GRMC), provided that if the party user considers said measures should be discontinued, the party may so notify GRMC and thereafter GRMC shall have no right to continue said measures under the provisions of this Clause provided, however, if GRMC undertakes such measures without notice to the parties, or continues such measures after notification from the party user to discontinue, said party user agrees that it will not raise or plead as a defense to a claim for reimbursement for the expenses so incurred by GRMC that in undertaking or performing such measures, GRMC acted as a volunteer and any such defense of "volunteer" is hereby waived by the party user provided that the party user does not waive hereby any other defense it may have unless said party user is notified and permits said measures to be continued as aforesaid.

The above provisions are not in derogation of such other right the parties may have under this contract, or may otherwise have or acquire by law or any international convention. Notwithstanding any other provision of this contract, the terms and provisions of this Clause shall be applicable only between GRMC, Union, FSC and PGW, and shall not affect any liability of GRMC, Union, FSC, and PGW to third parties or governments for pollution or other causes resulting from terminal operation, loading or unloading of middle distillates, motor gasolines, solvents, chemicals, or other products.

VII. Insurance

Except as otherwise provided herein, each company will assume the risk of loss or damage by fire or extended coverage perils to its interest in the pier and facilities thereon.

VIII. Assignments, Withdrawals and Term

It is the intention and purpose of this agreement that there will be no more than four (4) operative members under this agreement (except as this may be modified by the unanimous consent of the signatories hereto), although other persons or entities may use the facilities covered in this agreement so long as they are performing functions permitted to the operative members of this agreement. In any such case, the operative member assumes all liability for any failures caused by any person or entity claiming through or under the operative member. If pursuant to this Clause, other persons or entities use the pier, the operative member at its sole discretion may permit one such other person or entity to do its own scheduling of vessels pursuant to Clause I above.

Any party hereto has the right to withdraw from this agreement upon written notice to the other parties hereto, provided they have retired any accrued obligations as covered by this agreement.

This agreement will remain in full force and effect so long as there are two or more parties bound to this agreement.

In the event that GRMC sells or leases its terminal on Massasoit Avenue, and/or Union sells or leases its terminal contiguous to the Wilkesbarre Pier, and/or FSC sells or leases its terminal on Dexter Road, and the

purchaser or lessee agrees to be bound by the terms of this agreement by written communication to the other three parties, such purchaser or lessee shall become the operative member hereunder taking the place of the party selling or leasing. In such an event where a lease is involved, the lessee shall cease to be an operative member of this agreement upon termination of its lease and the party leasing shall once again have the right to become the operative member upon written notice to the other three parties.

Provided however, FSC agrees that it shall not be allowed to assign this Operating Agreement unless such assignment is made in connection with a sale or lease of the entire land comprising the former Exxon Petroleum terminal in East Providence, Rhode Island so that this Operating Agreement will run with the land and will be assignable only to the owner or lessee of the entire land. In the event of an assignment of this Operating Agreement by FSC or by any successor owner of the entire land comprising the former Exxon Petroleum terminal, the assignee shall agree to assume all of the obligations of the assignor, and in the event of such assumption the assignor shall be relieved of its obligations thereunder, except that in the case of an assignment connected with a lease, the assignment shall be effective only for the duration of the lease.

BOOK 351 PAGE 108

IN WITNESS WHEREOF this agreement has been duly executed the day and year aforesaid.

GETTY REFINING AND MARKETING COMPANY

By: [signature]

UNION OIL COMPANY OF CALIFORNIA

By: [signature]

FUEL STORAGE CORPORATION

By: [signature]

PROVIDENCE AND WORCESTER COMPANY

By: [signature]

| | |
|---|---|
| Originating Dept. | [illegible] |
| Law | [illegible] |
| Accounting | [illegible] |
| Credit | [illegible] |
| Fin. Planning | [illegible] |
| [illegible] | [illegible] |
| Tax | [illegible] |
| EXECUTIVE AUTHORITY | |
| [illegible] | Date |

State of Oklahoma

County of Tulsa

In Tulsa, Oklahoma on the 11th day of January, 1978, before me personally appeared W. H. Nichols, of Getty Refining and Marketing Company, to me known and known by me to be the party executing the foregoing instrument, and he acknowledged said instrument by him executed to be his free act and deed, and the free act and deed of Getty Refining and Marketing Company.

Notary Public

State of Illinois

County of Cook

In Schaumburg on the 17th day of November, 1977, before me personally appeared F. B. Way, Vice President, of Union Oil Company of California, to me known and known by me to be the party executing the foregoing instrument, and he acknowledged said instrument by him executed to be his free act and deed, and the free act and deed of Union Oil Company of California.

Notary Public

State of MASS.

County of MIDDLESEX

In CAMB. on the 8th day of November, 1977, before me personally appeared ELIOT W. DANAULT, Treasurer, of Fuel Storage Corporation, to me known and known by me to be the party executing the foregoing instrument, and he acknowledged said instrument by him executed to be his free act and deed, and the free act and deed of Fuel Storage Corporation.

Notary Public

331 200

State of New York

County of Westchester

In Greenburgh, on the 11th day of November, 1977, before me personally appeared Robert H. Eder, President of Providence and Worcester Company, to me known and known by me to be the party executing the foregoing instrument, and he acknowledged said instrument by him executed to be his free act and deed and the free act and deed of Providence and Worcester Company.

Roberta V. Wittenberg
Notary Public

ROBERTA V. WITTENBERG
Notary Public, State of New York
Qualified in Westchester County
Commission Expires March 30, 1978

RECORDED

JAN 19 2 31 PM '78

EAST PROVIDENCE, R.I.
JAMES M. BEGLEY JR.
CLERK