# EXHIBIT O

AMERICAN ARBITRATION ASSOCIATION

----------------------------------------X

Providence & Worcester Railroad Company

Claimant,

Case No. 13-181-00666-97

-against-

Getty Petroleum Corporation,

Respondent.

----------------------------------------X

**CLAIMANT'S STATEMENT OF CLAIM**

1. Claimant Providence and Worcester Railroad Company ("P&W") is the owner of a pier and berthing facilities in the Seekonk River in the city of East Providence, Rhode Island, otherwise known as the Wilkesbarre Pier (the "Pier").

2. Respondent, Getty Petroleum Corp., successor to Getty Refining and Marketing Company ("Getty"), is a company engaged in the business of refining and marketing petroleum products.

3. This arbitration concerns the rights and obligations of P&W, and Getty, in respect of the use, maintenance, repair and replacement of the Pier. In or around January 1, 1991, P&W entered into an Amended and Restated Wilkesbarre Pier Operating Agreement (the "Agreement") with Union Oil Company of California ("Union"), Capital Properties, Inc. ("CPI") and respondent Getty (collectively the "operative members"), amending and restating a June 12, 1985 agreement governing the parties' use of the Pier. A copy of the Agreement is annexed as Exhibit A. The parties and their

predecessors-in-interest have owned, had interest in, and/or utilized the Pier, since before 1941. See, Agreement, page 1.

4. Pursuant to the Agreement, in exchange for the right to the free and uninterrupted use of the berth on the northerly side of the Pier for the delivery of petroleum products and other merchandise used in connection with its or their petroleum products business, Getty, with the other operative members, is responsible to pay an agreed share of the costs associated with pier maintenance. This arbitration arises because of Getty's persistent failure to discharge, and its attempt to evade, those obligations. P&W seeks a determination of Getty's obligations in respect of necessary Pier repair and/or replacement, and an order requiring Getty to satisfy those obligations.

5. The Agreement does not obligate Getty or the other operative members to pay rent to P&W. Rather, the Agreement provides that Getty, and the other operative members, pay Pro-Rata Shares of all Pier Maintenance Costs, as provided in Section IV of the Agreement. Getty has been the primary user of the Pier. Getty's Pro-Rata Share of costs, based on usage, is currently 73.8% (the "Pro-Rata Share"). The Agreement defines Pier Maintenance Costs to include:

> "Repair and/or replacement of any part of the existing pier structure to the extent such repair is necessitated by use of the northerly berth of the pier for delivery of petroleum products and other products used in connection with the petroleum products businesses of the parties."

Agreement, Section IV(A)(1).

6. Section IV generally allocates to P&W responsibility

for administering the overall maintenance of the Pier. That administration requires the cooperation and good faith of Getty, and the other operative members.

7. Section IV of the Agreement sets forth the mechanism for making necessary repairs to the Pier. P&W notifies the operative members of the necessary repairs and the associated cost estimates, and then obtains a contractor to perform the repairs. The operative members are required to pay for Pier Maintenance Costs on a proportionate use basis. For repairs exceeding $10,000, the Agreement requires that P&W obtain the consent of three operative members of the Agreement, including one "major user" other than P&W. Agreement, Section IV(C). Such consent may not be unreasonably withheld. Id. Accordingly, the Agreement requires that P&W obtain Getty's consent prior to undertaking major repairs and/or replacement.

8. Over the past several years, the Pier has been in need of certain repairs and replacements. P&W has repeatedly notified Getty of the need for such repairs and replacements. And Getty has repeatedly refused to authorize necessary repairs. From as early as December, 1992, Getty was put on notice that certain repairs were necessary to avert the risk of damage to the loading dock and related facilities and to vessels themselves. At the same time, Getty was provided with a list of priority repair items. And again in September, 1994, Getty was notified that based on its failure to authorize repairs that were necessary in 1992-1993, the condition of the Pier was more serious. Still, Getty refused to

consent to necessary repairs.

9. In or around September, 1996, P&W, following further advice it received from its engineering consultants, compiled a list of Priority Repair Items ("Priority Repair List"), describing each necessary repair and its estimated cost, and communicated the same to Getty, seeking Getty's consent to the extent necessary to proceed with imminently necessary repairs and requesting development of a plan to effect timely all items on the Priority Repair List. Many of the repair items appearing on this list were included in the 1992/1993 priority repair list aforementioned. A copy of the Priority Repair List is annexed as Exhibit B.[1]

10. Getty has failed to consent, and has unreasonably withheld such consent, to the various necessary repairs as set forth in the 1996 Priority Repair List.

**FIRST CLAIM FOR RELIEF-REPAIRS NECESSARY TO PRECEDE REQUIRED DREDGING**

11. Existing reports rendered by engineering consultants for both P&W and Getty concur that the repairs described in Item 1 of the Priority Repair List -- replacement of all tie-back tendons and repair of HP pivot piles -- are necessary. Union and CPI have both consented to this repair.

12. Getty has repeatedly withheld its consent to the repairs identified in Item 1 of the Priority Repair List, impeding the orderly maintenance and repair of the Pier, breaching its

[1] The Priority Repair List reflects estimated costs as of September, 1996. New estimates are being prepared which likely will reflect higher costs.

contractual obligations under the Agreement, and evading its obligation to pay for necessary repair and/or replacement.

