# EXHIBIT T

# AMENDED AND RESTATED LEASE AGREEMENT

This Amended and Restated Lease Agreement entered into this 9th day of June, 2003 between DUNELLEN, LLC, a Rhode Island limited liability company ("Dunellen"), and GLOBAL COMPANIES, LLC, a Delaware limited liability company ("Global").

## RECITAL

WHEREAS, Dunellen is the owner of a petroleum products storage facility situated at 100 Dexter Road, East Providence, Rhode Island (the "Terminal"); is also the owner of the so-called Wilkesbarre Pier and associated vessel berth (the "Pier"), which is subject to the rights of others to use; and has the perpetual rights to use two (2) sixteen inch (16") petroleum pipelines connecting the Pier with the Terminal (the "Pipelines"); and

WHEREAS, the Terminal, the Pier and the Pipelines are hereinafter collectively called the "Demised Premises" or the "Premises"; and

WHEREAS, Capital Terminal Company and Global Petroleum Corp. entered into a lease agreement (hereinafter called the "Facility Operation Agreement") dated as of September 1, 1998; and

WHEREAS, the Facility Operation Agreement was amended as of September 1, 1998, and thereafter amended as of May 1, 1999, and further amended as of March 17, 2000; and

WHEREAS, Dunellen is the successor in interest to Capital Terminal Company and Global is the successor in interest to Global Petroleum Corp. in the aforesaid Facility Operation Agreement, as amended; and

WHEREAS, the parties desire to further amend the Facility Operation Agreement, as amended in this Amended and Restated Lease Agreement (hereinafter called "Lease" or "Agreement").

NOW THEREFORE in consideration for the mutual covenants set forth herein Dunellen and Global agree that Paragraphs "1" through "29" of the Facility Operation Agreement, as amended, are hereby deleted in their entirety and in their place the following paragraphs are added:

1. Term. This Agreement shall become effective September 1, 1998 and end April 30, 2013 ("Initial Term"), and shall automatically renew thereafter on a year-to-year basis unless either party provides the other with a written notice of cancellation not less than ninety (90) days prior to the expiration of the Initial Term or any yearly extension thereof.

Despite anything to the contrary contained in this Paragraph 1, Global shall have the option to terminate the Initial Term on any April 30th, but in no event earlier than an effective

DEFENDANT'S EXHIBIT
7 - Noe
2-7-07 SB

DUNELLEN 000549

termination date of April 30, 2008, by providing Dunellen written notice of cancellation not less than one (1) year prior to the termination date.

2. Facilities. Dunellen shall provide at the Demised Premises tankage therein together with all pipelines necessary for performance of its services to Global. The facilities and services provided by Dunellen for Global shall include the following:

(i) exclusive use of tanks commonly known as #25, 32, 67, 97, 152 and 154 located at the Terminal.

(ii) exclusive use of the loading rack at the Terminal ("Truck Rack") with equipment for the loading of products from storage tanks into trucks, subject to the provisions of Paragraph 29 hereof.

(iii) non-exclusive use of the Pier and facilities thereon and associated vessel berth, and the Pipelines leading from said Pier to the Terminal.

3. Services. Dunellen shall also provide the following services to Global in connection with the terminaling of products:

(a) Receive, handle, unload and store, on a dedicated basis, fuel oil, distillates and diesel fuel at the Pier, Pipeline and Terminal. (All No. 2 fuel oil and diesel fuel discharged at the Terminal Truck Rack for resale in Rhode Island shall have a sulphur content not to exceed the Rhode Island legal maximum.) Receipt of diesel additives and red dye shall be scheduled a minimum of two (2) days in advance).

(b) Deliver products from the storage tanks into the designated trucks, pipelines, or marine vessels of Global or Global customers as directed by Global in such quantities and upon such reasonable terms as shall be specified by Global. If Global requires Low Sulfur Diesel to be dyed, for the purpose of providing its customers with non-taxable, "Off-Road Diesel", Dunellen shall provide the manpower at no additional cost to Global to "splash dye" the trucks of Global's designated customers. Global will supply and pay for the dye with instructions to Dunellen. It shall be Dunellen's sole responsibility to make certain that the product in each truck that has been "splash-dyed" meets all IRS legal limits for dye content. Dunellen is to notify Global immediately if product in tanks should ever fall short of IRS or EPA legal limits for dye and sulfur content, and Global and Dunellen will seek to rectify such deficiency as quickly as possible. In no event will Dunellen knowingly deliver product which does not meet IRS and EPA legal limits for dye and sulfur content into Global's designated trucks.

