UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| DUNELLEN, LLC, | : | |
| Plaintiff, | : | |
| v. | : | No. 06-014-ML |
| GETTY PROPERTIES CORPORATION, | : | |
| Defendant. | : | |

**PLAINTIFF'S OBJECTION TO DEFENDANT'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff hereby objects to Defendant's motion for partial summary judgment. In support of its objection, Plaintiff relies upon the accompanying memorandum of law.

Respectfully submitted,

HINCKLEY ALLEN & SNYDER LLP

/s/Mitchell R. Edwards

Gerald J. Petros (#2931)
Charles D. Blackman (#5522)
Mitchell R. Edwards (#6942)
50 Kennedy Plaza, Suite 1500
Providence, RI 02903-2393
(401) 274-2000
(401) 277-9600 (fax)
Attorneys for Dunellen, LLC

Dated: March 16, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on March 16, 2007, a copy of foregoing Objection was filed and sent electronically to the following counsel of record:

James W. Ryan, Esq.
Robert K. Taylor, Esq.
Partridge, Snow & Hahn LLP
180 South Main Street
Providence, RI 02903

/s/Mitchell R. Edwards

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| DUNELLEN, LLC,<br><br>Plaintiff,<br><br>v.<br><br>GETTY PROPERTIES CORPORATION,<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | No. 06-014-ML |

**DUNELLEN, LLC'S MEMORANDUM OF LAW IN OPPOSITION TO GETTY PROPERTIES CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I. INTRODUCTION

Dunellen, LLC ("Dunellen") objects to Getty Properties Corporation's ("Getty Properties") motion for partial summary judgment for several reasons. First, Getty Properties argues that Dunellen's claims fail because they were compulsory counterclaims in the action initially brought by Getty Properties and Getty Petroleum Marketing, Inc. ("Getty Marketing") on August 2, 2000 (the "2000 Litigation"). This argument is stunning because Getty Properties vigorously argued against this Court declaring Getty Properties' obligations for Pier expenses as part of the declaratory judgment claim regarding Getty Properties' right to use the Pier in the 2000 Litigation. This Court decided not to declare Getty Properties' obligations for Pier expenses because the Court was not sure that an actual controversy existed at that time, not because Dunellen's claims were compulsory counterclaims. There is no dispute that there is presently an actual controversy before the Court regarding Getty Properties' obligation for Pier expenses.

Second, Getty Properties argues that Dunellen's claims are barred by the doctrine of *res judicata* because Dunellen did not bring its claims for Pier expenses in the 2000 Litigation. This argument suffers the same fate as the first argument regarding compulsory counterclaims. Getty Properties fails to recognize that the preclusive effect of declaratory judgments is limited to those matters actually declared. This Court only declared Getty Properties' right to use the Pier, not the obligations that accompany those rights. Therefore, the 2000 Litigation does not preclude this action from going forward.

Third, Getty Properties attempts to avoid its obligations by arguing that the 1997 Settlement Agreement constituted an accord and satisfaction of any and all obligations for Pier expenses. Nonsense. The plain language of the 1997 Settlement Agreement demonstrates that it resolved claims as to 1997 Pier maintenance, not claims for maintenance after 1997.

Fourth, Getty Properties argues that the Court should not apply the law of easements here even though Getty Properties advocated that the Court apply the law of easements to determine Getty Properties' right to use the Pier in the 2000 Litigation, which the Court did. This is another stunning change in position for Getty Properties from the 2000 Litigation, presumably because it knows that the law of easements favors Dunellen. The Court should apply the law of easements to determine Getty Properties' obligations with respect to Pier expenses just as it did to determine Getty Properties' right to use the Pier.

Fifth, there is no agreement in effect that governs the parties' obligations with respect to Pier expenses. The 1941 Deed and the August 6, 1975 Agreement between Providence and Worcester Company ("P&W") and Getty Oil Company (Eastern

Operations), Inc., predecessors to the present parties, (hereinafter the "1975 Agreement") are silent on the subject. The 1991 Pier Operating Agreement is no longer in effect. Essentially, Getty Properties would like the Court to have the parties continue under terms contained in the 1991 Pier Operating Agreement even though Getty Properties voluntarily withdrew from it and that agreement is no longer in effect. Courts have determined, however, that absent an agreement to the contrary, the easement owner (Getty Properties) is responsible for maintaining an easement so that the easement can perform its intended function.

