UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| DUNELLEN, LLC, | : | |
| Plaintiff, | : | |
| v. | : | No. 06-014-ML |
| GETTY PROPERTIES CORPORATION, | : | |
| Defendant. | : | |

**DUNELLEN, LLC'S RESPONSE TO GETTY PROPERTIES LOCAL RULE 56 STATEMENT OF UNDISPUTED FACTS**

Pursuant to Local Rule 56, Dunellen, LLC ("Dunellen") submits the following response to Getty Properties Corporations' ("Getty Properties") statement of undisputed facts:

1. It is undisputed that Dunellen is the owner of the Pier located on Seekonk River in the City of East Providence, Rhode Island. It is undisputed that Getty Properties has the right to use the Pier as set forth in the Court's 2003 Memorandum and Decision. It is undisputed that Getty Properties owns and maintains two pipelines running approximately two miles from the Pier to a point in the Phillipsdale section of East Providence, and from there to petroleum storage facilities separately owned by Getty Properties and Dunellen. It is undisputed that under the 1975 Grant and Agreement, as amended and the 1975 Operating Agreement (For Use of Pipelines), Dunellen uses Getty Properties' pipelines to transport petroleum products from the Pier to an East Providence terminal facility owned by Dunellen. Otherwise, denied.

2. It is undisputed that Dunellen is a successor in interest with respect to the Pier of Providence & Worcester Railroad Company ("P&W") and Capital Terminal Company ("CTC").

3. Disputed. P&W has the right to use the Pier under the terms of the 1998 Deed from P&W to CTC, but, unlike Getty Properties, P&W has no obligation to pay for Pier expenses. See Dunellen Exhibit 9.

4. Disputed. Unocal does not have the right to use the Pier. See Dunellen Exhibit 10. It is undisputed that as of 1969, Unocal owned an undivided two-fifths interest in the Pier and underlying land. Unocal conveyed all of its interest in the Pier to P&W. The 1976 Rhode Island Supreme Court decision and the December 31, 1997 Deed from Unocal to P&W are writings that speak for themselves. See Dunellen Exhibit 9 and Getty Properties Exhibit H. The December 31, 1997 deed from Unocal to P&W states that Unocal is deeding "all of its right, title, and interest in and to a twenty percent (20%) undivided interest in" the Pier to P&W. It is undisputed that Unocal sent a letter to CTC dated August 10, 1999, which letter speaks for itself. CTC responded to Unocal's letter on August 24, 1999 attaching and referring to the language in the December 31, 1997 Deed from Unocal to P&W. See Dunellen Exhibit 10.

5. It is undisputed that Dunellen's predecessors-in-interest, Getty Properties' predecessors-in-interest, and other Pier users were parties to a series of Pier operating agreements. The Pier operating agreements are writings that speak for themselves. See Getty Properties' Exhibits L through N. It is undisputed that Getty Properties paid 85% of the Pier maintenance expenses in 1997 as part of the 1997 Settlement Agreement. See Dunellen Exhibit 2. Otherwise, denied.

6. It is undisputed that Getty Properties entered into a Master Lease with Getty Petroleum Marketing, Inc. ("Getty Marketing"), a document which speaks for itself.

7. It is undisputed that P&W filed an arbitration claim against Getty Properties under the 1991 Pier Operating Agreement. It is also undisputed that the arbitration involved, *inter alia*, claims for Pier repairs. The Statement of Claim in the arbitration speaks for itself. See Getty Properties Exhibit O. Otherwise, denied.

8. It is undisputed that in December 1997, Getty Properties and P&W executed a settlement agreement resolving the arbitration. The 1997 Settlement Agreement is a writing that speaks for itself. See Dunellen Exhibit 2. Otherwise, denied.

9. It is undisputed that Getty Properties has not used the Pier since January 1, 1998. It is undisputed that Getty Marketing made all of the required payments under the Throughput Agreement.

