**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| DUNELLEN LLC,<br><br>Plaintiff,<br><br>v.<br><br>GETTY PROPERTIES CORP.,<br><br>Defendant. | C.A. No. 06-014-ML |

**REPLY OF GETTY PROPERTIES CORP. IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

Getty Properties Corp. ("Getty"), through counsel, submits the following reply in support of its motion for partial summary judgment.

## A. Dunellen's Claims Must Be Dismissed Because They Were Not Raised In The 2000 Litigation.

Dunellen's Memorandum of Law in Opposition to Getty's Motion for Partial Summary Judgment mistakenly focuses on only one aspect of the 2000 Litigation among Getty, Getty Petroleum Marketing, and Dunellen's predecessor, Capital Terminal Company: Count V of the Second Amended Complaint, which asked for a declaration confirming that Getty had the right to use the north side of the Wilkesbarre Pier. Getty Ex. S, ¶¶ 69-77.[1] As the court doubtless remembers, however, that was but one of a host of issues in the case. Another hotly contested issue was whether Capital Terminal breached a contractual obligation to both Gettys to pay for repairs to the Pier. *Id.*, ¶¶ 59-68 (Breach of Contract); ¶¶ 78-87 (Third Party Beneficiary Breach of Contract). In December 2002, a jury awarded Getty Petroleum Marketing damages of

[1] Getty Ex. S is appended to Getty's Statement of Undisputed Facts submitted in support of its February 27, 2007 Memorandum in Support of its Motion for Partial Summary Judgment.

$100,000 for breach of that obligation. Furthermore, Getty asked for injunctive relief requiring Capital Terminal to repair the Pier at Capital Terminal's expense to prevent Getty's pipeline supports from subsiding. Getty Ex. S, ¶¶ 54-58; *see* Getty Ex. A, September 5, 2003 Memorandum and Decision at 15 ("Getty Properties seeks an order of this Court directing the Defendant to remove the waterline from the pipeline supports immediately and to repair the Pier in its entirety."). In support of this and other claims, Getty unmistakably alleged more than once that it had no obligation to pay for Pier repairs. Getty Ex. S, ¶¶ 36-37, 56. Nevertheless, Capital Terminal did not raise a claim for such costs against Getty.

Notwithstanding the vigorous multi-year litigation among the parties regarding virtually every aspect of their relationship, including liability for Pier repairs, Capital Terminal did not file a counterclaim asserting that Getty had an obligation to pay for such repairs. Capital Terminal belatedly raised that argument for the first time in its post-trial memorandum following the bench trial held in June 2003. Getty objected, on the grounds that the claim was untimely. Dunellen Ex. 12 (Getty Post-Trial Memorandum) at 24 ("Apportionment of all Pier expenses was not raised in any of the pleadings, in Defendant's pretrial memorandum, or at trial."). The court declined to address Capital Terminal's belated assertion that Getty should pay half of all Pier expenses, perhaps because it read Capital Terminal's claim for Pier expenses as being dependent on Getty's use of the Pier.

Significantly, Capital Terminal's July 2003 post-trial memorandum asked the court to order Getty to pay half of Capital Terminal's Pier expenses retroactively to 1998. Ex. AA, Capital Terminal Post-Trial Memo. at 22 ("Moreover, the Court's allocation should be applied retroactively to January 1, 1998, the date when Getty Properties' rights under the 1941

Deed supposedly accrued.”).[2] Thus, Capital Terminal knew it had a claim for monetary damages accruing since 1998, but failed to raise that claim in a timely way in the 2000 Litigation. Had it done so, it would have gotten an answer to the precise issue now pending before the Court, without subjecting the Court and Getty to serial litigation. Therefore, Dunellen’s current suit is barred.

Dunellen’s reliance on the Restatement (Second) of Judgments § 33 and cases applying that section is misplaced. One need look no further than the section of the comment quoted in Dunellen’s brief:

> When a plaintiff seeks <u>solely</u> declaratory relief, the weight of authority does not view him as seeking to enforce a claim against the defendant.

Dunellen Opposition Mem. at 8 (quoting Restatement (Second) of Judgments § 33, comment c) (emphasis added). As discussed above, the prior litigation involved far more than just Getty’s count seeking a declaration that it had the right to use the Pier. Dunellen’s treatment of Getty’s declaratory claim as if it existed in a vacuum does not reflect reality. The parties’ respective obligations regarding Pier repairs were thoroughly aired in the 2000 Litigation, numerous documents painstakingly reviewed, and two trials held, consuming vast amounts of the Court’s time. Dunellen’s claim for Pier expenses should have been raised then, but was not.

**B. <u>Dunellen’s Claim Is Barred By The Doctrine Of Accord And Satisfaction.</u>**

Dunellen apparently does not dispute that the 1997 Settlement Agreement precludes it from recovering expenses for Pier repairs that were identified as “priority” repairs in the arbitration proceeding initiated that year by Providence & Worcester Railroad. Dunellen Opposition Mem. at 9 (“the 1997 Settlement Agreement settled claims for maintenance to the Pier only as of the date of the 1997 Settlement Agreement”). Therefore, Dunellen clearly is not

[2] Similarly, although Dunellen styled its current complaint as a declaratory judgment action, the prayer for relief explicitly seeks an award of “money damages.”

entitled to further payments for the many Pier repairs that were needed in 1997 but deferred until 2003 or later.

