UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| DUNELLEN, LLC, | : | |
| Plaintiff, | : | |
| v. | : | No. 06-014-ML |
| GETTY PROPERTIES CORPORATION, | : | |
| Defendant. | : | |

**DUNELLEN, LLC'S REPLY BRIEF TO GETTY PROPERTIES CORPORATION'S OPPOSITION TO DUNELLEN'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I. INTRODUCTION

Getty Properties opposes Dunellen's motion for partial summary judgment on two grounds. Getty Properties argues (1) that equity and the law of easements precludes summary judgment and (2) that factual issues preclude summary judgment. Getty Properties is wrong on both counts.

First, the law of easements provides that in the absence of an agreement to the contrary, the easement holder (the "dominant estate") is responsible for maintaining the easement over the land of the owner (the "servient estate"). Getty Properties tries to distinguish cases supporting this proposition on the facts in those cases. As described more fully below, Getty Properties' attempts to distinguish cases cited by Dunellen are misplaced and unpersuasive. There is no agreement in effect today governing the parties' obligations with respect to Pier expenses, and Getty Properties' sudden nostalgia cannot resurrect the Pier Operating Agreements. In the absence of such an agreement, Getty Properties as the easement holder is responsible for maintaining the easement. Getty

Properties demands the right to use the Pier without the burden of maintaining the Pier. Neither equity nor the law of easements will countenance such a result.

Second, no factual issue prevents the Court from declaring Getty Properties' obligation to contribute to the maintenance and repair of the Pier. It is for the factfinder to determine which expenses are reimbursable.

Dunellen respectfully requests that the Court grant partial summary judgment in favor of Dunellen.

## II. ARGUMENT

### A. GETTY PROPERTIES IS OBLIGATED TO PAY FOR PIER EXPENSES.

Getty Properties' attempt to distinguish case law requiring Getty Properties to pay for repairs and maintenance on the Pier is misplaced. In Friends of the Sakonnet v. Dutra, 749 F. Supp. 381, 389-390 (D.R.I. 1990), the Court stated the general rule that "[t]he duty of maintaining an easement so that it can perform its intended function rests on the owner of the easement *absent any contrary agreement*." (emphasis added). The Court stated that "[i]f there was no agreement, the homeowners (easement holders) are responsible, under the law of easements, for the repairs now needed." Id. In Friends of the Sakonnet, the parties had written agreements, which the Court found to be ambiguous with respect to the easement owners obligations for repairs and maintenance. As a result, the Court looked to the "circumstances surrounding the claimed formation of the easement as well as the subsequent conduct of the parties to the agreement." Id. at 390.

Here, unlike in Friends of the Sakonnet, the 1941 Deed (the "1941 Deed") and the August 6, 1975 Agreement (the "1975 Agreement")_between Providence and Worcester Company and Getty Oil Company (Eastern Operations), Inc., predecessors to the present

parties, are silent with respect to the parties' respective obligations to pay for repairs and maintenance. There is no ambiguity in the 1941 Deed or the 1975 Agreement for the Court to interpret. Consequently, there is no basis for the Court to look to circumstances surrounding the 1941 Deed or the 1975 Agreement or to look to subsequent conduct of the parties to determine Getty Properties' obligations with respect to Pier expenses. See Demirs v. Plexicraft, Inc., 781 F.Supp. 860, 862 (D.R.I. 1991) ("If . . . a contract is thought ambiguous, the court may receive extrinsic evidence, even parol evidence, to determine whether uncertainty exists. Contract language is usually considered ambiguous where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable difference of opinion as to the meaning of the words employed and obligations undertaken.") (citations omitted). Here, the 1941 Deed and the 1975 Agreement contain no provisions with respect to the parties' obligations for Pier expenses so there is nothing for the Court to interpret. Accordingly, the general rule that the easement owner has the duty to maintain the easement applies here. Under this rule, the fact that Dunellen, as owner of the Pier, has control of the Pier is immaterial. Dunellen has taken into account the fact that it uses the Pier in its request that Getty Properties pay for only a portion (fifty percent) of the Pier expenses.

Getty Properties' attempts to distinguish Lake Lookover v. Olsen, 791 A.2d 270 (N.J. Super 2002) also miss the mark. First, in Lake Lookover, the Court relied upon the common law and the consent order in determining the easement holders obligations to contribute to dam repairs and stated the general rule that "[w]ith the benefit [of an easement] ought to come the *burden, absent agreement to the contrary* . . . ." (citations omitted) (emphasis added). Notwithstanding Getty Properties unsupported statements to

the contrary, the 1997 Settlement Agreement does not establish that Getty Properties does not have an obligation to contribute to Pier expenses. The plain language of the 1997 Settlement Agreement demonstrates that it resolved claims as to pier maintenance for the Pier **prior to 1997**, not claims for maintenance **after 1997**. See Dunellen Exhibit 2.

Second, Getty Properties notes that in Lake Lookover the easement holders did not pay anything for the dam even though they enjoyed the lake for years. Getty Properties, however, pursuant to the terms of the Pier Operating Agreements then in effect, contractually paid for Pier maintenance. In Lake Lookover, the parties did not have agreements in place during those years specifying the parties' obligations with respect to repairs and maintenance of the dam. The fact that Getty Properties satisfied the terms of the Pier Operating Agreements in the past does not free it from its obligations under the common law to pay for maintenance when there are no longer Pier Operating Agreements or other agreements in effect, which is the case since 1997.

