# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RECEIVED
OCT 19 2001
BY:

GETTY PETROLEUM MARKETING INC. and GETTY PROPERTIES CORP.,

Plaintiffs

v.

CAPITAL TERMINAL COMPANY,

Defendant

C.A. No. 00-0381-ML

**PLAINTIFFS' RESPONSES TO DEFENDANT CAPITAL TERMINAL COMPANY'S SECOND SET OF INTERROGATORIES**

Plaintiffs Getty Petroleum Marketing Inc. ("Getty Petroleum") and Getty Properties Corp. ("Getty Properties") (sometimes collectively, "Getty" or "Plaintiffs") hereby respond to the Second Set of Interrogatories propounded by Defendant Capital Terminal Company ("Capital Terminal"), pursuant to Fed.R.Civ.P. 33 and 34, and pursuant to this Court's Order dated September 20, 2001.

**Interrogatories**

**Interrogatory No. 1**: Identify:

(a) each person answering or preparing answers to these interrogatories;

(b) each person providing information concerning the answers to these interrogatories; and

(c) the particular interrogatory or interrogatories that each person answered or for which that person provided information.

PENGAD-Bayonne, N. J.
DEFENDANT'S EXHIBIT
FFF

**RESPONSE:** Information incorporated in these interrogatory responses was obtained from the previous sworn statements of the following current or former Getty employees, all of whom have already been deposed in this litigation: Paul Stendardi, ~~Maria Gallo, Vince DiLaurentis, Samuel Jones, Leo Liebowitz, Randi Young-Filip and~~ Elena Lokis.

**Interrogatory No. 2:** Identify all facts which you contend support, and all documents and communications concerning or relating to the claim that defendant's installation of the Waterline interferes with the quiet enjoyment of the easement of Getty Properties, as alleged in paragraph 29 of the Amended Complaint.

**RESPONSE:** By installing the waterline and affixing it to Getty's two existing petroleum pipelines on the Wilkesbarre Pier, Capital Terminal has acted in violation of the terms of the easement granted by the predecessor interest to Getty Realty to the predecessor in interest of Capital Terminal in the Grant and Agreement, as amended. The actions of Capital Terminal are wholly inconsistent with, and in derogation of, Getty's property rights at the Wilkesbarre Pier. By affixing the waterline to the existing pipelines, Capital Terminal has acted in violation of ¶ 8 of the Third Amendment to the Grant and Agreement, which provides that the Trustees and their successors shall not impair or interfere with Getty's rights and easements within the easement area, and which requires that any new pipeline installed within the easement area by the Trustees or their successors or assigns shall be located outside the 10-foot easement. As detailed in the letter dated February 16, 2001, from Paul J. Stendardi to Avery Noe, the Childs Engineering Report dated February 14, 2001, as well as the Pare Engineering reports, the pier continues to erode and the additional weight of the 10" water pipe will cause



PRV_460113_1/MFREEL

additional settling and alter the response and possible configuration of the petroleum product pipelines supports, thereby creating new gaps or widening existing gaps which will require additional shimming. As a direct result of the lack of pier maintenance and ~~the continued deterioration of the Pier, the affixing of the waterline to the existing~~ pipelines creates a significant safety issue with regard to the existing petroleum pipelines as a result of its own weight, and the danger that, if charged by the infusion of water, there will be additional weight which will cause additional stress to the pipelines and the pipeline supports.

**Interrogatory No. 3:** State what is meant by "alter the response and possible configuration of the petroleum product pipeline supports," and state how the petroleum pipeline supports will be interfered with and endangered, all as alleged in paragraph 30 of the Amended Complaint.

**RESPONSE:** See Response to Interrogatory No. 2.

**Interrogatory No. 4:** State all facts which you contend support, or upon which you intend to rely in support of your claim that defendant's installation of the waterline violates the Grant and Agreement, as amended, identifying each provision thereof which is, has been or will be violated, all as alleged in paragraph 45 of the Amended Complaint.

