# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| DUNELLEN LLC,<br><br>Plaintiff,<br><br>v.<br><br>GETTY PROPERTIES CORP.,<br><br>Defendant. | C.A. No. 06-014-ML |

## REPLY OF GETTY PROPERTIES CORP. TO DUNELLEN LLC'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

Getty Properties Corp. ("Getty"), through counsel, submits the following reply to Dunellen's Supplemental Memorandum in Support of Motion for Partial Summary Judgment and in Opposition to Getty Properties' Cross-Motion for Partial Summary Judgment.

Dunellen's primary argument in its Supplemental Memorandum is that the same Pier that was built in 1870 and determined to be personalty by the Rhode Island Supreme Court in 1976 (as asserted by Dunellen's predecessor in interest, Providence & Worcester Railroad Co. ("P&W"), which at the time wanted to reclaim ownership of the Pier without incurring the expense of constructing a modern, updated Pier facility), has morphed into a fixture. This is not the case. Dunellen's Supplemental Memorandum does not identify any changes to the Pier since 1976 that fundamentally affects the nature of that facility. As to Getty, Dunellen is precluded from reopening and modifying the established law in Rhode Island that the Pier is personalty.

## I. BACKGROUND

In the early 1970's, Getty, Exxon and Unocal owned the Pier, but P&W had the undisputed right to build a new Pier on the location of the old one. Getty MFSJ Ex. B (1941 Deed, paragraph 4). Had that new Pier been built, it would have been owned by P&W, while

Getty would have continued to have the non-exclusive right to use the north side of the Pier in common with others for offloading petroleum products. *Id.* Building a new Pier, however, would have cost P&W at least $5 million. Getty SUF Ex. H, at 14 (1976 R.I. Supreme Court Opinion). To avoid that cost, P&W filed suit asserting a right to reclaim the existing Pier from Getty and the other owners by taking over the maintenance. *Id.* at 18 ("The central issue of this controversy is whether P&W-Del. has a right to construct a new pier and then maintain it or whether it may exercise its right merely by maintaining the existing pier."). The Superior Court ruled in P&W's favor, and the Rhode Island Supreme Court affirmed.

Thus, rather than constructing a new Pier, P&W acquired title in 1976 to the existing 100 year old Pier, with all of its problems. That saved P&W the cost of building a new Pier, but left it facing maintenance and repair costs for the old Pier. By 1996, P&W had compiled a list of repairs it alleged were necessary to extend the life of the Pier. Getty SUF ¶ 7. In 1997, P&W filed an arbitration claim against Getty asserting that Getty was responsible under the 1991 Pier Operating Agreement for a pro rata share of major Pier repairs. *Id.* Getty settled that claim, paying almost $300,000, and withdrew from the Pier Operating Agreement. As part of the settlement, P&W entered into a Throughput Agreement with Getty's tenant under which the tenant paid in excess of $1 million over five years, and P&W agreed that it would be responsible for Pier repairs. *Id.* ¶ 8. In 2002, a jury determined that P&W and its successor Capital Terminal Company breached their agreement to make Pier repairs.

Getty has not used the Pier since 1997. Getty SUF ¶ 9. In 2003, Dunellen (successor to Capital Terminal Company) began to undertake a series of Pier repair and improvement projects in consultation with its tenant, Global Companies, LLC. *Id.* ¶ 16. Global agreed to pay up to $1 million for Pier improvements on a 50-50 basis with Dunellen. *Id.* ¶ 15. In December 2005, Dunellen filed this suit seeking to recover from Getty the other half of Pier

improvement expenses incurred since January 1, 2003, and at least half of all Pier related expenses going forward.

## II. ARGUMENT

### A. Dunellen's Supplemental Memorandum Should Be Stricken To The Extent It Raises Arguments Regarding Dunellen's And Its Predecessors' Alleged Intention That The Pier Be Treated As A Fixture.

Months after the close of discovery, Dunellen's latest memorandum raises an entirely new defense to Getty's motion for summary judgment: that the Pier is a fixture to real estate. According to Dunellen's memorandum, "[i]ntent is the most important" factor in assessing whether property is a fixture. Supp. Memo. at 6. While Dunellen lists several purported facts showing that Dunellen has "objectively manifested its intent to treat the Pier as a fixture," Supp. Memo. at 11-12, none of these purported facts are supported by affidavit or other evidence. More importantly, Getty has not had any opportunity to develop contradictory evidence regarding Dunellen's or its predecessors' purported intent. For this reason, Dunellen's argument that the nature of the Pier has been transformed from personalty to a fixture because "Dunellen and its predecessors-in-interest have treated it as a fixture," Supp. Memo. at 11, is prejudicially untimely and should be stricken.

