UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| DUNELLEN, LLC, Plaintiff, | : | |
| v. | : | No. 06-014-ML |
| GETTY PROPERTIES CORPORATION, Defendant. | : | |

**REPLY TO GETTY PROPERTIES CORP.'S MEMORANDUM**

Dunellen submits this reply to Getty Property Corp.'s Memorandum.

## II. ARGUMENT

### A. Dunellen Properly Demonstrates that the Objective Manifestations of the Annexing Party's Intent makes the Pier a Fixture and Therefore Further Discovery is Not Necessary.

The Rhode Island Supreme Court concludes that the most important indication that a chattel is a fixture is the annexing party's intent at the time of annexation. Prospecting Unlimited v. Norberg, 376 A.2d 702, 705 (R.I. 1977). The annexing party's subjective intent is irrelevant. The Court measures intent with reference to objective manifestations of intent to avoid complicating the inquiry into the annexing party's state-of-mind. Attributes which indicate an objective intent to make personalty a fixture include:

> (1) the nature of the article; (2) the manner of annexation to the land; (3) the injury to the land, if any, by its removal; (4) the completeness with which the chattel is integrated with the use to which the land is being put; (5) the relation which the annexer has with the land such as. . . fee owner; (6) the relation which the annexer has with the chattel such as owner . . . .

Everitt v. Higgins, 122 Idaho 708, 711 (Ida. App. 1992) (quoting R. Boyer, SURVEY OF THE LAW OF PROPERTY, ch. 14, 329 (3rd ed. 1981)).

Neither party can dispute that the Pier is attached to the land with huge timbers embedded deep in the soil. It is an enormous structure which cannot be moved. It was adapted for use as a pier in this locale alone, adapted to the geography of the ship's berth, the local tides and weather, and the weight of the cargo, workers and vehicles it must support. Extracting and moving this behemoth to another location would severely damage the land and the Pier and is plainly not feasible. When installed, the Pier was installed by the same company that owned the realty underneath. The Pier is currently owned by the same company that owns all of the land underneath.

Neither an affidavit nor further discovery can improve upon this obvious, objective record. Whether measured at the time of annexation or today, the outcome is self-evident and the same. Under Rhode Island law, the annexing party's intent was to make the Pier a fixture. There exists no genuine dispute of material fact as to the nature of the Pier. The Pier is a fixture as a matter of law. Further discovery will delay these proceedings, cause both parties to incur unnecessary expense and lead to no greater insight than what is already obvious to both parties.[1]

**B. Getty Properties' Reliance on the 1975 Agreement and the 1975 Deed and Conveyance is Misplaced.**

In its Reply, Getty Properties states that the "merger of ownership of the Pier and underlying land after 1975 did not retroactively alter Getty's rights and obligations as to the Pier under the 1975 Agreement and 1975 Deed of Conveyance." (Reply at p.4). Getty Properties ignores the fact that neither the 1975 Agreement nor the 1975 Deed and Conveyance discuss the parties' obligations with respect to Pier expenses. The 1975

[1] Getty Properties' request to strike Dunellen's supplement memorandum or to engage in further discovery is a pointless request -- it will serve no useful purpose. To the extent the court deems an affidavit necessary or appropriate, Dunellen has attached the affidavit of Robert H. Eder to this reply memorandum.

settlement did not address this issue. In addition, the pier operating agreements relied upon by Getty Properties are no longer in effect and therefore irrelevant to the question before the court. Further, the issue of characterizing the Pier as personalty came up in the 1970s litigation at the time of the appeal to the Rhode Island Supreme Court in 1976, after Getty Properties predecessor-in-interest entered into the 1975 Agreement and 1975 Deed of Conveyance with Dunellen's predecessor-in-interest.

### C. <u>Judicial and Collateral Estoppel Cannot Apply to the Instant Case Because the Property's Identity as Personalty Can Change and is not Fixed Forever</u>

Judicial and collateral estoppel cannot apply here because most of the issues and facts in the current litigation are different from those in the 1970's litigation. First, at the time of the Rhode Island Superior Court decision in 1975, Dunellen's predecessor-in-interest owned none of the Pier and none of the land underneath. In contrast, today, Dunellen owns the entire Pier and all of the land underneath. Between 1975 and 1997, Dunellen's predecessor actively acquired the Pier and all of the land underneath the Pier. The land and the Pier were reunited well after the 1976 Rhode Island Supreme Court decision. For a fixture case, this is a highly significant change in factual circumstances, and breaks the identity of issues necessary for collateral and judicial estoppel.

