# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| DUNELLEN, LLC, | : | |
| Plaintiff, | : | |
| v. | : | No. 06-014-ML |
| GETTY PROPERTIES CORPORATION, | : | |
| Defendant. | : | |

**AFFIDAVIT OF ROBERT H. EDER**

I, Robert H. Eder, upon personal knowledge do hereby state as follows:

1. Capital Properties, Inc. is the sole member of Dunellen, LLC.

2. I am Chairman of the Board of Capital Properties, Inc. and have been since 1997.

3. I am also the Chairman of the Providence and Worcester Railroad Company, incorporated in the 1960s, a predecessor-in-interest with respect to the Wilkesbarre Pier (the "Pier").

4. The Pier was owned and installed by the Wilkesbarre Coal and Iron Company in the 1870s.

5. The Pier was attached to the land with huge timbers embedded deep in the soil. There are over 4,000 piles stuck into the ground. It is an enormous structure which cannot be moved. It was adapted for use as a pier in this locale alone, adapted to the geography of the ship's berth, the local tides and weather, and the weight of the cargo, workers and vehicles it must support.

6. In 1941, Providence and Worcester Railroad Company, incorporated in 1844 (collectively with the Providence and Worcester Railroad Company incorporated in the

1960s, "P&W") conveyed the Pier and the land underneath it to Colonial Beacon Oil Company ("Colonial") through a deed from P&W to Colonial dated August 28, 1941 (the "1941 Deed"). The conveyance gave Dunellen's predecessor-in-interest, P&W, the option to reclaim ownership of the Pier.

7. Colonial became Exxon through name changes. Two additional companies acquired interests in the Pier and the land underneath: Getty Oil and Unocal. Thus, the Pier and land underneath were owned by the following entities: Getty Oil owned 40%, Exxon owned 40% and Unocal owned 20% through 1975.

8. In the early 1970's, a dispute arose between P&W and the three oil companies-- Exxon, Getty Oil and Unocal-- as to who owned the Pier.

9. A Rhode Island Superior Court initially ruled that P&W owned the Pier in fee simple. The oil companies appealed.

10. On August 6, 1975, while the case was on appeal, P&W and Getty reached a settlement ("1975 Agreement") through which Getty conveyed its entire interest in the Pier and the land underneath to P&W ("1975 Deed and Conveyance"), and reserved a right in the north side of the Pier.

11. Thus, before the appeal was heard by the Rhode Island Supreme Court, P&W already owned 40% of the Pier and the land underneath.

12. The 1975 Agreement and the 1975 Deed and Conveyance are silent as to the parties' obligations with respect to Pier maintenance expenses.

13. The pier operating agreements relied upon by Getty Properties are no longer in effect.

14. The Rhode Island Supreme Court later confirmed the Superior Court's judgment in pertinent part, holding that P&W owned 100% of the Pier, but that the remaining oil company defendants (Exxon and Unocal) had the right to use the north side of the Pier.

15. Following the Supreme Court ruling, P & W had a 40% interest in the land underneath the Pier and a 100% interest in the Pier itself.

16. Through a series of transactions between 1975 and 1997, P&W acquired the remaining interests in the land underneath the Pier. Since 1997, P&W, and then Dunellen, have had a 100% interest in both the Pier and the land underneath.

17. Based on my review of P&W's records, the Pier was installed by the same company that owned the realty underneath. At no time in the Pier's history, except between the period 1975 and 1997, has the total or partial interest in the land been in different hands from the owner of the total or partial interest in the Pier. Since 1997, the Pier has been owned by the same company that owns all of the land underneath.

18. Extracting and moving the Pier to another location would severely damage the land and the Pier and is not feasible.

I, Robert H. Eder, hereby certify and declare under penalty of perjury that the foregoing is true and correct based upon my personal knowledge.

Robert H. Eder

Dated: January 21, 2008