UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

DUNELLEN LLC,
Plaintiff,

v. C.A. No. 06-014-ML

GETTY PROPERTIES CORP.,
Defendant.

**MEMORANDUM AND ORDER**

This matter is before the Court on cross motions for partial summary judgment. The matter was originally filed in Rhode Island Superior Court and removed to this Court. Removal jurisdiction is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a). This matter involves the question of whether an entity that has a usage interest in a pier is responsible for a portion of the expenses associated with the pier's upkeep.

**I. Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).[1] An issue is "genuine" if the pertinent evidence is such that a rational factfinder could resolve the issue in favor of either party, and a fact is "material" if it "has the capacity to sway the outcome of the litigation under the applicable law." Nat'l

[1]Fed. R. Civ. P. 56 was amended on December 1, 2007. The motions for partial summary judgment were filed on February 27, 2007. The Court employs the language of the rule in effect at the time of the filings.

Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995). Cross motions for summary judgment "simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Barnes v. Fleet Nat'l Bank, N.A., 370 F.3d 164, 170 (1st Cir. 2004) (internal quotation marks and citation omitted).

The moving party bears the burden of showing the Court that no genuine issue of material fact exists. Nat'l Amusements, 43 F.3d at 735. Once the movant has made the requisite showing, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The Court views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. Continental Casualty Co. v. Canadian Universal Ins. Co., 924 F.2d 370 (1st Cir. 1991). The legal standard for summary judgment is not changed when parties file cross motions for summary judgment. Adria International Group, Inc. v. Ferre Development, Inc., 241 F.3d 103 (1st Cir. 2001). "The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." Bienkowski v. Northeastern University, 285 F.3d 138, 140 (1st Cir. 2002) (internal quotation marks and citation omitted).

## II. Facts

Plaintiff, Dunellen, LLC, ("Plaintiff") is the current owner of the Wilkesbarre Pier ("Pier") which is located on the Seekonk River in the City of East Providence. Defendant, Getty Properties Corporation ("Defendant") has a right to use the north side of the Pier. The Pier has a long and complicated history of ownership, with various parties asserting a right of use, and has

been the subject of previous litigation in this court and in the state courts. See generally Getty Petroleum Marketing, Inc. v. Capital Terminal Co., C.A. No. 00-381, slip op. (D.R.I Sept. 5, 2003); Providence and Worcester Co. v. Exxon Corporation, 359 A.2d 329 (R.I. 1976).

The Pier was constructed in the 1870s and was originally used as a facility for unloading coal from deep water vessels. Later, it was used as a facility for offloading petroleum products. Since its construction, a number of different parties have owned the Pier and the underlying land. See generally Getty Petroleum Marketing, Inc., C.A. No. 00-381 ("Getty I"); Providence and Worcester Co., 359 A.2d 329. Over the years the users of the Pier have operated under the terms of several Pier Operating Agreements. In January 1991, Getty Petroleum Corp., Union Oil Company of California, Capital Properties, Inc. and Providence and Worcester Railroad Company ("P&W"), Plaintiff's predecessor-in-interest, entered into a Pier Operating Agreement. According to the agreement, the parties agreed to pay taxes and Pier repair expenses in proportion to their use of the Pier.

In March 1997, Getty Petroleum Corp. spun off its petroleum marketing business to Getty Petroleum Marketing, Inc.("Getty Marketing"). In connection with the spin off, Getty Petroleum changed its name to Getty Realty Corporation ("Getty Realty"). Following the Getty spin off, a dispute arose between P&W and Getty Realty involving the parties' respective Pier repair obligations. In October 1997 Getty Realty sent a letter to the other signatories of the 1991 Pier Operating Agreement and notified the parties, among other things, that it would be withdrawing from the 1991 Pier Operating Agreement effective April 1, 1998, and that it would cease using the Pier no later than December 31, 1997. In December 1997, Getty Realty and P&W entered

into an agreement to settle an arbitration dispute involving the responsibility for the payment of Pier related expenses ("settlement agreement"). The settlement agreement provided, among other things, that Getty Realty was withdrawing from the 1991 Pier Operating Agreement and was making a lump sum payment to P&W representing its accrued and final obligations under the 1991 Pier Operating Agreement. The settlement agreement also provided that P&W agreed to execute a pier usage agreement with Getty Realty's tenant, Getty Marketing, known as the Throughput Agreement.[2] From January 1, 1998, until March 2003, Getty Marketing used the Pier and made payments to Capital Terminal Company, ("Capital Terminal") another of Plaintiff's predecessor's in interest, pursuant to the Throughput Agreement.[3]