13. On June 6, 1997, CPI notified P&W that P&W was not in compliance with Section IV(A)(3) of the Agreement and demanded that P&W dredge to a depth of -40 feet MLW on the northerly side of the Pier. A copy of CPI's June 6, 1997 letter to P&W is annexed as Exhibit C. Such dredging is a nondiscretionary Pier Maintenance Obligation, and the required dredging can only be accomplished during the months of November and December. Again on October 1, 1997, CPI reiterated its demand, directing that the required dredging occur this year in anticipation of its receipt of larger ships. A copy of CPI's October 1, 1997 letter to P&W is annexed as Exhibit D. The reports of engineering consultants for both P&W and Getty concur that Item 1 of the Priority Repair List -- replacement of all tie-back tendons and repair of HP pivot piles -- are repairs necessary <u>prior to</u> dredging.

14. P&W secured the permit necessary to accomplish the repairs identified in Item 1 of the Priority Repair List. This permit expires in April, 1998. Given the short time frame in which P&W has to complete the necessary repairs in order to discharge its contractual obligation to dredge to the specified level, P&W instituted this arbitration in accordance with Section X of the Agreement. Accordingly, expedient resolution of the issues relating to dredging, and Item 1 of the Priority Repair List, is

imperative.[2]

15. In the face of Getty's persistent and unreasonable refusal to consent thereto, P&W is entitled to a determination and declaration that Getty be deemed to have consented to the repair listed in Item I of the Priority Repair List, and to a judgment requiring Getty to pay its Pro-Rata Share of the costs thereof as set forth in the Agreement.

**SECOND CLAIM FOR RELIEF -**
**ALL NECESSARY REPAIR AND/OR REPLACEMENT**

16. Getty has persistently and unreasonably withheld its consent to all other necessary repairs as stated on the Priority Repair List, all of which are necessary Pier Maintenance Costs of repair and/or replacement as defined in the Agreement.

17. P&W is entitled to a determination and declaration that Getty be deemed to have consented to all repairs as set forth in the Priority Repair List, and to a judgment requiring Getty to pay its Pro-Rata Share of the costs thereof, as set forth in the Agreement.

**THIRD CLAIM FOR RELIEF - NONWITHDRAWAL FROM AGREEMENT**
**AND NON-EVASION OF OBLIGATIONS**

18. On October 1, 1997 (immediately following a September 30, 1997 preliminary conference before this panel setting December, 1997 and January, 1998 dates to proceed with this

---

[2] Based on CPI's express requirements for its continued use of the Pier and to comply with CPI's demand, P&W is consulting with its engineers to explore emergency interim measures which may allow P&W to move forward with the dredging without further delay. In such event, Getty will be responsible for its Pro-Rata Share of the costs of such measures.

arbitration) Getty delivered to P&W a notice of its withdrawal from the Agreement. A copy of Getty's October 1, 1997 "withdrawal" is annexed as Exhibit E. (At no time during or prior to the September 30 conference did Getty suggest that it intended to withdraw from the Agreement.)

19. The Agreement provides (Section IX(B)) that no party may withdraw from the Agreement unless it has first satisfied all outstanding accrued obligations thereunder.

20. Getty's various aforesaid obligations to consent to, and to pay its Pro-Rata Share of, Pier Maintenance Costs, including but not limited to the Priority Repair Items delineated in the September 1996 schedule, are accrued obligations which must be satisfied in full before Getty may effectively withdraw from the Agreement.

21. Getty's attempt to terminate its participation in the Agreement and to abandon the Pier without making any appropriate provision for necessary repair and/or replacement thereof is a bad faith attempt to evade its obligations to pay for Pier repair and/or replacement as required under the Agreement, constitutes an independent breach of the Agreement, and accordingly, must be rejected.

22. Even if Getty were able to or permitted to withdraw from the Agreement, it should not be permitted, and the Agreement does not contemplate that it should be permitted, thereby to evade obligations to pay for necessary repairs and/or replacement of the Pier as aforesaid.

23. P&W rejected Getty's notice of its withdrawal from the Agreement. A copy of P&W's October 2, 1997 rejection of Getty's withdrawal from the Agreement is annexed as Exhibit F.

24. P&W is entitled to a declaration that Getty's withdrawal is ineffective, that Getty has no right to terminate its participation in the Agreement unless and until it satisfies all its aforesaid obligations in respect of Pier Maintenance, and that Getty shall in all events be required to pay its Pro-Rata Share of all necessary repairs as aforesaid.

WHEREFORE, Claimant P&W prays for the judgment and determination of this Panel:

1. (a) Declaring that Getty be deemed to have consented to the repairs listed in Item 1 of the Priority Repair List and (b) requiring Getty to pay to P&W its Pro-Rata Share of the costs thereof;

2. (a) Declaring that Getty be deemed to have consented to all repairs listed on the Priority Repair List and (b) requiring Getty to pay to P&W its Pro-Rata Share of the costs thereof; and

3. (a) Declaring that Getty's attempted withdrawal from the Agreement is ineffective and that Getty has no right to terminate its participation in the Agreement unless and until it

satisfies all its aforesaid obligations in respect of Pier Maintenance and (b) declaring that Getty is in all events required to pay its Pro-Rata Share of necessary repairs as aforesaid; all together with an award of P&W's attorneys fees, costs, disbursements and such other and further relief as this panel may deem just and proper.

Dated: October 7, 1997
New York, New York

Respectfully submitted,

TOFEL BERELSON SAXL & PARTNERS, P.C.
Attorneys for Claimant
Providence & Worcester Railroad Company
780 Third Avenue
New York, New York 10017
(212) 752-0007

To: Hill Rivkins & Hayden LLP
Attorneys for Respondent
Getty Petroleum Corporation
90 West Street
Suite 1000
New York, New York 10006
(212) 669-0600