(c) Take daily gauges of Global's products in storage and deliver to Global at the close of each day by confirmed facsimile or by overnight mail, daily inventory reports in such reasonable forms as Global shall furnish, together with all original bills of lading, truck tickets and other shipping documents.

(d) Furnish sufficient manpower to perform the services set forth herein for the following times:

(i) With respect to Subparagraph 3(a), 24 hours a day, 365 days per year.

(ii) With respect to Subparagraphs 3(b), 3(c), 3(e) and 3(g):

Monday through Friday from 5 a.m. to 11 p.m.
Saturday from 6 a.m. to 6 p.m.
Terminal will not be open on Sundays.

The only exceptions to these hours shall be during Dunellen's observation of the following holidays when the Terminal will be closed:

-January 1st
-Memorial Day
-July 4th
-Labor Day
-Thanksgiving
-Christmas

Should any holiday fall on a Sunday, the following Monday shall be observed as a holiday. Should any holiday fall on a Saturday, the previous Friday shall be observed as a holiday.

Global may require at any time, upon (30) days notice, that the Terminal be open for additional hours. Global will reimburse Dunellen for such additional hours at the rate of $35.00 per hour.

(e) Dunellen shall designate an individual to receive all credit instructions or changes in credit terms made from time to time by an individual designated by Global for this purpose. Dunellen agrees that upon receipt by such designee of credit instructions or written changes in credit terms, Dunellen will promptly follow such instructions. Dunellen's initial designee shall be Avery L. Noe. Global's initial designee shall be its Credit Manager, John Coughlin.

(f) All sales of products and all billing during the term hereof shall be in the name of Global.

(g) Dunellen shall arrange for a daily transfer by overnight mail to Global of all checks and shipping slips for the sale of petroleum products to Global's customers. Dunellen agrees to accept deliveries of products on Global's behalf as directed by Global from (i) pipeline, (ii) barge or (iii) trucks.

4. Base Charges: Global shall pay to Dunellen a Base Charge for the year commencing May 1, 2003 and ending April 30, 2004, for the services provided at the Premises, at the annual rate of $1,764,372.00, payable in equal monthly installments of $147,031.00. The Base Charge, including charges for additional petroleum storage tankage as specified in Paragraph 29, shall increase on May 1st of each year of the Initial Term and any extensions

thereto, commencing on May 1, 2004, so that it is equal to the Base Charge then in effect multiplied by a fraction, the numerator of which shall be the Consumer Price Index for the month immediately prior to the effective date of such adjustment, and the denominator of which shall be the Consumer Price Index for the same month one (1) year earlier; as used herein, the Consumer Price Index means the Consumer Price Index – All cities Average Urban Wage Earner (CPI-U) (1982-84=100) as published by the Bureau of Labor Statistics of the United States Government, or if no longer published, Dunellen shall apply that index which most closely reflects the components of the Consumer Price Index (CPI-U). The Base Charge adjusted shall remain in effect until the next adjustment. Base Charges are payable monthly in advance on or before the first day of each month.

5. Additional Charges:

(a) Beginning with May 1, 2003 and every year thereafter, Global shall pay an additional charge equal to the amount that the real estate taxes and/or assessments assessed on or against the Demised Premises by the City of East Providence for that year exceed the real estate taxes and/or assessments assessed on or against the Demised Premises for the year 2002. This provision does not apply to any increase in real estate taxes and/or assessments applicable to additional tankage not accepted by Global under Paragraph 29 or to other future improvements to the Demised Premises unrelated to the use of the Demised Premises by Global. If in any year there is a reduction in the amounts applicable, Global will receive a commensurate credit.

(b) If, during any year of the Initial Term commencing with May 1, 2003, and any extensions thereto, more than four million (4,000,000) barrels of product are delivered by the Terminal to Global's designated trucks, pipelines, barges, or vessels, Global agrees to pay Dunellen an additional "excess" delivery fee of ten cents ($.10) per barrel on each such barrel exceeding said 4,000,000 barrels.