The Court should deny Getty Properties motion for partial summary judgment. The time has come for the parties to learn what obligations burden Getty Properties right to use the Pier.

## II. ARGUMENT

### A. DUNELLEN'S CLAIMS WERE NOT COMPULSORY COUNTERCLAIMS IN THE 2000 LITIGATION.

Getty Properties argues that Dunellen's claim for Pier expenses incurred since 2003 and its Declaratory Judgment Act claim for future Pier expenses were compulsory counterclaims in the 2000 Litigation. See Getty Properties Memorandum of Law at pp. 3-4. The history of the 2000 Litigation and legal precedent prove otherwise.

Getty Properties and Getty Marketing filed a verified complaint for rescission and declaratory relief on August 2, 2000. In this complaint, Getty Properties did not seek a declaratory judgment that it had a right to use the Pier. On May 25, 2001, Getty Properties and Getty Marketing filed an amended verified complaint for injunctive relief, rescission, and declaratory relief, in which Getty Properties sought a declaratory judgment declaring Getty Properties' right to use the Pier (Count VI). Capital Terminal

Company ("CTC"), Dunellen's predecessor-in-interest, moved to dismiss Count VI. The motion was denied. CTC answered the declaratory judgment count regarding Getty Properties' right to use the Pier on September 5, 2002. CTC asserted as a defense that Getty Properties had abandoned its right to use the Pier.

In its post-trial memorandum, CTC and Dunellen argued that if the Court were to declare Getty Properties' rights to use the Pier, it should also declare Getty Properties' obligations *as part of Getty Properties claim for declaratory relief*. See Exhibit A (CTC Post-Trial Memorandum at pp. 19-22) (citing Sears, Roebuck & Co. v. American Mutual Liability Ins. Co., 372 F.2d 435, 438 (7th Cir. 1967); Angell v. Schram, 109 F.2d 380, 382 (6th Cir. 1940); Bassett v. Harrison, 807 A.2d 695, 707 (Md. App. 2002)). In Bassett, the plaintiff filed an action for declaratory judgment regarding their rights with respect to use of a right-of-way. The trial court held that the defendants had a prescriptive easement. The plaintiffs argued on appeal that the trial court erred in finding that the defendants had a prescriptive easement because they did not plead a cause of action for prescriptive easement either as a counter-claim or as a defense. Id. at 707. The court rejected this argument, stating that "in an action requesting a declaratory judgment, the court is required to declare the rights, duties, obligations and status of the parties *unconstrained by their allegations, contentions, and arguments*." Id. (emphasis added).

Nevertheless, Getty Properties argued in its post-trial memorandum that the issue of Getty Properties' obligation with respect to Pier expenses was not before the Court and should not be decided by the Court in the 2000 Litigation. See Exhibit B (Getty Properties Post-Trial Memorandum at p. 24).

The Court ruled that Getty Properties had not abandoned its right to use the north side of the Pier. The Court decided not to declare Getty Properties' obligations with respect to Pier expenses on different grounds from those articulated by Getty Properties:

> Having concluded that Getty Properties' rights under the 1941 Deed remain intact, the Court declines Capital Terminal's request to "declare the obligations that burden those rights" with respect to the parties joint usage of the Pier. See Defendant's Post-Trial Mem. at 20. It is unclear, at this point, whether there is *actually a controversy for the Court to decide*, as it appears that Getty Marketing is no longer using the Pier. Rather than plunge into this sea of uncertainty, the Court chooses to remain ashore.

(emphasis added).[1] Thus, the Court did not find that CTC had failed to assert a compulsory counterclaim. Rather, the Court was not sure that an actual controversy existed necessitating it to declare Getty Properties' obligations with respect to Pier expenses. A controversy is a necessary element under the Declaratory Judgment Act. See Operation Clean Government v. Rhode Island Ethics Com'n, 315 F.Supp.2d 187, 193 (D.R.I. 2004) ("The Declaratory Judgment Act, 28 U.S.C. § 2201-2202, allows a federal court to award declaratory relief when an actual case or controversy is present."). Therefore, the Court decided to abstain from ruling on Getty Properties' obligations with respect to Pier expenses. There is no dispute, however, that an actual case and controversy exists today as to Getty Properties' obligations with respect to Pier expenses.