10. It is undisputed that Getty Properties and Getty Marketing commenced a lawsuit against CTC in 2000. The pleadings in that lawsuit are documents that speak for themselves. It is undisputed that the Court divided the 2000 Litigation into jury and non-jury phases. It is undisputed that Dunellen was added as a defendant and counter-plaintiff by stipulation of the parties.

11. It is undisputed that in December 2002, a jury entered a verdict for Getty Marketing and against CTC, finding that CTC had breached its obligation under the Throughput Agreement to make Pier repairs. The judgment was in the amount of $100,000 plus interest. It is undisputed that after a bench trial in June 2003, the Court

issued a Memorandum and Decision addressing the parties' injunctive and declaratory claims in September 2003.

12. The Court's 2003 Memorandum and Decision is a writing that speaks for itself. Otherwise, denied.

13. Disputed. The Throughput Agreement was extended until March 31, 2003 by agreement of Dunellen and Getty Marketing. See Affidavit of Avery Noe at ¶ 4. It is undisputed that Getty Marketing and Dunellen discussed extending the Throughput Agreement, but could not reach an agreement on the terms of a further extension. It is undisputed that Getty Marketing has not used the Pier since March 2003.

14. It is undisputed that beginning in 1998, Global Companies, LLC ("Global") began using the Pier, and also the pipelines owned by Getty Properties, to offload petroleum products and move them to Dunellen's terminal facility. It is undisputed that in June 2003, Dunellen and Global entered into a long term lease of all of Dunellen's storage tanks at its terminal facility and also executed an option agreement. The lease and option agreements are documents that speak for themselves. It is undisputed that Dunellen has expanded the storage capacity of its terminal facility from roughly 300,000 barrels to over 1 million barrels, and made other improvements to the terminal. It is undisputed that Dunellen's 2005 revenues from leasing its facility to Global exceeded $2.5 million. Otherwise, denied. See Dunellen Exhibit 6 (Dunellen's Answers to Interrogatory No. 2) (stating that from January through July 2006, 3,598,435.82 barrels of petroleum products were unloaded at the Pier and transported through the Pipelines to Dunellen's storage facility); Dunellen Exhibit 11 (Avery Noe Deposition Testimony at pp. 64-65 (testimony from Avery Noe that he did not know the

year end numbers for 2006); Dunellen Exhibit 6 (Dunellen's Answer to Interrogatory No. 7).

15. It is undisputed that Dunellen and Global entered into a Letter Agreement regarding Pier improvements. See Getty Properties' Exhibit W. The Letter Agreement speaks for itself.

16. It is undisputed that in 2003, Dunellen developed a 10-year schedule of improvement projects for the Pier. It is undisputed that Dunellen discussed the projects with Global. Dunellen is not legally bound to perform any specific improvement project. See Exhibit 11 (Avery Noe Deposition Testimony at 91-92) and Getty Properties Exhibit W. It is undisputed that Dunellen has completed several Pier improvements. Improvements to the Pier are necessary to avoid accidents and extend the life of the Pier. See e.g., Dunellen Exhibit 11 (Avery Noe Deposition Testimony at 58) and Getty Properties Exhibit Y (January 2003 Letter). It is undisputed that Global has reimbursed Dunellen for half of the cost of the projects completed to date. Some, but not all, of the Pier improvements completed to date were discussed with Getty Properties prior to 1997. Otherwise, denied.

17. It is undisputed that in December 2005, Dunellen filed suit against Getty. The complaint is a pleading that speaks for itself.

HINCKLEY ALLEN & SNYDER LLP

/s/Mitchell R. Edwards
Gerald J. Petros (#2931)
Charles D. Blackman (#5522)
Mitchell R. Edwards (#6942)
50 Kennedy Plaza, Suite 1500
Providence, RI 02903-2393
(401) 274-2000
(401) 277-9600 (fax)
Attorneys for Dunellen, LLC

Dated: March 16, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2007, a copy of foregoing Statement of Disputed Facts was filed and sent electronically to the following counsel of record:

James W. Ryan, Esq.
Robert K. Taylor, Esq.
Partridge, Snow & Hahn LLP
180 South Main Street
Providence, RI 02903

/s/Mitchell R. Edwards