Dunellen does dispute the impact of the 1997 Settlement Agreement on "new" Pier repairs, or repairs not already identified by December 1997. It argues that Getty should pay for a share of such "new" repairs (if there are any) because the 1997 Settlement Agreement "does not say anything about the parties' obligations with respect to Pier expenses after the Throughput Agreement expired in 2003." Dunellen Opposition Mem. at 9. The reason that the 1997 Settlement Agreement does not say anything about 2003 is because whether the Throughput Agreement expired in 2003 at the end of its initial term or was renewed for additional years[3] made no difference to Getty. Either way, Getty had satisfied all of its Pier obligations, and Providence & Worcester Railroad had agreed to look to Getty's tenant for repair money, rather than to Getty.

In 1997, Getty's obligation to pay Pier expenses was spelled out in the 1991 Pier Operating Agreement. That agreement did not require non-users of the Pier to pay unless they resumed use, and by the end of 1997 Getty was a non-user.[4] Getty did not bargain to withdraw from the 1991 Pier Operating Agreement in order to win greater liability for Pier costs than it would have faced under that agreement (half of all costs regardless of use, as Dunellen would have it). It bargained for the Pier owner's agreement to deal directly with Getty's tenant, not Getty, to work out future payments for Pier costs. The Throughput Agreement provided for automatic one year renewals, and might have continued indefinitely. Dunellen's inability to come to terms with Getty Petroleum Marketing does not mean that Getty loses the benefit of its

[3] The Throughput Agreement provided for automatic one year renewals at the end of the initial term, unless notice of termination was given by a party. Getty Ex. Q.

[4] *See* Getty Ex. N (1991 Pier Operating Agreement) Sections V and IX B, discussed in Getty's Memorandum in Support of Partial Summary Judgment at p. 10.

bargain in the 1997 Settlement Agreement to have the Pier owner look to Getty's tenant going forward.

**C. <u>Dunellen's Demand For Half Of All Pier Costs In Perpetuity, Regardless Of Whether Getty Ever Uses The Pier Again, Is Legally Unsupported And Should Be Dismissed.</u>**

Dunellen concedes that its "business is successful," but maintains that it should not have to pay one penny for the multi-million dollar Pier improvement program undertaken for the sole benefit of Dunellen and its tenant, without notice to Getty. Dunellen Opposition Mem. at 15.[5] Dunellen has not cited a single case that supports this inequitable result. Getty has discussed *Friends of the Sakonnet v. Dutra* and *Lake Lookover v. Olsen*, on which Dunellen principally relies, in its objection to Dunellen's cross-motion for summary judgment and incorporates that discussion herein by reference. *See* Getty Objection to Dunellen LLC's Motion for Partial Summary Judgment, pp. 3-6. Neither case is even remotely like the case before the court. Neither case holds that a pier owner and user may unilaterally make pier improvements to suit its own business needs, and charge a non-user of the improvements half the cost because of an unexercised right to use the pier.

Dunellen does not dispute that Getty may never use the Pier again, but demands that Getty pay half of all Pier costs anyway. The time to address Getty's contribution to Pier costs is when it resumes using the Pier, if it ever does. If Getty never resumes using the Pier, then Dunellen's fear of free-riding is moot. If Getty ever does resume using the Pier, five, ten, fifteen or more years hence, it may be that changed circumstances will enable the parties to reach an agreement without resorting to litigation. The court need not decide today a dispute that may never arise. Dunellen's claim for half of all Pier costs in perpetuity should be dismissed.

---

[5] Dunellen further concedes that Providence & Worcester Railroad Co. has the same right to use the Pier as Getty. *Id*. at 13, n. 5. It would seem that if there are three rightful users of the Pier, Getty's share of expenses should be no more than one third, even if Dunellen has voluntarily assumed P&W's share. Predictably, however, Dunellen prefers to ignore P&W's right to use the Pier in calculating its claim.

GETTY PROPERTIES CORP.

By Its Attorneys,

PARTRIDGE SNOW & HAHN LLP

/s/ Robert K. Taylor

James W. Ryan (#4042)
Robert K. Taylor (#6514)
180 South Main Street
Providence, RI 02903
(401) 861-8200
(401) 861-8210 FAX
jwr@psh.com
rkt@psh.com

DATED: March 30, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing REPLY OF GETTY PROPERTIES CORP. IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT was filed with the Clerk of the United States District Court for the District of Rhode Island this 30th day of March, 2007 and is available for viewing and downloading to the following ECF registered counsel of record:

Gerald J. Petros, Esq. / Hinckley, Allen & Snyder LLP
Mitchell R. Edwards, Esq. / Hinckley, Allen & Snyder LLP

/s/ Robert K. Taylor

909519_1/2900-7