Third, Getty Properties argues that the owners of the dam were not using it for their own commercial benefit, while Dunellen is using and making money off of the Pier. This distinction is of no consequence. The rule stating that an easement owner has a duty to maintain the easement absent an agreement to the contrary does not have an exception for those easements where the servient estate profits from the easement.

Fourth, Getty Properties claims that the easement holders in Lake Lookover would "as a practical matter continue to benefit from and in all likelihood use the lake on a daily basis even if they purportedly abandoned their easement" whereas Getty Properties has not used the Pier since 1997. See Getty Properties Objection at p. 6. Putting aside the fact that there is no statement to this effect in the Lake Lookover

decision, Getty Properties misses the point of the court's reasoning. The court rejected the easement holders' attempts to evade their obligations to contribute to repairs and maintenance of the dam by abandoning their easement rights, stating that "[a] decision which would permit those who have enjoyed use of the easement to now avoid such payment, simply by an act of purported abandonment of the easement, would make little sense." Here, Getty Properties wants to have its cake and eat it too. It sought and obtained a declaration that it did not abandon its right to use the Pier in 2003, and now it wants to argue that it is not using the Pier (a status similar to abandonment) and therefore is not obligated to pay for any Pier expenses. Getty Properties wants the benefit of having the Pier available for its use in the future without the burden of repairing and maintaining the Pier so that it is available for use in the future.

Fifth, notwithstanding Getty Properties' characterization to the contrary, the court in Lake Lookover did not hold "that the association could not simply assess each easement holder pro rata, but should consider the use and benefits conferred on each easement holder in deciding how to allocate the repair costs." Getty Properties Objection at p. 6. The court said the following:

> The [trial] court did find that the Association had erred in simply imposing an identical assessment against all properties without considering whether assessments for different properties should vary depending on such factors as the size of an individual property, its proximity to the lake, and whether it had been developed. It directed the Association to meet again and make that determination, by vote in which all property owners (not just Association members) would have a right to participate.

Lake Lookover, 791 A.2d at 65. The Court did not mandate that the Association not use an identical assessment, only that the Association consider whether the assessments should vary depending on certain factors. Further, the factors identified by the court are

not a function of use. The size of an individual property, its proximity to the lake and whether it had been developed does not determine how much the easement holder used the lake.

In a footnote, Getty Properties also tries to distinguish Ingling v. Public Service Electric & Gas Co., 10 N.J. Super. 1, 10-11 (App. Div. 1950) by claiming that the case "involved the duty to maintain property owned by the easement holder." Getty Properties' Objection at p. 5 n. 2. Getty Properties misreads Ingling; Getty Properties wrongfully concludes that the easement holder (dominant estate) "owned" the property. It did not. The easement holder (like Getty Properties) was the dominant estate and the owner of the property (like Dunellen) was the servient estate. The court said:

> Plaintiff as successor in title to the servient tenement was privy to the covenants binding on defendants which we have quoted; indeed, the covenants only declared defendants' obligations raised by law from their ownership of the dominant estate. *Plaintiff as owner of the servient tenement was not bound, in the absence of his agreement assuming the obligation, to keep the easement in repair or to sustain any expense in maintaining it in proper condition; he could not interfere with defendants' enjoyment of it; since it was their property, theirs was the duty of examination and repair and as owners of the dominant estate they had a right of access to and could enter upon the servient estate for the purpose*.

Ingling, 10 N.J. at 10-11. The court held that the dominant estate (i.e., the owner of the easement) had a duty of care to the injured plaintiff (the owner of the land) to maintain property in the easement area. Thus, Ingling is entirely consistent with Dunellen's position.

### B. DUNELLEN IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF GETTY PROPERTIES' OBLIGATION TO CONTRIBUTE TO THE REPAIR AND MAINTENANCE OF THE PIER.

Dunellen's motion for partial summary judgment does not ask the Court to declare how much Getty Properties owes Dunellen for Pier expenses incurred since 2003. Rather, Dunellen's motion for partial summary judgment asks the Court to declare that Getty Properties has a duty to contribute to the maintenance and repair of the Pier. Dunellen agrees with Getty Properties that factual issues preclude summary judgment on the issue of which particular expenses are reimbursable.[1] But factual issues do not preclude this Court from declaring that as the easement holder, Getty Properties has an obligation to contribute to the maintenance and repair of the Pier because there is no agreement to the contrary.

[1]Certain expenses, which should be later determined, may not be allocable to the easement holder (i.e., those expenses that are solely a function of use by another and those which are part of the 1997 Settlement Agreement).

In response to statements made by Getty Properties in its opposition brief at pages 7 through 11, Dunellen submits with this reply memorandum an affidavit from Avery Noe regarding the environmental influences on the Pier, which are not a function of use, and an Affidavit from Todd Turcotte regarding standards from the Rhode Island Coastal Resources Management Council.

## III. CONCLUSION

For the foregoing reasons, Dunellen respectfully requests that the Court grant Dunellen's motion for partial summary judgment.

HINCKLEY ALLEN & SNYDER LLP

/s/Mitchell R. Edwards
Gerald J. Petros (#2931)
Charles D. Blackman (#5522)
Mitchell R. Edwards (#6942)
50 Kennedy Plaza, Suite 1500
Providence, RI 02903-2393
(401) 274-2000
(401) 277-9600 (fax)
medwards@haslaw.com
Attorneys for Dunellen, LLC

Dated: March 30, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on March 30, 2007, a copy of foregoing Reply Memorandum was filed and sent electronically to the following counsel of record:

James W. Ryan, Esq.
Robert K. Taylor, Esq.
Partridge, Snow & Hahn LLP
180 South Main Street
Providence, RI 02903

/s/Mitchell R. Edwards