**RESPONSE:** See Response to Interrogatory No. 2.

**Interrogatory No. 5:** Identify with specificity all "temporary repairs" Getty has made to the Pier, as alleged in Paragraph 46 of the Amended Complaint, and identify all documents and communications referring or relating to said repairs.

**RESPONSE:** As a result of the continued deterioration of the Wilkesbarre Pier, as detailed in the Pare Engineering report dated May 11, 2000 and the September 1996 "Priority Repairs Items at Wilkes-Barre Pier," the pipeline supports are gradually sinking

and it has been necessary on several occasions for Getty to place "shims" between the pipeline and the pipeline supports in order to relieve the pipeline of additional stress.

**Interrogatory No. 8:** Identify by name, address and job title as of December 15, 1997, all individuals associated in any way with plaintiffs, or either of them, P&W and/or defendant, who understood and agreed that P&W would maintain the Pier in good repair and good working condition (as alleged in paragraph 50 of the Amended Complaint), and identify any and all documents and communications drafted, written and/or sent to or by any of those identified individuals, which relate to the alleged understanding and agreement which are the subject of said interrogatory and paragraph 50 of the Amended Complaint.

**RESPONSE:** Based upon communications with Providence & Worcester Railroad ("P&W"), the circumstances under which the Throughput Agreement was signed, and the language of the Throughput Agreement, several employees of Getty Petroleum Marketing and Getty Properties understand and believe that P&W undertook an obligation in the Throughput Agreement to maintain the Wilkesbarre Pier (the "Pier") in good repair and good working condition. Those employees include: Samuel Jones, Vince DeLaurentis, Paul Stendardi, Maria Gallo, Leo Liebowitz and Elena Lokis. All of these individuals have already been deposed in this litigation.

With regard to documents, Getty has already produced any and all documents remaining in its possession that support its contentions in this regard. Those documents have been addressed at many of the aforementioned depositions, and at the deposition of Heidi Eddins of P&W, among others. By agreement of counsel, and pursuant to the aforementioned Order of this Court, Getty is not listing those documents at this time. Moreover, in response to renewed requests by counsel for Capital Terminal Company, Getty has conducted a diligent search for any additional responsive documents, and has not been able to locate any such documents. Therefore, the only responsive documents

are those produced prior to this time, during the course of this litigation.

**Interrogatory No. 9:** State by whom, of those in the employ of or rendering services to plaintiffs, or either of them, now or at any time heretofore, it was understood and agreed that "P&W . . . would make a substantial investment in addressing the deteriorating condition of the Pier . . .," as alleged in paragraph 51 of the Amended Complaint, and identify any and all documents and communications drafted, written or sent to or by any of those individuals, which relate to the alleged understanding which is the subject of the first sentence of paragraph 51 of the Amended Complaint.

**RESPONSE:** See Getty's response to Interrogatory No. 8, which is incorporated by reference herein.

**Interrogatory No. 10:** Identify all individuals associated in any way with plaintiffs, or either of them, P&W and/or defendant who "understood" that P&W would direct a significant part of throughput revenues to the rehabilitation of the Pier and to Pier repair and maintenance (as alleged in paragraph 52 of the Amended Complaint), and identify any and all documents and communications drafted, written and/or sent to or by any of those individuals, which relate to the alleged understanding which is the subject of said interrogatory and of the first sentence of paragraph 52 of the Amended Complaint.

**RESPONSE:** See Getty's response to Interrogatory No. 8, which is incorporated by reference herein.

**Interrogatory No. 11:** State what is meant by "in significant part" in the fifth line of paragraph 52 of the Amended Complaint.

**RESPONSE:** As set forth above, Getty believed in 1997, and continues to believe to date, that the Throughput Agreement imposes an obligation upon P&W to spend revenues generated by that Agreement on the repair and maintenance of the Pier. Getty also recognizes that there may be certain other limited expenditures, besides repair and maintenance, that P&W or its successor would pay from funds generated by the

Throughput Agreement. This would include Getty's pro rata share of property tax obligations associated with the Pier, but not insurance. The Throughput Agreement requires the parties to maintain and pay for their own insurance. Otherwise, Getty believes that revenues generated from the Throughput Agreement should be directed toward the necessary repair, upkeep and rehabilitation of the Pier. This is what Getty intended by the phrase "in significant part" in Paragraph 52 of its Amended Complaint.