### B. Dunellen's Unilateral Conduct After 1975 Did Not Create Additional Obligations For Getty.

Dunellen's fixture argument also fails because it would impose additional Pier obligations on Getty, beyond those agreed to in 1975, for no additional consideration.

Getty and P&W settled P&W's lawsuit over ownership of the Pier and entered into the Agreement (Getty SUF Ex. C) and Deed of Conveyance (Getty SUF Ex. D) after the Superior Court ruled for P&W in 1975. Contemporaneously, Getty entered into the 1975 Grant and Agreement, under which Getty agreed to construct and maintain certain pipelines and to

allow Robert Eder to use those pipelines. The various agreements in 1975 were "for good and valuable consideration." *Id*.

It is undisputed that, at the time of the settlement, Dunellen's predecessor was asserting that the Pier was personalty. Dunellen Supp. Memo. at 8 ("In the 1970's litigation, P&W took the position that the Pier was personalty."). Therefore, at the time that Getty and Dunellen's predecessor signed the Agreement, the Deed of Conveyance, and the Grant and Agreement, there was no question that Getty would only contribute toward the Pier if it was using it. That understanding was reflected in the series of pier operating agreements signed by Dunellen's predecessors, the last of which expired in 1997. Getty SUF ¶ 5. Since then, Getty has not used the Pier, but Dunellen has continued to charge other Pier users based on their usage of the Pier.

The merger of ownership of the Pier and underlying land after 1975 did not retroactively alter Getty's rights and obligations as to the Pier under the 1975 Agreement and 1975 Deed of Conveyance. Nor is Dunellen's alleged intention in 2007 that the Pier be considered a fixture enough to impose on Getty for the first time liability for one half of all Pier expenses, without regard to whether Getty is using the Pier. That liability vastly exceeds what Getty and P&W bargained for in 1975: the parties' respective rights and obligations regarding P&W's personal property. Dunellen is in effect seeking to alter the terms of the Getty's 1975 settlement with P&W for no additional consideration.

### C. <u>Dunellen Is Estopped From Asserting As To Getty That The Pier Is Not Personalty.</u>

Having successfully defeated Getty's ownership of the Pier in 1975, arguing that the Pier is personalty, Dunellen is both collaterally and judicially estopped from denying that the Pier is personalty as to Getty today. Collateral estoppel applies because (1) there is an identity of issues (the nature of the Pier as personalty or realty), (2) there was a final determination on the

merits (the 1975 Superior Court judgment, affirmed by the Rhode Island Supreme Court), and (3) Dunellen, as successor in interest to P&W, is in privity with a party to the prior action. *See, e.g., Ret. Bd. Of Employees' Ret. Sys. of State v. DiPrete*, 845 A.2d 270, 282 (R.I. 2004).

Judicial estoppel applies because Dunellen's position boils down to a claim that it should be able to characterize the Pier as whatever it wants, whenever it wants, as it finds expedient to serve its business interests. In 1975 and 1976, Dunellen's predecessor characterized the Pier as personalty, to bolster its suit to recover title to the Pier (but not the underlying real estate) without building a modern, updated replacement facility. Today, Dunellen is asserting that the Pier is a fixture, in hopes of laying off on Getty Pier improvement costs that Dunellen and its predecessors until recently chose to defer. Tomorrow, Dunellen acknowledges that it might again characterize the Pier as personalty if it wished, for instance by excluding it from a sale of the underlying land. Supp. Memo. at 12 ("If Dunellen were to sell the land underneath the Pier without specifically excluding the Pier, a court would find title to the Pier to be in the buyer of the land.").

Judicial estoppel "precludes a party from asserting a position in one legal proceeding which is contrary to a position it has already asserted in another." *Patriot Cinemas, Inc. v. General Cinema Corp*., 834 F.2d 208, 212 (1st Cir. 1987). "That doctrine's dual goals are to maintain the integrity of the judicial system and to protect parties from opponents' unfair strategies." *Lydon v. Boston Sand & Gravel Co*., 175 F.3d 6, 12 (1st Cir. 1999). Dunellen's shifting legal claims are a textbook case of "intentional self-contradiction . . . being used as a means of obtaining unfair advantage.'" *Patriot Cinemas, Inc*., 834 F.2d at 212 (quoting *Scarano*