There is a lack of identity of issues in a second way: a property's nature as personalty is not forever fixed but rather can change over time. Placing a machine on a factory floor can turn a machine into a fixture. Removing it can turn it back into personalty. Property can be a fixture as to one party (e.g., a mortgage holder) and simultaneously personalty to another (e.g., the owner of the personalty).

> There is no . . . omnipotent force which makes metaphysical changes in physical objects, changing them from "personalty" into "fixtures." Terms

> such as "realty," "personalty" and "fixtures" should be recognized to be not only descriptions of fact but also convenient but confusing descriptions of the nature of legal relations between persons in various factual situations.

Standard Oil Co. v. State Bd. of Equalization, 232 Cal.App.2d 91, 98 (1965) (quoting Horowitz, *The Law of Fixtures in California*, 26 SO. CAL. L. REV. 21, 22 (1952)). The law provides businesses with the flexibility they need to buy and sell land and fixtures together or separately, depending on ever-evolving industry needs. This illustrates well how man-made property is not eternally "personalty" or a "fixture."

Here, the land and the pier changed hands over the course of thirty-three years. It is undisputable that since 1997, Dunellen or its predecessor has owned 100% of the pier and the land underneath, a factual circumstance in stark contrast to the ownership interests considered by the Rhode Island Supreme Court in 1976. Analysis of the fixture must necessarily change. The doctrines of collateral and judicial estoppel are thus unavailable to Getty Properties.

### D. Easement Holders Must Contribute to the Maintenance of the Easetment, Unless Otherwise Agreed

Getty Properties misstates or misunderstands the law governing requiring dominant estates to contribute to the maintenance of easements. Getty Properties claims that the right to use an easement entails the right to maintain the easement. See, e.g., Carpenter v. Hanslin, 900 A.2d 1136, 1150 (R.I. 2006) (finding that easement holder may construct and maintain boardwalk to better enjoy water access easement); Mason v. Garrison, 299 Mont. 142 (2000) (easement including right to use a chattel such as a dock entails a right to maintain dock); Dobie v. Morrison, 227 Mich. App. 536 (1998) (easement including right to use a chattel such as a picnic table entails right to maintain easement). Dunellen agrees that the right to use an easement entails the right to maintain the easement. With rights

come obligations, however, and in this case Getty Properties has an obligation to maintain and repair its easement. Friends of Sakonnet v. Dutra, 749 F. Supp. 381, 389-390 (D.R.I. 1990).[2]

**E. Getty Properties Admits that the Nature of its Right is in the Nature of an Easement.**

In its reply to the Dunellen's supplemental memorandum, Getty Properties admits, as it must, that the nature of its "right" in the Pier is in the nature of an easement. There is no dispute about this. Therefore, Getty Properties' argument that the Pier was characterized as personalty by the Rhode Island Supreme Court in 1976 is irrelevant. Both parties are now agreeing that the law of easements should be applied here.

HINCKLEY ALLEN & SNYDER LLP

/s/Mitchell R. Edwards
Gerald J. Petros (#2931)
Mitchell R. Edwards (#6942)
50 Kennedy Plaza, Suite 1500
Providence, RI 02903-2393
(401) 274-2000
(401) 277-9600 (fax)

Attorneys for Dunellen, LLC

Dated: January 22, 2008

[2] Though the maintenance issue currently facing Dunellen was not discussed in Mason or Dobie because the dominant estates in those cases wanted to maintain their easements, the cases are useful for demonstrating that an easement can entail a burden on chattels. Mason v. Garrison, 299 Mont. 142, 152 (2000); Dobie v. Morrison, 227 Mich. App. 536, 540 (1998).

**CERTIFICATE OF SERVICE**

I hereby certify that on January 22, 2008, a copy of foregoing Reply Memorandum of Law in Support of Dunellen's Motion for Partial Summary Judgment and in opposition to Getty Properties' Cross-Motion for Partial Summary Judgment was filed and sent electronically to the following counsel of record:

James W. Ryan, Esq.
Robert K. Taylor, Esq.
Partridge, Snow & Hahn LLP
180 South Main Street
Providence, RI 02903

Mark W. Freel, Esq.
Edwards Angell Palmer & Dodge LLP
2800 Financial Plaza
Providence, RI 02903

/s/Mitchell R. Edwards

#865329