In August 2002, Defendant filed a second amended complaint against Capital Terminal, seeking a declaratory judgment confirming its right to use the north side of the Pier and appurtenant facilities. Plaintiff was added to that suit by stipulation of the parties. This Court determined that it was "undisputed" that Defendant had the right to use the north side of the Pier based upon a reservation of rights in a 1941 deed conveying the Pier, appurtenant facilities, and the underlying land, ("1941 deed"), and subsequent agreements. See Getty I, slip op. at 25.[4] The Court declined to decide Defendant's obligations associated with its right to use the north side of the Pier. The Throughput Agreement expired in March 2003.

---

[2]In January 1998 Getty Realty underwent a reorganization and changed its name to Getty Properties Corp.

[3]By deed effective January 1, 1998, P&W conveyed its interest in the Pier to Capital Terminal. Subsequently, Capital Terminal conveyed its interest in the Pier to Plaintiff.

[4]The Court need not repeat its reasoning supporting its conclusion that Defendant's interest in the Pier dates back to the 1941 deed and subsequent agreements. The reader's attention is directed to the Court's opinion in Getty I for the reasoning underlying that conclusion.

In 2003, Plaintiff developed a schedule of improvement projects for the Pier. Plaintiff has completed several of the projects. On November 10, 2005, Plaintiff sent a letter to Defendant requesting payment for half of the Pier expenses beginning in January 2003. On November 24, 2005, Defendant sent a letter to Plaintiff refusing to reimburse Plaintiff for any portion of the expenses. In December 2005, Plaintiff filed this suit against Defendant requesting a declaratory judgment to establish the obligations associated with Defendant's right to use the north side of the Pier. Defendant had not used the Pier since December 1997. Getty Marketing has not used the Pier since 2003. There is no pier operating agreement in effect.

## III. Contentions

In its motion for summary judgment, Plaintiff contends that Defendant's rights are "in the nature of an easement, which it uses in common with [Plaintiff], the [P]ier owner." Complaint at ¶ 14. Thus, Plaintiff argues that, because Defendant has an "easement" on the north side of the Pier, Defendant is responsible for the expenses associated with the upkeep of the Pier because, with the benefits of an easement, comes the burden of contributing to the expenses associated with its upkeep. Defendant counters that the Pier is personalty, not realty, and as such, Defendant does not have any obligation to pay expenses associated with the maintenance and repair of the Pier regardless of whether it is using the Pier. Defendant also argues that even if easement law can be applied by analogy to the Pier, case law demonstrates that Plaintiff is responsible for repairs and maintenance.

In its motion for summary judgment, Defendant reiterates its personalty argument and also argues that Plaintiff's claim is barred by res judicata and the settlement agreement. Plaintiff

counters that its claim is not barred by res judicata or the settlement agreement and that the claim is governed by the law applicable to easements.

## IV. Discussion

Plaintiff avers that Defendant's right to use the Pier is an easement and as the holder of an easement Defendant must pay a portion of any Pier-related expenses. Defendant counters that the Rhode Island Supreme Court has ruled that the Pier is personal property, thus, the scope of the right to use the Pier is defined like any other contract right – through an applicable agreement. See Providence & Worcester Co., 359 A.2d 329; see generally Rhode Island Economic Development Corp. v. The Parking Co., L.P., 892 A.2d 87, 107 (R.I. 2006) ("an easement is defined as[] [a]n interest in land") (emphasis added) (internal quotation marks and citation omitted). Defendant concludes that since there is no applicable agreement currently in effect between the parties imposing the obligation to pay Pier related expenses regardless of use, it is not responsible for any Pier related expenses.