(c) If, during the Initial Term of this Agreement commencing with May 1, 2003 and any extensions thereto, the New York Mercantile Exchange (NYMEX) achieves spreads in its #2 Heating Oil contract closing quotes in the same consecutive trading months of one cent ($0.0100) per gallon or greater (where the front month is discounted in relation to the outer month) for ten (10) consecutive days, Global shall pay Dunellen an additional fee of two and four tenths ($0.024) cents per shell barrel for the NYMEX contract month that shows the positive spread. This formula shall be applicable only for the first twelve (12) NYMEX contract months following the then current month of the Initial Term or extensions thereto. (The fee described herein shall only be applied once in any given month of the Initial Term or extensions thereto, regardless of whether NYMEX has achieved in any given month more than one ten consecutive day period of one cent spreads).

6. Measurement. The quantities of Global products received by Dunellen through any deliveries shall be determined by gauging the respective storage tanks before and after each loading; and the quantities in storage at any time shall be determined by gauges of such tanks; all quantity determinations shall be corrected to sixty degrees Fahrenheit based on U.S. Gallons of two hundred thirty-one (231) cubic inches and forty-two (42) gallons to the barrel, or metric equivalents, in accordance with latest supplement or amendment to ASTM-1P Petroleum Measurement Table (ASTM Designation D1250), Table No. 6B. Quantities loaded into trucks

for each loading shall be determined by proved meter readings. Nothing herein shall be deemed to limit or restrict Global's right to, at any time, arrange for any sampling, gauging or analyses as Global may reasonably require.

7. Title to Products/Risk of Loss. Title to all products received, stored and handled by Dunellen hereunder shall remain at all times in Global. Global will absorb any product loss resulting from normal handling, skrinkage, clingage and evaporation up to a maximum of one quarter of one percent (.0025). All other risks of loss, unless caused by the negligence or willful misconduct of Dunellen or its agents, employees or authorized representatives shall remain, at all times, with Global.

8. Taxes. Except for real estate and personal property taxes on property owned by Dunellen, which shall be paid by Dunellen, Global shall pay any taxes, fees, licenses and other charges, if any, imposed by any federal, state or local governmental authority on its product stored on the property of Dunellen, or related to the facilities and services provided herein, including by way of example, but not limitation, inventory and sales tax.

9. Insurance.

(a) Dunellen shall secure and maintain in full force and effect during the term of this Agreement, Commercial General Liability Insurance in "Best's" B+ or better rated companies to limits of $5 Million per occurrence and in the aggregate annually. Dunellen shall also carry its own worker's compensation insurance, it being understood that there is no employer – employee relationship between Global and of Dunellen personnel.

(b) Dunellen shall also provide, secure, and maintain in force for the duration of this Agreement, (i) Wharfinger's Liability in "Best's" B+ or better rated companies to limits of 10 Million Dollars each occurrence and in the aggregate annually and (ii) Tank Pollution Liability Insurance Pollution to limits of 10 Million Dollars each occurrence and in the aggregate annually, in "Best's" B+ or better rated companies.

(c) Dunellen shall also provide, secure, and maintain in force during the term of this Agreement, all risk property insurance on the Demised Premises. Such insurance shall provide a blanket amount of insurance on all real and personal property of Dunellen and of Global naming Global as additional insured as its interest may appear, specifically including buildings, storage tanks, oil, wharfs or docks, fire extinguishing equipment, piping above and below ground, valves, pumps and pads, loading structures, elevated pipe supports, foam house and equipment, gates, fences, signs and any other miscellaneous equipment used with respect to operations at the Demised Premises. The perils against which the property is to be insured shall not be less than all risk property insurance including earthquake and flood, with the exception that the Pier will not be covered by flood insurance. The settlement or evaluation basis for such insurance shall not be less than the replacement cost value as the term is commonly understood for insurance purposes. The amount of insurance shall be maintained at full insurable value without any coinsurance, such full insurable value to be ascertained not less frequently than every two (2) years.

(d) Dunellen shall deliver Certificates of Insurance naming Global as an additional insured providing that such insurance shall not be reduced or canceled without thirty

(30) days advance notice in writing to Global. To the extent available, Dunellen will provide copies of said policy or policies including all endorsements, riders and amendments.

(e) If Dunellen shall fail to provide the insurance coverages required hereunder, Global may, (but shall not be required to) after notice to Dunellen, provide such insurance in which event Global shall be entitled to a credit hereunder for the amounts so paid.

(f) Global and Dunellen mutually agree that with respect to any loss which is covered by insurance or required to be covered by insurance hereunder, the party carrying such insurance and or suffering said loss releases the other of and from any and all claims with respect to such loss and hereby waive any right of subrogation against the other party. The parties acknowledge there are deductibles in the amounts set forth on each certificate. Each party shall be responsible for the loss not covered due to the deductible to the extent it or its agents, customers or contractors are otherwise responsible for the loss or damage.