After advocating in 2003 that the Court should not declare its obligations to contribute to the payment of Pier expenses in the 2000 Litigation, Getty Properties now takes the position that the appropriate time and place for the Court to have decided the issue was in the 2000 Litigation. Getty Properties cannot have it both ways. Dunellen's claims were not compulsory counterclaims in the 2000 Litigation.

---

[1] Once the Throughput Agreement between P&W and Getty Marketing terminated, Getty Marketing no longer had an independent right to use the Pier. The Court held that Getty Properties does have a right to use the Pier. Presumably Getty Marketing could use the Pier through Getty Properties right to use the Pier.

## B. DUNELLEN'S CLAIMS ARE NOT BARRED BY *RES JUDICATA*

In the same vein, Getty Properties also contends that Dunellen's claims are barred by *res judicata* because CTC and Dunellen did not assert a counterclaim for Pier expenses in the 2000 Litigation. See Getty Properties Memorandum of Law at pp. 4-6. Getty Properties fails to recognize that the preclusive effect of declaratory judgments is limited to those matters actually declared. See Restatement (Second) of Judgments § 33 (2006) ("A valid and final judgment in an action brought to declare rights or other legal relations of the parties is conclusive in a subsequent action between them as to the matters declared, and, in accordance with the rules of issue preclusion, as to any issues actually litigated by them and determined in the action."). Comment c to the Restatement describes the effects as to matters not declared:

> When a plaintiff seeks solely declaratory relief, the weight of authority does not view him as seeking to enforce a claim against the defendant. Instead, he is seen as merely requesting a judicial declaration as to the existence and nature of a relation between himself and the defendant. The effect of such a declaration, under this approach, is not to merge a claim in the judgment or to bar it. Accordingly, regardless of outcome, the *plaintiff or defendant may pursue further declaratory or coercive relief in a subsequent action*.

(emphasis added); see also e.g., Carver v. Heikkila, 465 N.W.2d 183, (S.D. 1991) (relying on § 33 when permitting a second declaratory judgment action by the Carvers regarding a point not decided by the court in a previous declaratory judgment action brought by the Heikkilas and finding that the second declaratory judgment action was not barred by the doctrine of *res judicata*). Therefore, the judgment entered on Getty Properties declaratory judgment action with respect to its right to use the pier does not preclude Dunellen's declaratory judgment action for future Pier expenses or its claim for reimbursement of Pier expenses incurred since 2003.

Furthermore, it is fundamentally unfair for Getty Properties to argue that Dunellen's claims should have been part of the 2000 Litigation when during the 2000 Litigation, Getty Properties asked the Court not to declare its obligations for Pier expenses.

## C. DUNELLEN'S CLAIMS ARE NOT BARRED BY THE DOCTRINE OF ACCORD AND SATISFACTION.

Next, Getty Properties attempts to stretch the force and effect of the 1997 Settlement Agreement far beyond the period to which it applies. Getty Properties asserts that the 1997 Settlement Agreement, through the doctrine of accord and satisfaction, bars Dunellen's claims for reimbursement of Pier expenses since 2003 and for reimbursement of future Pier expenses. See Getty Properties' Memorandum of Law at pp. 6-7. The plain language of the 1997 Settlement Agreement proves otherwise.

Under the 1997 Settlement Agreement, Getty Realty (k/n/a Getty Properties) agreed to pay "1997 Pier Maintenance Costs" including dredging expenses, electrical usage, and other pier maintenance for a grand total of $298,529. See Exhibit 2. Thus, the 1997 Settlement Agreement settled claims for maintenance to the Pier only as of the date of the 1997 Settlement Agreement. The 1997 Settlement Agreement does not say anything about the parties' obligations with respect to Pier expenses after the Throughput Agreement expired in 2003. The Court recognized this in a footnote in its 2003 Memorandum and Decision: "What the parties apparently failed to anticipate was the fact that if Getty Marketing left the Pier there would not be a pier operating agreement in place governing *the obligations that accompany Getty Realty's (now Getty Properties') rights to the Pier*." Exhibit 1 at p. 29 (emphasis added). This Court also recognized that in the 1997 Settlement Agreement, "Getty Realty made a lump sum payment to P&W,