**Interrogatory No. 12:** State what is meant by the term "necessary rehabilitation of the Pier" as used in paragraph 52 of the Amended Complaint.

**RESPONSE:** Getty notes that in 1997, when P&W initiated an arbitration proceeding against Getty arising out of the 1991 Amended and Restated Wilkesbarre Pier Operating Agreement (the "1991 Operating Agreement"), P&W took the position that certain repairs and maintenance at the Pier were "imminently necessary." Many of these repairs and maintenance items were identified in documents generated by Capital Terminal's engineers from Pare Engineering, and were incorporated in the arbitration claim. Because of the positions taken by P&W during that arbitration process, and because of the subsequent resolution of those issues in the Throughput Agreement and related documents, Getty has always understood and assumed that P&W and its successor would deem all such repairs and maintenance items as "necessary" and therefore would address them. However, as set forth in the Affidavit of Maria Gallo and the Statement of Material Facts submitted by Getty in connection with its Motion for Summary Judgment on Count V of its Amended Complaint, P&W's successor has failed to address several of those items.

**Interrogatory No. 13:** State what is meant by "express undertaking by P&W," which is the subject of the last sentence of paragraph 52 of the Amended Complaint, and identify any and all documents and communications in which said "express undertaking by P&W," as alleged in paragraph 52 of the Amended Complaint, is contained.

**RESPONSE:** The "express undertaking by P&W" with regard to repair and maintenance of the Pier is contained in Paragraph 5(i) of the Throughput Agreement. Moreover, to the extent that the Court considers parol or extrinsic evidence with regard to the scope of the obligations undertaken by the parties in the Throughput Agreement, the obligations undertaken by P&W are also evidenced in the exchange of correspondence between Getty and P&W throughout 1997, leading up to the arbitration proceeding and the ultimate settlement. This correspondence was discussed at the deposition of Heidi Eddins, formerly of P&W, among other depositions in this litigation. All such documents possessed by Getty have been produced during the course of this litigation.

**Interrogatory No. 14:** Identify each and all of the "numerous demands" alleged in paragraph 56 of the Amended Complaint, stating the name or names of each person making said demand and the person or persons to whom any of said demands were made or addressed. If any of said demands were oral, identify the person making them, the date on which they were made, the substance thereof, to whom they were made and the person to whom they were made or addressed. If said demand were written, the production thereof is called for by the document demand set forth below.

**RESPONSE:** These demands are reflected in part in correspondence produced in this case. In addition, Maria Gallo and Paul Stendardi have described meetings that they attended with representatives of Capital Terminal at which such demands were made.

__Interrogatory No. 15:__ Identify the documents and communications in which the alleged obligations of P&W allegedly breached, as set forth in paragraph 57 of the Amended Complaint, appear or are contained.

__RESPONSE:__ See Getty's response to Interrogatory No. 13 herein, which is incorporated by reference.

__Interrogatory No. 16:__ Set forth each and every item of damage, and the amounts thereof suffered by Getty Petroleum Marketing as alleged in paragraph 58 of the Amended Complaint and describe the manner in which said pecuniary damages are calculated.

__RESPONSE:__ As set forth above, Getty Petroleum Marketing has been harmed by Capital Terminal's breach of the Throughput Agreement as a result of Capital Terminal's failure to perform certain repair and maintenance items consistent with its obligations in the Throughput Agreement, and consistent with statements it made regarding the necessity of those items during the course of the arbitration proceeding that was pending at that time. The details of the repair and maintenance items that have not been addressed, and the costs of those items (presumably in 1997 dollars), are set forth in the Affidavit of Maria Gallo and the Statement of Material Facts submitted by Getty in support of its Motion for Summary Judgment with regard to Count V of its Amended Complaint. As a user of the Pier, and as an assignee and/or beneficiary of Getty Properties' rights in and to the Pier, Getty Petroleum Marketing has been harmed by the absence of those repairs and by the resulting impact on the condition of the Pier. In addition, Getty was also forced to undertake certain steps itself, such as having to shore up pipe supports because of Capital Terminal's failure to repair the Pier.