*v. Central R. Co.*, 203 F.2d 510, 513 (3d Cir. 1953)). Therefore, Dunellen's fixture argument should be rejected.[1]

**D. <u>The Law Of Easements Does Not Require Getty To Pay Half Of All Pier Expenses In Perpetuity.</u>**

Dunellen cites two new easement cases omitted from its earlier briefs. Both support Getty's position that an easement to use a structure on land carries with it the right to repair and maintain that structure. It does not, however, carry with it the obligation to pay for repairs desired by the structure's owner. *Carpenter v. Hanslin*, 900 A.2d 1136, 1150 (R.I. 2006) ("where a structure is reasonably necessary to the enjoyment of the right granted under a right-of-way, the courts have so construed the grant as to permit its maintenance.").

In *Mason v. Garrison*, 299 Mont. 142 (2000), the Montana Supreme Court upheld a lower court ruling that property owners with the perpetual right to use a dock on an adjoining parcel could rebuild the dock after it had been destroyed, notwithstanding the objection of the adjoining property owner. In doing so, the Montana court applied the same rule as the Rhode Island Supreme Court in *Carpenter v. Hanslin*, that the right to use a structure carries with it the right to repair and maintain the structure:

> The Lot Owners possess a "permanent" easement to use the "existing dock," which must be read as implying that they have a right to construct and maintain a new dock in the same location as the original dock as a necessary incident of their perpetual right of lake access.

*Id.* at 154. *Mason* does not hold that the Lot Owners were obligated to pay to replace the dock, as Dunellen suggests. Nor does it hold that easement law applies to personalty.

---

[1] Whether the City of East Providence taxes the Pier as real estate is irrelevant. As Dunellen itself points out, a piece of property can be personalty as to one interested person and realty as to another. *Hughes v. Young*, 115 N.C. App. 325, 328 (1994) (mobile home can be personal property and real property simultaneously).

In *Dobie v. Morrison*, 227 Mich. App. 536 (1998), the owner of a waterfront lot granted an easement allowing the owners of "back lots" to use the waterfront lot. The court upheld a lower court ruling that under the wording of the easement, permissible uses of the waterfront lot "included, but were not limited to, picnicking, swimming, fishing, sunbathing, constructing one dock with specified limits regarding its size and other features, walking, using a 'pit fire,' and using and keeping a picnic table." *Id*. at 541. Again, *Dobie* recognized that the easement holders could build a dock if they wished. It does not hold that the waterfront lot owner could build a new dock, or expand and improve an existing one, and force the easement holders to pay for it.

**E. <u>Dunellen's Judicial Estoppel Argument Is Meritless.</u>**

Dunellen's last point reiterates a complaint Dunellen already made in its objection to Getty's motion for summary judgment: that Getty supposedly took an inconsistent position in the 2000 Litigation. Dunellen Objection to Motion for Summary Judgment at 11-12. In fact, as the portion of Getty's post-trial memorandum quoted by Dunellen in its earlier brief makes clear (*id*. at 12), Getty specifically raised the 1976 Supreme Court decision and said then as it does now that it has a "right to cross Defendants' personalty." Getty also said, consistent with its position today, that its right could be described as being "in the nature of" an easement, as opposed to an easement per se. Lastly, Getty continues to cite to easement law, as it did in the 2000 Litigation, because easement law clearly does not obligate an easement holder to pay for repairs desired by the owner of a structure that the easement holder is not using, and by analogy the result here should be the same. Therefore, Dunellen's judicial estoppel argument is meritless.

GETTY PROPERTIES CORP.

By Its Attorneys,

PARTRIDGE SNOW & HAHN LLP

/s/ Robert K. Taylor
James W. Ryan (#4042)
Robert K. Taylor (#6514)
180 South Main Street
Providence, RI 02903
(401) 861-8200
(401) 861-8210 FAX
jwr@psh.com
rkt@psh.com

DATED: January 4, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing REPLY OF GETTY PROPERTIES CORP. TO DUNELLEN LLC'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT was filed with the Clerk of the United States District Court for the District of Rhode Island this 4th day of January, 2008 and is available for viewing and downloading to the following ECF registered counsel of record:

Gerald J. Petros, Esq. / Hinckley, Allen & Snyder LLP
gpetro@haslaw.com

Mitchell R. Edwards, Esq. / Hinckley, Allen & Snyder LLP
medwards@haslaw.com

Mark W. Freel, Esq. / Edwards Angell Palmer & Dodge LLP
mfreel@eapdlaw.com

/s/ Robert K. Taylor

959780_1/2900-7