Providence & Worcester Co. involved the parties predecessors' in interest[5] and the "rights, status and other legal relations of the parties" with respect to the Pier. Providence & Worcester Co., 359 A.2d at 331. As part if its decision, the Rhode Island Supreme Court held that the plaintiffs "correctly perceived the meaning of the trial justice's order as requiring defendants to give plaintiffs a fee simple to personalty, that is, a conveyance of the totality of interests in the existing [P]ier save for defendants' right to use the north side of said [P]ier." Id.

---

[5]While the case was pending on appeal, Getty Oil Co., Defendant's predecessor-in-interest, withdrew as a party to the appeal and agreed that the Rhode Island Superior Court judgment in the matter should be affirmed. Providence and Worcester Co., 359 A.2d at 331 n.1.

at 341 (emphasis added) (footnote omitted). The court clarified that statement by adding "[a]lthough generally the words 'fee simple' are used to describe an absolute interest in real estate, we assume that the trial justice herein used the term loosely to refer to the totality of interest in the [P]ier, even though said [P]ier is personal property." Id. at n.12 (emphasis added). The Rhode Island Supreme Court held that the "root issue" of the controversy was interpreting a reservation of rights clause in the 1941 deed. Id. at 332. The court held that the conclusion that the Pier was personalty was consistent with the intent of the parties to the deed. Id. at 341.

Plaintiff avers that the Rhode Island Supreme Court's holding that the Pier is personal property is inapplicable to this matter because Defendant, in a post-trial memorandum in Getty I, averred that the law of easements applied in determining the scope of its right to use the Pier. Plaintiff also argues that, in Getty I, Defendant admitted that it had a property right in the Pier in "the nature of an easement . . . ." Plaintiff's Supplemental Memorandum at 13. Plaintiff also relies on a reference by this Court, in Getty I, that it was "undisputed that [Defendant] . . . had an easement giving it the right to use the north side of the . . . [Pier] . . . ." Getty I, slip op. at 25. Plaintiff concludes that the doctrine of judicial estoppel bars Defendant from now arguing that the Pier is personal property.[6]

"The contours of the judicial estoppel doctrine are not sharply defined, and there is no mechanical test for determining its applicability." Thore v. Howe, 466 F.3d 173, 181 (1st Cir.

[6]A federal court sitting in diversity jurisdiction must apply federal procedural law and state substantive law. Alternate Systems Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 32 (1st Cir. 2004). The parties agree that federal law controls the judicial estoppel issue. The Court, therefore, foregoes an independent analysis of what law controls and accepts the parties' agreement that federal law controls. See id.

2006); see also Alternative System Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 31 (1st Cir. 2004) (describing the doctrine as "amorphous"). The primary concern of the doctrine is to protect the integrity of the courts by preventing parties from improperly manipulating the judicial system. Alternative System, 374 F.3d at 33. In general, the doctrine of judicial estoppel precludes a party from asserting a position in one proceeding that is contrary to a position it asserted in an earlier proceeding. GE HFS Holdings, Inc. v. National Union Fire Insurance Co. of Pittsburgh, Pa., 520 F. Supp. 2d 213 (D. Mass. 2007). A guiding principle of the doctrine is that it should apply when a litigant is "playing fast and loose with the courts and when intentional self-contradiction is being used as a means of obtaining unfair advantage. . . ." Id. at 223 (quoting Patriot Cinemas, Inc. v. General Cinemas Corp., 834 F.2d 208, 212 (1st Cir. 1987)). Although the parameters of the doctrine are "'hazy,' and each case must be decided on its own facts," there are at least two factors that must be satisfied to ensure proper application of the doctrine. GE HFS Holdings, 520 F. Supp. 2d at 223. First, the legal or factual assertion made in the earlier proceeding must be "directly inconsistent"[7] with the assertion made in the current proceeding. Id. (internal quotation marks and citation omitted). That assertion must have also been "unequivocally asserted" in the earlier proceeding. Brewer v. Madigan, 945 F.2d 449, 455 (1st Cir. 1991). Second, the party must have been successful in persuading the court to adopt the earlier position. GE HFS