(g) Except as expressly set forth herein, each party shall maintain its own insurance.

10. Inspection. Global shall have the right, from time to time and without prior notice, to inspect Dunellen's facilities; to make physical inspections of Global's products in storage at the Terminal; to audit Dunellen's books and records relating to receipts, withdrawals and inventories of Global's products; and to enter the Terminal and place a representative within the facilities for whom Dunellen shall furnish temporary desk space for auditing purposes. Global's exercise of the rights set forth herein shall be in such manner as not to interfere with or diminish Dunellen's control over and responsibility for the operation of the Terminal.

11. Water Disposal. Global shall, at its sole cost and expense, dispose of all water gains in Dunellen's tanks that results from Global's products unless caused by Dunellen. Dunellen shall notify Global of any water discovered in Dunellen's tanks within forty-eight hours of such discovery.

12. Maintenance. Unless caused by the negligence or misconduct of Global, or Global's customers, suppliers or agents, Global shall not be obligated to pay for any maintenance or repair expenses other than the Additional Charges. Notwithstanding anything to the contrary contained herein, Global will be fully responsible for any damage to the Pier or Terminal due to any of Global or Global's customers vessels or trucks utilizing the facility not otherwise caused by the action, inaction, negligence or willful misconduct of Dunellen, or its employees, representatives, or agents. Global (subject to the limitations set forth herein above) will be responsible for paying all fees and maintaining all licenses and permits in connection with its operation and issued in its name and to comply with all applicable laws, rules, ordinances and regulations related to its operations. Except as otherwise set forth herein, Dunellen, at its sole cost and expense, shall comply with all laws, statutes, ordinances, rules and regulations of any governmental authority having jurisdiction concerning its ownership of the Demised Premises and its operations. Dunellen will be solely responsible for paying all fees and maintaining all licenses and permits in connection with ownership of the Demised Premises.

13. Termination.

(a) This Agreement is made upon the condition that if Global shall neglect or fail to perform or observe any of Global's covenants and agreements herein including (without limitation) the covenants and agreements with regard to the timely payment of Base Charges, Additional Charges, reimbursement or any other charge payable by Global to Dunellen, Dunellen may immediately or any time thereafter without prejudice to any remedies which might otherwise be available) and without prejudice to Global's liability for damages as herein stated, terminate this Agreement and remove therefrom the effects of Global and those claiming under Global, provided, however, Global shall have 3 business days after written notice to cure a monetary default and such reasonable time (not to exceed 30 days) after written notice to cure a non-monetary default. Dunellen shall not be responsible for any damage or destruction to products as a result of the exercise of its rights pursuant to this Subparagraph 13(a). Upon the termination of this Agreement, Global shall pay to Dunellen the Base Charges and Additional Charges payable by Global to Dunellen up to the time of such termination. Global agrees to pay Dunellen any other costs or damages arising out of Global's default which are available at law or in equity, including reasonable attorneys fees.

(b) This Agreement is made upon the condition that if Dunellen shall neglect or fail to perform or observe any of Dunellen's covenants and obligations hereunder Global may immediately or anytime thereafter (without prejudice to any remedies which might otherwise be available) and without prejudice to Dunellen's liability for damages as hereinafter stated, terminate this Agreement provided however that Dunellen shall have 3 business days after written notice to cure a monetary default and such reasonable time (not to exceed 30 days) after written notice to a cure a non-monetary default.

(c) Either party hereto may, at its option, terminate this Agreement by giving ten (10) days written notice of termination to the other party if such other party shall file a voluntary petition in bankruptcy, make an assignment for the benefit of creditors, consent to the appointment of a receiver or trustee of a major part of its property, file a petition or answer seeking reorganization or arrangement under the Federal Bankruptcy Laws, or any similar applicable law or statute of the United States or any state thereof, as now existing or hereafter in effect, or file a petition to take advantage of any insolvency act, or upon the expiration of thirty (30) days following the adjudication of such other party as a bankrupt by a court of competent jurisdiction, or the entry of any order approving a petition seeking reorganization or arrangement of such other under the Federal Bankruptcy Laws or any similar applicable law or statute of the United States or of any State thereof as now existing or hereafter in effect, or the appointment of a trustee or receiver of a major part of the property of such other party, except that there shall be excluded from such thirty (30) days period any time during which such adjudication order or appointment shall be vacated or shall be stayed on appeal or otherwise or shall have otherwise ceased to continue in effect.