representing its accrued and final obligations *under the 1991 Pier Operating Agreement*." Exhibit 1 at p. 12-13 (emphasis added). As stated before, Getty Properties voluntarily withdrew from the 1991 Pier Operating Agreement and that agreement is no longer in effect. Unlike the action leading to the 1997 Settlement Agreement, in the present action Dunellen is not seeking reimbursement for Pier expenses under the 1991 Pier Operating Agreement.

Getty Properties contends that the purpose of the 1997 Settlement Agreement was to "relieve Getty [Properties] of any remaining responsibility for Pier-related costs." Getty Properties Memorandum of Law at 7. There is no support in the plain language of 1997 Settlement Agreement for this proposition. The purpose of the 1997 Settlement Agreement was to resolve the arbitration pending over expenses associated with Pier repairs and maintenance at that time. See Exhibit 2 ("WHEREAS, the parties have agreed to resolve the dispute by the execution of a Throughput Agreement between P&W and Getty Petroleum Marketing, Inc., a Maryland corporation, and the payment by Getty of its share of 1997 pier maintenance costs; . . . ."). This is not shocking since the 1997 Settlement Agreement, like most settlement agreements, was intended to resolve a dispute as of the date of settlement, not to resolve future disputes which arise after the date of settlement.[2]

Therefore, neither the 1997 Settlement Agreement nor the doctrine of accord and satisfaction bar Dunellen's claims.

[2] Getty Properties 30(b)(6) witness testified that the 1997 Settlement Agreement does not expressly state that Getty Properties is not responsible for Pier maintenance expenses unless and until Getty Properties resumes using the Pier. See Dunellen Exhibit 3 at pp. 37-38.

**D. <u>GETTY PROPERTIES IS OBLIGATED TO PAY PIER EXPENSES</u>**

1. <u>THE LAW OF EASEMENTS APPLIES HERE.</u>

In its September 2003 Memorandum and Decision, the Court stated that "[i]t is undisputed that Getty Properties (formerly Getty Realty), pursuant to a reservation of rights under the 1941 Deed and through a series of subsequent agreements, had an *easement* giving it the right to use the north side of the Wilkesbarre Pier up until, at least, 1997." Exhibit 1 at p. 25 (emphasis added). Getty Properties did not move for reconsideration of this finding nor did Getty Properties appeal this Court's finding to the First Circuit. To the contrary, in its post-trial memorandum, Getty Properties advocated for the application of Rhode Island caselaw on easements "to determine whether Getty Properties' right to cross [CTC's] personalty has been abandoned." Dunellen Exhibit 12 at pp. 18-19.

Getty Properties now takes the position that the law of easements should not govern Getty Properties' obligation to pay Pier expenses. <u>See</u> Getty Properties' Memo of Law in Support of its Motion for Partial Summary Judgment at p. 11. Getty Properties relies upon the 1976 Rhode Island Supreme Court decision, <u>Providence and Worcester Company et al. v. Exxon Corporation, et al.</u>, 359 A.2d 329, 341 (R.I. 1976), in which the court stated that "[w]e believe that plaintiffs correctly perceived the meaning of the trial justice's order as requiring defendants to give plaintiffs a fee simple to personalty, that is, a conveyance of the totality of interests in the existing pier save for defendants' right to use the north side of said pier." This precedent existed at the time Getty Properties filed its post-trial brief with this Court in 2003, in which it stated:

> The Rhode Island Supreme Court has characterized the Pier as "personalty" subject to a "right to use the north side of said pier." Providence & Worcester Railroad Co. v. Exxon, 116 R.I. at 491. Capital Terminal appears to agree that it is appropriate to look to the law applicable to easements to determine whether Getty Properties' right to cross Defendants' personalty has been abandoned.