**Interrogatory No. 17:** State the basis for the allegations in paragraph 72 of the Amended Complaint that the Throughput Agreement replaced the 1991 Wilkesbarre Pier Operating Agreement and identify any and all documents and communications which in any way evidence or relate to your response to interrogatory 20.

**RESPONSE:** Prior to the execution of the Settlement Agreement and related documents in December 1997, as set forth in the Amended Complaint, there were three (3) primary documents governing certain users' rights in the Pier and in related pipelines. Those documents included the 1991 Operating Agreement; the Grant and Easement dated August 6, 1975, as amended; and the Operating Agreement (For Use of Pipelines) dated August 6, 1975. As part of the settlement in December 1975, the two latter documents were amended to reflect the parties' new agreements. At the same time, it was acknowledged that Getty Properties was withdrawing from the 1991 Operating Agreement. Getty's withdrawal from the 1991 Operating Agreement was made effective on the same date that the Throughput Agreement became effective. Moreover, the Throughput Agreement, at Paragraphs 4 through 7, contained largely identical terms and conditions as the pre-existing 1991 Operating Agreement. Therefore, in light of these facts and circumstances, it is reasonable and logical to conclude that the Throughput Agreement replaced the pre-existing 1991 Operating Agreement with respect to an identification and articulation of Getty's relationship as a Pier user to the Pier owner, and those parties' related obligations concerning Pier use, repair and maintenance.

**Interrogatory No. 20:** Describe and itemize the nature and amount of pecuniary harm suffered by Getty Properties as alleged in paragraph 77 of the Amended Complaint, and state the manner in which said amount is calculated.

**RESPONSE:** Getty Properties continues to own and enjoy a property right in the nature of an easement in and to the Pier. That right has been harmed and potentially diminished in value by Capital Terminal's failure or refusal to perform certain repair and maintenance items that its predecessor deemed necessary in connection with the December 1997 settlement. Although the exact nature of any diminution in value is uncertain, and may be difficult to ascertain, the monetary amounts associated with the repairs that Capital Terminal has failed to perform are identified (in 1997 dollars) in the Affidavit of Maria Gallo and the Statement of Material Facts submitted by Getty in support of its Motion for Summary Judgment with respect to Count V. As an owner of certain pre-existing property rights in the Pier, and as the owner of related pipelines and adjacent terminal space, Getty Properties was an obvious intended beneficiary of the Throughput Agreement between Getty Petroleum Marketing and Capital Terminal. As a result of Capital Terminal's failure to meet its obligations to repair and maintain the Pier pursuant to the clear obligations set forth in the Throughput Agreement, Getty Properties has been deprived of the intended benefit of that bargain. This not only had an impact upon Getty Properties' right in and to the Pier, but could have a negative impact upon Getty Properties' ownership rights in the related pipelines and terminal space.

Paul J. Stendardi

~~STATE OF~~ NEW YORK
COUNTY OF NASSAU

Subscribed and sworn to before me this 18 day of October, 2001.

Notary Public
My Commission Expires: DMITRI BEZROUKOV
Notary Public, State of New York
No. 01BE6038787
Qualified in New York County
Commission Expires March 20, 2002

Leo Liebowitz

STATE OF New York
COUNTY OF Nassau

Subscribed and sworn to before me this 18th day of October, 2001.

Notary Public
My Commission Expires: CHRISTINA DEJESUS
Notary Public, State of New York
No. 01DE6062344
Qualified in Nassau County
Commission Expires August 6, 2005



PRV_460113/MFREEL

# CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of October 2001, I caused a true copy of the foregoing to be served upon the following:

**[By Courier]**

Craig M. Scott, Esq.
Robert M. Duffy, Esq.
DUFFY & SWEENEY, LTD.
One Turks Head Place, 12th Floor
Providence, RI 02903

**[By Telecopy]**

Robert L. Tofel, Esq.
Tofel, Karan & Partners, P.C.
780 Third Avenue
New York, NY 10017

[signature]