---

[7]Courts appear to use the terms "directly inconsistent" and "clearly inconsistent" interchangeably to describe the same element of the claim. See Thore, 466 F.3d 173 at 181, 182 (noting that the first factor is that the party's later position is "clearly inconsistent" with its earlier position, and, later in the decision noting that the positions must be "directly inconsistent"); see also Alternative System, 374 F.3d at 33 ("directly inconsistent); Hall v. Internet Capital Group, Inc, 338 F. Supp. 2d 145, 150 n. 11 (D. Me. 2004) (using both "clearly inconsistent" and "directly inconsistent").

Holdings, 520 F. Supp. at 223-24.[8] The doctrine does not require that the issue have been actually litigated in the prior proceeding. Thore, 466 F.3d at 181. Whether to invoke the doctrine is a matter left to the discretion of the Court. Id. at 178.

This Court is not persuaded that this matter presents the appropriate circumstances for invocation of the doctrine of judicial estoppel. See generally United States v. Levasseur, 846 F.2d 786, 792 (1st Cir. 1988) (defining the doctrine's "mold" as one that is "narrow" and "analytical"). This Court first concentrates on the First Circuit's direction that a "guiding principle" in applying the doctrine is whether a litigant is playing "fast and loose" with the courts. Patriot Cinemas, 834 F.2d at 212 (internal quotation marks and citation omitted). "Determining whether a litigant is playing fast and loose with the courts has a subjective element. Its resolution draws upon the trier's intimate knowledge of the case at bar and his or her first-hand observations of the lawyers and their litigation strategies." Alternative System, 374 F.3d at 31.

In a post-trial memorandum submitted in Getty I, Defendant stated that the

> Rhode Island Supreme Court has characterized the Pier as 'personalty' subject to a 'right to use the north side of said Pier.' Providence & Worcester . . . Co. v. Exxon, 116 at 491. Capital Terminal appears to agree that it is appropriate to look to the law applicable to easements to determine whether Getty Properties' right to cross [d]efendants' personalty has been abandoned.

Plaintiff's Objection to Defendant's Motion for Partial Summary Judgment Exhibit 12 at 18-19 (emphasis added). In the post-trial memorandum, Defendant specifically noted that the Rhode

---

[8]Courts also consider whether an unfair advantage or detriment would be created. GE HFS Holdings, 520 F. Supp. 2d at 224. Harm to the opposing party, however, "is not an invariable prerequisite to judicial estoppel." Id. (internal quotation marks and citation omitted). Some courts have also held that the First Circuit has "implied" that in the absence of "'deliberate dishonesty [or] . . . any serious prejudice to judicial proceedings or the position of the opposing party,' the doctrine should not be applied." Unum Corp. v. United States, 886 F. Supp. 150, 158 (D. Me. 1995) (quoting Desjardins v. Van Buren Community Hospital, 37 F.3d 21, 23 (1st Cir. 1994)).

Island Supreme Court had characterized the Pier as personal property. Defendant also argued that Plaintiff's predecessor-in-interest appeared to agree that it was appropriate, but not controlling, to look to the law applicable to easements to determine whether the right to cross personalty (the Pier) had been abandoned.

While Defendant invoked the law of easements in Getty I, it does not follow that Defendant is playing fast and loose with the Court by now arguing that the Pier is personal property. In essence, Defendant argued a similar position in Getty I. In Getty I, following the parties' lead, this Court, noted that it was "undisputed" that Defendant "had an easement giving it the right to use the" Pier. Getty I, slip op. at 25. In light of Providence & Worcester Co., and the benefit of hindsight, the Court concludes that the use of the term "easement" was inaccurate.

In order to invoke the doctrine of judicial estoppel, a proponent must show that a litigant's prior position is "directly inconsistent" with the one it currently espouses. Thore, 466 F.3d at 182. That position must have also been "unequivocally asserted" in the prior proceeding. Brewer, 945 F.2d at 455. The Court finds that the position Defendant now asserts, i.e., that the Pier is personalty and as such not subject to an easement, is not directly inconsistent with its position unequivocally asserted in Getty I. As noted above, Defendant recognized that the Rhode Island Supreme Court had characterized the Pier as personal property. Additionally, in an interrogatory in Getty I, Defendant averred that it "continues to own and enjoy a property right in the nature of an easement in and to the Pier." Plaintiff's Supplemental Memorandum at Exhibit A at 10 (emphasis added). Defendant, however, did not abandon the argument that the Pier was personalty in Getty I.