14. Indemnification.

(a) From and after the effective date of this Agreement, and with respect to claims arising from acts or omissions occurring after the effective date of this Agreement and throughout the remainder of the term of this Agreement, Global agrees to protect, defend, indemnify and save harmless Dunellen against and from any and all claims, losses, costs, or

damages caused by Global or its agents, customers, representatives or suppliers, including discharge and spillage of petroleum products upon navigable or other waters or otherwise, or arising from any breach or default on the part of Global in the performance of any covenant or agreement on the part of Global to be performed, pursuant to the terms of this Agreement, or arising from any act of negligence of Global, or any of its agents, contractors, customers, servants, employees or licensees, other than through the fault of Dunellen, its agents, contractors, servants, employees or licensees and from and against all costs, expenses and liabilities incurred in or about any such claim or action or proceeding brought thereon; and in case any action or proceeding be brought against Dunellen by reason of any such claim, Global, at its sole cost and expense, upon written notice from Dunellen covenants to resist or defend such action or proceeding by counsel reasonably satisfactory to Dunellen. Global shall not be liable for and Dunellen hereby agrees to protect, defend, indemnify and save Global harmless from any and all claims or damages arising out of any environmental contamination located at or originating from the Terminal, Pier or Pipelines or the activities conducted thereon or thereat which occurred prior to the date of this Agreement, including, without limitation, all environmental contamination identified in the Award Environmental Report dated December, 1996, a copy of which Global hereby acknowledges receipt hereof, provided that Global promptly provides written notice to Dunellen and Dunellen has the opportunity to respond and defend any such claim. Dunellen hereby agrees that after receipt of written notice and, provided Dunellen has the opportunity to respond and defend, it will indemnify Global for any claim for environmental contamination first occurring on the Demised Premises after the last to occur of (i) the date this Agreement has terminated, (ii) the date neither Global nor any of its agents, customers, representatives or suppliers (on behalf of Global) are operating in or about the Demised Premises and (iii) the date Global has removed all of its product and property from the Demised Premises.

(b) Dunellen agrees to protect, defend, indemnify and hold Global harmless from and against all claims of whatever nature arising from the negligence or willful misconduct of Dunellen or its agents, contractors, servants, employees or licensees caused to any person, or to the property of any person, occurring during the term hereof on or about the Demised Premises.

15. Dunellen Warranties.

(a) Dunellen is a duly organized and validly existing limited liability company in good standing under the laws of the State of Rhode Island, and is duly qualified to do business in each jurisdiction in which it conducts business activity as required by that jurisdiction and has the requisite powers for the execution and performance of this Agreement.

(b) With the exception of the Pipelines, Dunellen is the owner of the Demised Premises.

(c) The Demised Premises may lawfully be used for the operation of a petroleum products terminal. Copies of permits and licenses issued by governmental authorities relating to the operation of a petroleum products terminal upon the Demised Premises are available for inspection by Global.

(d) Dunellen makes no representation as to the condition of the Demised Premises including without limitation the storage tanks, pipes, pipelines, loading rack and related

equipment at the Terminal, but Dunellen represents that it is without actual knowledge of repairs (other than ordinary and customary maintenance) which are now required to be made to said tanks, pipes, pipelines, loading rack or related equipment.

16. Notices.

All notices of extension of the term of this Lease, cancellation, termination, assignment and those relating to breaches hereof which are required or permitted hereunder must be in writing and given by registered or certified mail. Unless otherwise provided for herein, all other notices, reports, accounts and other communications required or permitted hereunder shall also be in writing but may be given by ordinary mail, postage prepaid. All such notices, reports, accounts and other communication (whether by registered, certified or ordinary mail) shall be addressed

(a) To Global as follows:
800 South Street
Waltham, Massachusetts 02254-9161
Attn: William G. Davidson, Senior Vice President

with a copy to:
Edward J. Faneuil, Esq.
Global Companies LLC
800 South Street
Waltham, Massachusetts 02254-9161

(b) To Dunellen as follows:
100 Dexter Road
East Providence, Rhode Island 02914
Attn: Avery L. Noe

with a copy to:
Stephen J. Carlotti, Esq.
Hinckley, Allen & Snyder
1500 Fleet Center
Providence, Rhode Island 02903

or to such other address as either party may from time to time furnish to the other by notice in accordance with this Paragraph 16.