Thus, in 2003, in the same paragraph that it cited the 1976 Supreme Court decision for the proposition that the Court characterized the Pier as "personalty," Getty Properties argued that this Court should apply the law of easements to determine Getty Properties' rights, which the Court appropriately did. Now, Getty Properties does not want the law of easements to apply to determine Getty Properties' obligations. Once again, Getty Properties cannot have it both ways. It was correct to apply the law of easements in 2003 to determine Getty Properties' rights to the Pier, and it is correct to apply the law of easements in 2007 to determine Getty Properties' obligations with respect to the Pier.[3]

2. <u>ABSENT AN AGREEMENT TO THE CONTRARY, GETTY PROPERTIES IS OBLIGATED TO PAY A PORTION OF PIER EXPENSES.</u>

*a. No agreement is in effect governing the parties' obligations with respect to Pier expenses.*

It is undisputed that there is no agreement in effect today governing the parties' obligations with respect to Pier expenses. <u>See</u> Dunellen Exhibit 3 at pp. 39-40 and Dunellen Exhibit 13 (Answer to Request for Admission No. 1). It is also undisputed that there has not been any agreement in effect since 2003 governing the parties' obligations with respect to Pier expenses. <u>See</u> Dunellen Exhibit 3 at pp. 39-40 and Dunellen Exhibit 13 (Answer to Request for Admission No. 2). It is undisputed that the 1941 Deed and the 1975 Agreement are silent on the issue of the parties' obligations with respect to Pier

[3] The characterization of the Pier as personalty is also dubious as evidenced by the fact that the City of East Providence requires Dunellen to pay real property taxes on the Pier. <u>See</u> Dunellen Exhibit 14.

expenses. See Getty Properties Exhibits B and C. Getty Properties notes that for many years the users of the Pier had subscribed to Pier Operating Agreements to apportion Pier maintenance and operating costs. None of the Pier Operating Agreements are in effect today.

Courts have held that "[t]he duty of maintaining an easement so that it can perform its intended function rests on the owner of the easement *absent any contrary agreement*." Friends of the Sakonnet v. Dutra, 749 F. Supp. 381, 389-90 (D.R.I. 1990) (emphasis added). Since the Pier operating agreements are no longer in effect, and since the 1941 Deed and 1975 Agreement are silent on the issue of apportionment of Pier expenses, there is no agreement requiring the parties to divide up maintenance and operating costs among those using the Pier. If the parties had wanted Pier expenses to be divided solely among Pier users even in the absence of a Pier Operating Agreement, they could have said so in the 1975 Agreement. Indeed, in the 1975 Grant and Agreement, which was simultaneously executed with the 1975 Agreement, the parties provided that Robert H. Eder shall share in the cost of pipeline maintenance based on his proportionate use of the pipelines so long as he Eder or his successors or assign continue to use the pipelines.[4] See Getty Properties Exhibit E. No such provision is in the 1975 Agreement (or the 1941 Deed) with respect to the maintenance of the Pier.[5]

---

[4] The 1975 Grant and Agreement states: "So long as Eder shall continue to use said pipelines, Eder shall pay each year a proportionate share of the total cost of maintenance and repairs to and property taxes upon said pipelines . . . ." See Getty Properties Exhibit E (1975 Grant and Agreement at ¶ 5). The 1975 Grant and Agreement was later amended to delete paragraph 5. See Getty Properties Exhibit Q (Fourth Amendment to Grant and Agreement).

[5] Getty Properties contends that P&W and Unocal have the right to use the Pier and seems surprised that Dunellen has not made them part of this lawsuit. First, Unocal does not have the right to use the Pier, having voluntarily given up that right in a Deed dated as of December 31, 1997, the same effective date as when Getty Properties withdrew from the 1991 Pier Operating Agreement. See Getty Properties Exhibit I (Unocal conveyed its twenty percent (20%) undivided interest in the Pier to P&W). Second, P&W reserved the right to use the Pier in its deed to CTC, but that deed also expressly stated that P&W had no