In Getty I, Defendant acknowledged that the Pier was personal property.[9] With the benefit of hindsight, the Court finds that Defendant's position in Getty I is not directly inconsistent with its current position that the Pier is personalty.[10] The Court concludes that the doctrine of judicial estoppel does not bar Defendant from now arguing that the Pier is personalty, and as such, is not subject to the law governing easements.

Plaintiff, however, avers that the Providence & Worcester Co. decision does not hold that the Pier is personalty to all parties in perpetuity. Plaintiff argues that "the question is not what the Pier was after the [Providence & Worcester Co.] [d]ecision, but what it is today, with respect to the parties at bar." Plaintiff's Supplemental Memorandum at 10. Plaintiff argues that the Pier is a fixture because it is affixed to land and is uniquely adapted to the oil offloading business. Plaintiff avers that the objective evidence shows Plaintiff's and Plaintiff's predecessors-in-interest's intent to treat the Pier as a fixture. Plaintiff notes that before the Rhode Island Supreme Court decided Providence & Worcester Co., the Pier and the land underneath it were owned by different entities. Plaintiff argues that since 1997, however, Plaintiff, or its predecessor-in-interest, has owned 100% of the Pier and the land underneath it. Plaintiff concludes that the "rejoining" of the ownership of the Pier and the land underneath it in one entity, and the Pier's subsequent treatment, is objective evidence that the Pier is a fixture, and thus should be governed by the law of easements. In essence, Plaintiff argues that the nature of the Pier has been transformed from personalty to a

---

[9]While Plaintiff accuses Defendant of playing fast and loose with the Court, see Plaintiff's Supplemental Memorandum at 3, the Court notes that Plaintiff was also somewhat equivocal in its complaint alleging that Defendant's right in the Pier was also "in the nature of an easement." Complaint at ¶ 14.

[10]The Court also finds that Defendant's position in Getty I was equivocal. See Brewer, 945 F.2d at 455.

fixture because for as long as Plaintiff and its predecessor-in-interest have owned both the Pier and the land underneath it, they have treated the Pier as a fixture.

In Rhode Island, courts look to three factors to determine if personal property has become a fixture. Prospecting Unlimited, Inc. v. Norberg, 376 A.2d 702 (R.I. 1977).[11] "First, annexation to the realty, either actual or constructive; second, adaptation or application to the use or purpose to which that part of the realty to which it is connected is appropriated; and third, intention to make the article a permanent accession to the freehold." Id. at 705 (internal citation and quotation marks omitted). Courts have held that determining whether an item is a fixture presents questions of fact or mixed questions of law and fact. Freeman v. Barrs, 237 S.W.3d 285 (Mo. Ct. App. 2007) (question of fact); ATC Partnership v. Town of Windham, 845 A.2d 389 (Conn. 2004) (same); Pfeifle v. Tanabe, 620 N.W.2d 167 (N.D. 2000) (same); Brown v. Blake, 161 S.W.3d 298 (Ark. Ct. App. 2004) (mixed question of law and fact); New England Telephone & Telegraph Co. v. City of Franklin, 685 A.2d 913 (N.H. 1996) (same); Everitt v. Higgins, 838 P.2d 311 (Idaho Ct. App. 1992) (same); see also Tri-Tech Corp. of American v. Americomp Services Inc., 646 N.W.2d 822 (Wis. 2002) (normally a question of fact but can become a question of law when only one reasonable conclusion can be drawn); and see Miller Enterprises, Inc. v. Narragansett Redevelopment Agency, 324 A.2d 624 (R.I. 1974) (declining to address the question of whether the determination that items were personalty or realty was a question of law or fact).