17. Survival of Obligation. All obligations of Global and Dunellen under Paragraph 14 of the Agreement shall survive the termination of this Agreement.

18. Arbitration. In the event that any dispute or disagreement shall arise between Dunellen and Global concerning any of the provisions of this Agreement, such dispute or disagreement shall be submitted to and resolved by arbitration in accordance with the then Commercial Arbitration Rules of the American Arbitration Association (except as such Rules may conflict with the provisions of this Paragraph 18), and such arbitration shall be conducted in Providence, Rhode Island. The party requesting arbitration (which must be either Dunellen or Global) shall make such request to the other party in writing, at the same time naming a person

to serve as an arbitrator. The other party, in its sole discretion, may agree to have the dispute or disagreement resolved by the single arbitrator named by the requesting party. If such other party does not so agree, in its sole discretion, then such other party shall have twenty-one (21) days from receipt of such request to name and notify the requesting party of the second arbitrator. The two so named shall have fourteen (14) days to name a third arbitrator, and if they cannot agree within said period, said third arbitrator shall be named by the Chief Justice of the Rhode Island Supreme Court or his designee. A majority of the three (3) arbitrators so appointed shall be necessary to resolve this dispute or disagreement. All arbitrators shall be named from lists of arbitrators submitted by the American Arbitration Association. The fees and expenses of the arbitrators shall be divided equally between Dunellen and Global, but otherwise each party shall bear its own arbitration costs. The decision of the arbitrator or arbitrators shall be binding upon the parties and may be enforced in a court of competent jurisdiction. The arbitrator or arbitrators shall be bound by the covenants, terms and conditions of this Lease and may only interpret the same and shall make no additions or deletions thereto or therefrom.

19. Removal of Product. Global shall remove prior to termination, all product and all water and dispose of same in accordance with all state and federal regulations and all tanks shall be cleaned in accordance with industry standards for the storage of distillate products. In the event the Demised Premises are not in compliance with the requirements of this Paragraph 19, Dunellen shall have the right to take such action and spend such reasonable amounts as are necessary and Global will reimburse Dunellen for all such amounts expended. If Global fails to pay any amounts due within 30 days after written notice from Dunellen, Dunellen shall be entitled to receive interest at 15% per annum plus all reasonable legal fees and costs.

20. Limitation of Liability. Global shall neither assert nor seek to enforce any claim for breach of this Agreement against any affiliate of Dunellen and in no event shall any of the officers, trustees, directors, partners, beneficiaries, members, stockholders or other principals or representatives, disclosed or undisclosed, thereof of Dunellen or any affiliate ever be personally liable for any claim against Dunellen.

21. Estoppel Certificate. Global shall at any time from time to time upon not less than ten (10) days prior written notice by Dunellen execute, acknowledge and deliver to Dunellen a statement in writing certifying that this Agreement is unmodified and in full force and effect and the dates to which the charges and additional charges have been paid in advance, if any, and containing such other matters as Dunellen may reasonably require.

22. Requirements of Law – Finance and Penalties. Global, at its sole cost and expense, shall comply with all laws, rules, orders and regulations, including without limitation all federal, state, municipal and local authorities and with any direction of any public officer or officers pursuant to law which shall impose any duty upon Global with respect to its obligation for its operations under this Agreement. Global shall reimburse and compensate Dunellen for all expenditures made by or damages or fines sustained or incurred by Dunellen due to non-performance or non-compliance with or breach or failure to observe any item, covenant or condition of this Lease upon Global's part to be kept, observed, performed or complied with if Global receives notice of any violation of law, ordinance, order or regulation applicable to the Demised Premises and shall give immediate notice thereof to Dunellen.

23. Disclosure. Dunellen hereby discloses that on or about August 1994, there was a release of diesel fuel from former Tank #115. The RIDEM was properly notified and has monitored the site. The RIDEM was also notified on or about September, 2002 when it was delivered a Release Investigation Report prepared by Vanasse Hangen Brustlin, Inc. for gasoline discovered on the southerly end of the Terminal.

24. Non-Waiver. The failure of either party to insist upon strict performance of any of the provisions of this Agreement, or to exercise any right of election hereunder in any one or more instances, shall not be construed as a waiver or relinquishment on its part of any such provisions or right of election, but the same shall be and remain in full force and effect.