*b. The caselaw relied upon by Getty Properties is inapposite here.*

Getty Properties relies upon a recent Rhode Island Supreme Court decision, Carpenter v. Hanslin, 900 A.2d 1136 (R.I. 2006), in an attempt to avoid its obligations to pay for Pier expenses. Carpenter, however, is inapposite here. In Carpenter, the Rhode Island Supreme Court adopted the trial court decision issued by Judge Gale in which the plaintiffs, the easement owner, sought a declaratory judgment that would allow them to construct a boardwalk over the swampy area of their right-of-way without interference from the defendants, the owners of the servient estate. The court ruled that the plaintiffs were entitled to build the boardwalk and that the defendants "shall not interfere with or file objection to any required permitting process . . . ." Id. Here, the easement owner, Getty Properties, is refusing to contribute to Pier expenses incurred by Dunellen, the servient estate. Carpenter is simply inapplicable here.[6]

3. THE PIER EXPENSES ARE NECESSARY FOR THE PIER TO REMAIN OPERATIONAL AND TO EXTEND THE LIFE OF THE PIER.

Getty Properties argues that it should not have to pay for Pier expenses because they are "voluntary, and made because those expenditures benefit Dunellen and its tenant Global [Petroleum Inc.]. . . ." Getty Properties Memorandum of Law at pp. 13-14. Getty Properties also appears to argue that because Dunellen's business is successful and because Global has agreed to reimburse Dunellen for certain Pier improvements, Getty

obligations with respect to the Pier. See Exhibit 9 (Deed from P&W to CTC) (stating "By acceptance of this Deed and Assignment and Assumption Agreement of even date herewith, CTC assumes all responsibilities and obligations with respect to the Pier."). CTC later deeded the Pier to Dunellen. See Getty Properties Exhibit G. Therefore, unlike Getty Properties, P&W, by agreement, has no obligation to pay for Pier expenses.

[6] The Supreme Court did state in Carpenter that "[t]he dominant tenant of an easement has a right, if not a duty, to maintain the easement so that it can be used for the purpose for which it was granted." Carpenter, 900 A.2d at 1149.

Properties has no obligation to pay for any Pier expenses, whether improvements, maintenance, insurance, taxes etc.. Id. First, while Dunellen is not legally obligated to make the Pier improvements identified on the 10 year Pier Improvement Schedule, those improvements are necessary to prevent accidents and to extend the life of the Pier. See Dunellen Exhibit 11 (Avery Noe Deposition at p. 58) and Getty Properties Exhibit Y (January 2003 Letter).

Second, the fact that Dunellen's business is successful has no bearing on Getty Properties' obligation to pay for Pier expenses. Surely if Dunellen's business was failing, Getty Properties would not argue that it is obligated to pay more for Pier expenses.

Third, Global has agreed to reimburse Dunellen for only fifty percent of certain Pier improvements up to $1 million and Global has not agreed to pay for any normal operating or maintenance costs. If Dunellen collects money for Pier improvements from a third-party, like Getty Properties, it must pay Global half of those funds. Therefore, contrary to Getty Properties' characterization, Dunellen will not be able to fund millions of dollars of Pier improvements at no cost to itself if Dunellen is successful in this lawsuit. Furthermore, there is nothing unusual about having a tenant contribute to the costs of improvements. That obligation is obviously part of larger undertaking between the parties and impacts the rent and other terms. Getty Properties is not entitled to any offset for the payment by Global. Indeed, Getty Properties has filed a third-party contribution and indemnification complaint in this action against Getty Marketing, its tenant, so that Getty Marketing would pay for the Pier expenses.

## III. CONCLUSION

For the foregoing reasons, Dunellen respectfully requests that the Court deny Getty Properties motion for partial summary judgment.

HINCKLEY ALLEN & SNYDER LLP

/s/Mitchell R. Edwards
Gerald J. Petros (#2931)
Charles D. Blackman (#5522)
Mitchell R. Edwards (#6942)
50 Kennedy Plaza, Suite 1500
Providence, RI 02903-2393
(401) 274-2000
(401) 277-9600 (fax)
Attorneys for Dunellen, LLC

Dated: March 16, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on March 16, 2007, a copy of foregoing Memorandum of Law in Support of Dunellen's Opposition to Getty Properties Motion for Partial Summary Judgment was filed and sent electronically to the following counsel of record:

James W. Ryan, Esq.
Robert K. Taylor, Esq.
Partridge, Snow & Hahn LLP
180 South Main Street
Providence, RI 02903

/s/Mitchell R. Edwards