---

[11] The Court assumes without deciding that the Rhode Island Supreme Court would agree that a determination that an item is personal property does not preclude a later determination that the same item is real property as a result of some change in circumstances. Hughes v. Young, 444 S.E.2d 248, 250 (N.C. Ct. App. 1994) ("the same item that may be considered personal property in one situation may be considered real property where a different relationship exists").

In applying the fixture test, courts focus their attention on the intent factor. Pfeifle, 620 N.W.2d at174; Everitt, 838 P.2d at 315; Freeman, 237 S.W.3d at 289 (adaption and intent are more important in the analysis). "The intent of the annexor at the time of the annexation controls as to whether something is to be considered a fixture." Rothermich v. Union Planters National Bank, 10 S.W.3d 610, 615 (Mo. Ct. App. 2000).[12] Intent may be determined from the facts and circumstances of each case. Freeman, 237 S.W.3d at 290; Logan v. Mullis, 686 S.W.2d 605 (Tex. 1985) (intent is made apparent by objective manifestations); Everitt, 838 P.2d at 315 (same). "Intent is determined from the circumstances surrounding the annexation, including the nature of the article affixed, the annexor's situation in relation to the freehold, the manner of annexation, and the purpose for which it was made." Liberty Lake Sewer Dist. No. 1 v. Liberty Lake Utility Co., Inc., 683 P.2d 1117, 1120 (Wash. Ct. App. 1984).

The Providence & Worcester Co. court found the intent of the parties to the 1941 deed was to treat the Pier as personalty. Providence & Worcester Co., 359 A.2d at 341. Plaintiff has not identified any significant change to the Pier, or its treatment, since the Providence & Worcester Co. decision, that fundamentally affects the characterization of the Pier as personalty. The Pier is used in the same manner today as it was in the Providence & Worcester Co. case – for the offloading of petroleum products. The construction and make up of the Pier has not changed. Plaintiff does not

[12] Plaintiff argues that the Pier was a fixture when it was originally installed in the 1870s and is a fixture today. The Court assumes without deciding that the original annexor's intent in the 1870s was for the Pier to be a fixture. Although it appears that the intent of the original annexor factor is consistently applied by courts, it has been the subject of criticism. See Arizona Department of Revenue v. Arizona Outdoor Adventures, Inc., 41 P.3d 631, 635 (Ariz. Ct. App. 2002). Courts have suggested that the intent of the original annexor may not be particularly relevant to a determination of whether an item is a fixture when the original annexor may not be a party to the applicable transaction. Id. at 635-36. This Court is guided by the Rhode Island Supreme Court's determination that the Pier was personal property in or about 1976. Providence & Worcester Co., 359 A.2d 329.

present any factual assertion with respect to the Pier or the manner in which it is currently treated that is significantly different from the circumstances surrounding the Pier and the applicable treatment of the Pier in Providence & Worcester Co. The only change since the decision in Providence & Worcester Co. is that Plaintiff now owns 100% of the Pier and 100% of the land beneath the Pier. That factor, alone, however, does not convince this Court that the Pier has changed from personal property to a fixture.[13]

Since this Court has determined that the Pier is personal property and the parties agree that there is no agreement in effect that obligates Defendant to pay for Pier expenses regardless of use, Defendant, as a matter of law, does not have any legal obligation to contribute to Pier related expenses at this time. Accordingly, Plaintiff's motion for partial summary judgment is denied. Defendant's motion for partial summary judgment as to Count I is granted.

SO ORDERED.

Mary M. Lisi

Mary M. Lisi
Chief United States District Judge
May 2, 2008

---

[13]Plaintiff argues that even if the Pier is considered personalty the Pier is still subject to the law of easements. Plaintiff cites Dobie v. Morrison, 575 N.W.2d 817 (Mich. Ct. App. 1998), and Mason v. Garrison, 998 P.2d 531 (Mont. 2000), for the proposition that Defendant is *required* to contribute to the expenses associated with the Pier's repair and maintenance. The Court has reviewed both cases and is not convinced that either case stands for the proposition that Defendant is *required* to contribute to the expenses associated with the repair and upkeep of the Pier in these circumstances.