25. Signage. Throughout the term hereof, Global shall have the right and privilege to erect and maintain upon the Premises, which is the subject of this Agreement, Global's signs including such as designate the Premises as Global's terminal base for dealer sales, subject to the approval of Dunellen, which shall not be unreasonably withheld or delayed and subject to applicable zoning. Upon termination of this Agreement, Global shall carefully remove all such signage at its costs.

26. Assignment. Any attempted assignment hereunder by Global shall be ineffective without Dunellen's prior written consent which shall not unreasonably be withheld. Global shall not assign this Agreement, the Demised Premises or any part thereof or in any way transfer or hypothecate any of its interest in this Agreement or the Demised Premises without first obtaining the written consent of Dunellen, which consent shall not be unreasonably withheld. Dunellen's consent shall be conditioned upon Dunellen's approval of the economic viability of the proposed assignee and the assumption by the proposed assignee of the terms, conditions, covenants and provisions of this Agreement. Notwithstanding the foregoing, Global shall not be released or discharged from the terms, conditions, covenants and provisions of this Agreement without the written consent of Dunellen. Dunellen shall have the right to assign this Agreement without Global's consent, in which event, Dunellen shall remain secondarily liable for the performance of all obligations hereunder.

27. Miscellaneous.

(a) This Agreement contains the entire agreement between the parties hereto concerning the subject matter, and there are no oral promises, agreements or warranties affecting it.

(b) The titles of the various paragraphs contained herein are inserted for convenience only and are not apart of this Agreement.

(c) The right of either party to require strict performance by the other party to this Agreement shall not in any way be affected by previous waiver, forbearance or course of dealing.

(d) Each party hereto shall comply strictly with all applicable statutes, ordinances, rules, regulations, permits and ordinances imposed by any governmental authority on any activity of either party hereunder, and this Agreement is made subject to all such applicable statutes, ordinances, rules, regulations, orders and permits.

(e) This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

(f) This Agreement shall be governed by and interpreted in accordance with the laws of the State of Rhode Island.

(g) In the event either party is unable to perform due to an "Act of God," the time period for performance shall be extended accordingly.

(h) Each party shall have the right to contract with others for the provision of any or all services required of such party pursuant to this Lease, but no such contracting shall relieve such party of its obligations to the other party hereunder.

28. Improvements: During the Initial Term of this Agreement, or any extension thereto, Global may request such improvements, additions, alterations and changes, structural or otherwise (individually or collectively, "Improvements"), in and to the Premises as Global shall deem desirable. Dunellen shall have the option to purchase and install such Improvements and charge Global for their use at a fee or rate to be agreed upon in advance by Global and Dunellen. If Dunellen does not so choose to purchase and install such Improvements, then Global shall have the option to do so at its sole cost, subject to the prior written approval of Dunellen, which approval will not be unreasonably withheld. In the event that Global so makes such Improvements, any necessary and reasonable additional cost to Dunellen arising from such installation or use of Improvements shall be reimbursed to Dunellen by Global. Upon termination of this Agreement, Dunellen may elect to purchase any such Improvements made by Global at a price equal to their fair market value, or require Global to remove the Improvements and restore said Premises to conditions existing at the time of the commencement of this Agreement, normal wear and tear excepted. Under no circumstances will Global be required or allowed to remove a permanent fixture from the Premises.

29. Right of First Look and Refusal:

(a) In the event that Dunellen intends to expand the capacity of the tank farm at the Premises at any time during the Initial Term or any extensions thereto, Dunellen will first offer in writing such additional capacity to Global for the remainder of the Initial Term or the then current extended term at the following rates, which rates shall include fees for all services provided by Dunellen described in Paragraph 3 of this Agreement:

1. The rate for any additional tankage for the year commencing May 1, 2003 and ending April 30, 2004, shall be $.024 per shell bbl/month.

2. The rate for any additional tankage during any term beyond April 30, 2004 shall be adjusted upward in the manner specified in Paragraph 4.

Global shall accept or refuse in writing any or all such additional tanks at the above-described rates within thirty (30) days of receipt of such written offer by Dunellen. In the event that Global

does not accept such offer, Dunellen shall have the right to offer such additional capacity to a third party, subject to the provisions of Subparagraphs 29(b), (c) and (d) below.

(b) If, during the Initial Term, or any extensions thereto, Dunellen receives a bona fide offer to lease additional tankage to a third party for the purpose of storage only, with no option to deliver into trucks, and Dunellen desires to accept such offer, and Global has previously declined to exercise its option under Subparagraph 29(a) above, Dunellen shall first submit to Global a copy of such offer with a full disclosure of all terms and provisions thereof. Global will have until 4:00 p.m. of the business day following receipt thereof in which to notify Dunellen in writing of its election to match the third party offer to lease the affected tankage. If Global does not elect to match such third party offer, Dunellen may proceed to enter into a storage-only agreement with said third party, upon the same terms and conditions previously disclosed to and rejected by Global. Global thereafter waives all rights to the leasing of the affected tankage until such time as the tankage again becomes available, in which case Global's rights to match a third party offer under this Subparagraph 29(b) shall again become effective.

(c) Dunellen may not enter into any agreement, or amendment to an existing storage agreement, for Truck Rack distribution with any third party with whom Dunellen has a storage agreement pursuant to Subparagraph 29(b) above, during the term or any extended terms of such storage agreement, unless this Agreement has expired or has terminated in accordance with the terms herein.

(d) If, at any time during the Initial Term, or any extension thereto, Dunellen receives a bona fide offer to lease any additional tankage to a third party for the purpose of storage <u>and</u> Truck Rack deliveries, and Dunellen desires to accept such offer, and Global has previously declined to exercise its option under Subparagraph 29(a) above, Dunellen shall first submit to Global a copy of such offer with a full disclosure of all terms and provisions thereof. Global will have fourteen (14) days following receipt thereof in which to notify Dunellen in writing of its election to lease the affected tankage under the same material terms and conditions. If Global does not elect to match such third party offer, Dunellen may proceed to enter into a storage and Truck Rack agreement with said third party, upon the same terms and conditions previously disclosed to and rejected by Global. Global thereafter waives all rights to the leasing of the affected tankage until such time as the tankage again becomes available, in which case Global's rights to match a third party offer under this Subparagraph 29(d) shall again become effective.

(e) If Dunellen enters into an agreement with a third party pursuant to Subparagraph 29 (d), the pricing of which, excluding any prospective incentives or fees, Global determines in good faith and upon sound financial and economic principals to be less than that which Global is paying to Dunellen under this Agreement (Global's pricing shall be equal to an amount determined by dividing the then effective Base Charge by the number of shell barrels of tankage that Global is leasing, and dividing that number by twelve (12) months), then Global may elect to terminate this Agreement by notifying Dunellen of such termination, in writing, within ten (10) days of receipt of written notice from Dunellen of the terms and conditions of such agreement. In the event that Global so elects to terminate this Agreement, such termination shall become effective thirty (30) days after Dunellen's receipt of Global's notice thereof.

(f) If Dunellen desires at any time during the Initial Term or any extensions thereto, to utilize additional tankage for storage for its own account only, or for storage and Truck Rack deliveries for its own account only, Dunellen shall first offer such additional tankage to Global at terms to be agreed upon by the parties. If no such agreement is reached within thirty (30) days of notice to Global of Dunellen's intent to use such tankage, then Global shall have the right to terminate this Agreement by notifying Dunellen within ten days of the expiration of the thirty day negotiation period. In the event that Global so elects to terminate this Agreement, such termination shall become effective thirty (30) days after Dunellen receipt of Global's notice thereof.

IN WITNESS WHEREOF, the parties have caused this Amended and Restated Lease Agreement be executed the day and year as above written.

DUNELLEN, LLC
By Capital Properties, Inc., its sole member

By: [signature]
Ronald P. Chrzanowski
Its: President

GLOBAL COMPANIES, LLC

By: [signature]
William G. Davidson
Its: Senior Vice President

STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

On this 9th day of June, 2003, personally appeared Ronald P. Chrzanowski, to me known and known by me to be the President of Capital Properties, Inc., the sole member of DUNELLEN, LLC, the party executing the foregoing instrument, and acknowledged said instrument by him executed in his said capacity to be his free act and deed in such capacity and the free act and deed of said DUNELLEN, LLC.

Barbara J. Dreyer
Notary Public

BARBARA J. DREYER
My Commission Expires June 11, 2005

COMMONWEALTH OF MASSACHUSETTES
COUNTY OF MIDDLESEX

On this 9th day of June, 2003, personally appeared William G. Davidson, to me known and known by me to be the Senior Vice President of GLOBAL COMPANIES, LLC, the party executing the foregoing instrument, and acknowledged said instrument by him executed in his said capacity to be his free act and deed in such capacity and the free act and deed of said GLOBAL COMPANIES, LLC.

Notary Public
My commission expires 7/16/04